## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KENNETH SPINELLI,**
**HEATHER SPRAGUE,**
**JANICE SCOTT,**
**PHILLIP SCOTT,**
**RAJSHAWN SCOTT, and**
**Individually and**
**for all other persons similarly situated,**

     **Plaintiffs**

**v.**                                                     **Case No.  8:08-CV-132-T-30EAJ**

**CAPITAL ONE BANK and**
**CAPITAL ONE SERVICES, INC.,**

     **Defendants**

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs Kenneth Spinelli, Heather Sprague, Janice Scott, Phillip Scott, and Rajshawn

Scott, individually and on behalf of all other persons similarly situated as defined below, bring

this action based upon information and belief against Defendants Capital One Bank and Capital

One Services, Inc., (referred to collectively herein as "Capital One" or "Defendants" or the

"Company") and state and allege as follows:

### INTRODUCTION

1.     This is a proposed or putative class action brought on behalf of a Class of Florida

consumers of Capital One credit cards:

(a)    All residents of the State of Florida who (1) who were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage;

(b)    A subset of all residents of the State of Florida who had concurrent, multiple credit card accounts with "Payment Protection" coverage for their credit card balances; and

(c)    A subset of all residents of the State of Florida who were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One.

2.    This action is based in substantial part upon the Florida Unfair and Deceptive Trade Practices Act (hereinafter referred to as "FUDTPA"), as well as upon additional common-law and equitable causes of action.

3.    Plaintiffs are among the many thousands of Florida citizens who were targeted by Capital One as part of the Company's "subprime" credit card marketing programs, which included Capital One's sales of "Payment Protection" coverage (hereafter identified in this complaint as "Payment Protection").

4.    Payment Protection is represented to the consumer to be a Capital One product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby "protect" the consumer's credit by insuring that timely payments are made on account balances so that the consumer does not sustain additional fees, charges and penalties on credit card balances or adverse credit reporting to the credit bureaus.

5.    Capital One is the largest issuer of credit cards in the country with millions of cardholders and $12 billion in revenue in 2006. There are thousands of Florida Capital One cardholders who have paid for Payment Protection and receive no benefit. The terms of the Payment

Protection product are not adequately disclosed to consumers before the consumer accepts or is charged for the product, and Payment Protection coverage is so restricted in benefits, and processing claims under the coverage is made so difficult by Capital One, that the product is essentially worthless.

6.     Capital One apparently makes no effort to determine if the Payment Protection coverage is available to the consumer before charging for the product.  For example, numerous senior citizens and retired Florida residents are charged for Payment Protection although they are excluded from receiving benefits by Capital One because they are not employed.

7.     Despite the billions of dollars the Company earns from its operations, Capital One increased its fee income by devising and marketing the Payment Protection product, a product which provides no benefits to thousands of Florida residents who are charged for the "service".

## JURISDICTION AND VENUE

8.     Substantial acts which give rise to the causes of action asserted herein occurred in this State and within this venue.

9.     Venue is proper in this Court because plaintiffs Janice Scott, Phillip Scott and Rajshawn Scott reside in Hillsborough County, Florida, and proposed class members are citizens of Florida.  Pursuant to 28 U.S.C. §1391(c), the defendant corporation Capital One is deemed to reside in this District because it is subject to personal jurisdiction in this District and because Capital One has continuous and systematic contacts with this State through issuing credit cards, offering credit card products such as Payment Protection, and because Capital One sends monthly statements and sells products and services in Florida to Florida residents.

## PARTIES

3

10.     Plaintiff Janice Scott is a resident of the State of Florida residing in Hillsborough County, Florida.  Janice Scott received multiple credit cards from Capital One bearing Payment Protection features.

11.     Plaintiff Phillip Scott  is a resident of the State of Florida residing in Hillsborough County, Florida.  Phillip Scott received multiple credit cards from Capital One bearing Payment Protection features.

12.     Plaintiff Rajshawn Scott is a resident of the State of Florida residing in Hillsborough County, Florida.  Rajshawn Scott received multiple credit cards from Capital One bearing Payment Protection features.

13.     Plaintiff Heather Sprague is a citizen of the State of Florida residing in Lee County, Florida.  Heather Sprague received a credit card from Capital One bearing the Payment Protection feature and was denied Payment Protection coverage despite submitting a valid claim.

14.     Plaintiff Kenneth Spinelli is a senior citizen of the State of Florida and a retired person at all relevant times, residing in Citrus County, Florida.  Kenneth Spinelli received multiple credit cards from Capital One bearing Payment Protection features.

15.     The members of the proposed subclasses are residents of the State of Florida.

16.     Defendant Capital One Bank is a Virginia chartered limited purpose credit card company having its principal place of business in McLean, Virginia.

17.     Defendant Capital One Bank is not a registered corporation in the State of Florida, and has not appointed a registered agent for service of process, therefore pursuant to Florida Statute 48.181, has designated the Secretary of State of Florida as agent for service of process.

18.     Capital One Services has its principal place of business in McLean, Virginia.  Upon

4

information and belief, Capital One Services is the sales and marketing arm of Capital One Bank.

## UNLAWFUL CONDUCT OF CAPITAL ONE:
## CAPITAL ONE'S PAYMENT PROTECTION PRODUCT

19.     Capital One markets a credit card product to Florida citizens that it calls Payment Protection. This product is typically offered to consumers who fall into a "subprime" credit category and therefore have low credit limits on their credit cards.

20.     Capital One markets the Payment Protection product as a service that will safeguard the consumer's credit by making minimum credit card payments under certain highly restricted circumstances such as total disability. In addition there appears to be a "credit life" feature to this product, although this is buried in the fine print and is not described in the product information as credit life insurance.

21.     Capital One either provides Payment Protection to consumers through direct marketing and acceptance by the consumer of the product, or unilaterally imposes the Payment Protection feature on the consumer's credit card and requires the consumer to take action to cancel Payment Protection. In either case, Capital One fails to provide adequate information regarding Payment Protection coverage and restrictions prior to selling the product, and then provides information about the product that is both misleading and obfuscatory.

22.     As an example of misleading and obfuscatory language, the Payment Protection product appears to be a financial product or service that is exactly analogous to credit life or disability insurance, yet the marketing materials carefully avoid any use of the word "insurance". The marketing materials do, however, refer to making "claims". See details set out beginning in Paragraph 29, below.

5

23.     Payment Protection is a monthly charge that is assessed each month as $0.89 per $100 of the consumer's current credit card balance.

24.     Although represented to the consumer as something in the nature of an insurance product, the Payment Protection product is virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from Capital One under this coverage.

25.     This product is sold to Florida consumers without any consideration for the circumstances of the consumer or any reasonable investigation into facts that may cause the product to be worthless to the consumer.  For instance, many Florida senior citizens and retired persons are charged for this product although they are categorically excluded from Payment Protection payments should they become ill or incapacitated and unable to make credit card payments.

26.     The Payment Protection product serves Capital One's interest in generating additional fee income, and has the added benefit to Capital One of lowering available credit to its subprime cardholders through the imposition of this additional fee.

27.     Capital One also avoids including Payment Protection charges in the finance charge information that must be included in the "Schumer box" or Truth in Lending Act finance charge disclosures, although the Payment Protection fee is essentially an additional cost of credit to the subprime borrowers upon whom this charge is levied.

*Facts as to Plaintiff Heather Sprague*

28.     Ms. Sprague received Payment Protection from Capital One in November or December of 2003.  See Plaintiff's Exhibit 1 to this Complaint.  It is possible that Ms. Sprague

6

assented to the coverage in some manner, although Ms. Sprague does not have a specific memory

of requesting the coverage or expressly agreeing to pay for Payment Protection.

29.     In a letter dated November 5, 2003, Capital One sent a standard form letter to Ms.

Sprague congratulating her for "enrolling this account in Payment Protection." The letter states the

following:

> Payment Protection is ready when you need it.  Developed by Capital One and
> administered by Consumer Membership Services, it pays the minimum monthly
> payment on your eligible balance in the event of involuntary unemployment or
> temporary disability.  Plus:
>
> •     Starting a claim is easy - simply call 1-888-527-6904
> •     This peace of mind is only $0.89 per $100 of your monthly statement balance
> •     The charge for Payment Protection is conveniently billed to your Capital One
>       account each month
> •     You pay nothing if your monthly statement balance is zero
> •     You can cancel at any time
>
> The enclosed Payment Protection Member Benefits sheet contains additional
> important information, including how to file a Payment Protection claim.  Remember,
> filing a claim will not adversely affect your credit rating or change the terms of your
> account.
>
> You've joined the more than 5 million Capital One cardholders who safeguard their
> credit with Payment Protection.  As your trusted financial solutions partner, Capital
> One helps you protect what's in your wallet.

30.     Attached to the letter is a page describing restrictions on the Payment

Protection coverage in the form of "questions and answers". These restrictions are revealed

to the consumer only after the coverage has already been accepted and billed:

> Q:     What is the advantage of Payment Protection?
> A:     It provides peace of mind in knowing that the minimum monthly payment on
>        your eligible balance will be paid and helps safeguard your good credit rating
>        with Capital One.
>
> Q:     What if I am self-employed or retired?

A:     Your are eligible for the loss of life benefit; however, the other features are not available to you in your current employment status.

Q:     How soon after I enroll in Payment Protection can I file a claim and begin receiving payments?

A:     You are eligible for the loss of life benefit the day you enroll. However, you must be out of work for 30 consecutive days after enrolling in the product before an unemployment or disability claim can be accepted.

Q:     Once my claim is activated, how long will my benefits continue?
A:     Your benefits may continue for up to 12 months, or as long as your are eligible. Please refer to the Addendum for more details.

Q:     Does Payment Protection automatically cover all of my Capital One credit card accounts?
A:     No.

See Plaintiffs' Exhibit 2, attached to this Complaint.

31.     On the reverse side of the "question and answer" page are additional terms and conditions. That page is self-described as an "Addendum to your Capital One Customer Agreement" although the Payment Protection product is in fact a new and separate transaction. This document was received by Ms. Sprague at the same time as the "congratulations letter" and the "Q and A letter" discussed above. The so-called "Addendum" provides the following restrictions on the coverage:

**Inability to work**
If you become unable to work through (i) involuntary termination or (ii) temporary disability, and remain unemployed or unable to work due to a temporary disability for at least 30 consecutive days, PAYMENT PROTECTION will make benefit payments, subject to the limitations in this "Inability To Work" section, for up to 12 months while you remain unemployed or unable to work due to a temporary disability.

To be eligible for benefit payments, you must be gainfully employed by someone other than yourself or another cardholder on your Account on a full-time basis in a non-seasonal occupation when the loss of employment occurs. Loss of employment cannot be a result of retirement.

8

...You must be regularly attended by a licensed physician who must certify your continued disability each month. If the primary and the secondary cardholder are both eligible at the same time for benefit payments due to their inability to work, only one such benefit payment will be made.

**Loss of Life; Total and Permanent Disability**
If you die or become totally and permanently disabled, PAYMENT PROTECTION will pay your eligible balance as of the date of death or total and permanent disability, up to the amount of the credit limit, or $10,000, whichever is less. Total and permanent disability means that you can no longer will likely never be able to engage in any substantial activity required for wages, gain, or profit. Total and permanent disability as a result of self-inflicted injuries is not included in this benefit. If the deaths of the primary and the secondary cardholder occur as a result of the same event, only one death benefit will be paid.

See Plaintiffs' Exhibit 3, attached to this Complaint.

32.     In sum, the following restrictions on Payment Protection are imposed after acceptance of the coverage, in small print, in language that is not readily comprehensible to the average consumer:

It does not apply to self-employed persons
It does not apply to persons employed by a co-cardholder
It does not apply to persons who are not employed "full time" although the Capital
      One documents do not define exactly what "full time" means
It does not apply to persons in a seasonal occupation at the time of loss of employment
It does not apply unemployed persons
It does not apply to retired persons
It does not apply for the first 30 days of unemployment or disability
It is limited to 12 months
It requires monthly certification by a physician of continued disability
It does not apply if injuries are self-inflicted

33.     Capital One makes no reasonable efforts to determine if the coverage applies to the cardholder prior to charging for this service.

34.     Heather Sprague met all the above-listed conditions and was eligible for Payment Protection payments and Capital One still refused to honor the Payment Protection

coverage.

35.     Heather Sprague became totally disabled due to illness and surgery, and despite her best efforts, could not secure payment from Capital One under the Payment Protection product.

36.     Upon information and belief, the documents provided to Heather Sprague are standard form documents that were provided in substantially the same form or format to all Florida consumers who received the Payment Protection product from Capital One.

37.     Upon information and belief, Heather Sprague's experience with Capital One's marketing of Payment Protection and her experience with paying for Payment Protection are the result of Capital One's standard business practices and are typical of the experiences of all Florida class members who paid for and received the Payment Protection product.

38.     Upon information and belief, Capital One refused to provide Payment Protection coverage to numerous Florida citizens, even for cardholders who met the above-listed requirements.

*Facts as to Plaintiff Kenneth Spinelli*

39.     Plaintiff Kenneth Spinelli was both a retired person and a senior citizen at all times that he received and paid for Payment Protection from Capital One.

40.     Plaintiff was either a primary cardholder or a co-cardholder of several Capital One credit cards bearing charges for Payment Protection.

41.     Although he paid for the Payment Protection product, Mr. Spinelli was never eligible for Payment Protection coverage due to the product's restrictions and exclusions because he was retired, and therefore unemployed.

*Allegations Related to All Members of the Class*

42.    Upon information and belief, Capital One imposed charges for "credit protection" upon Florida consumers even though the consumer did not request the product or assent to pay for the product in writing.

## CLASS ACTION ALLEGATIONS

43.    Plaintiffs bring this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

44.    Plaintiffs seek certification of a Class consisting of all Florida consumers targeted by Capital One as part of its Payment Protection sales, billing and marketing schemes, and who paid for Payment Protection.   Included in the proposed certification of the Class, Plaintiffs seek certification of a subset of retired persons and senior citizens, along with multiple cardholders. Excluded from the proposed Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

45.    The Class is composed of at least tens of thousands of persons, and possibly exceeds several hundred thousand individuals who were Capital One customers, the joinder of which in one action would be impracticable.   Capital One states in its marketing materials that "more than 5 million Capital One cardholders" purchased the Payment Protection product.   Since Florida has approximately 6% of the population of the United States, it is statistically reasonable to project that there are approximately 300,000 Florida cardholders who have paid for Payment Protection.   The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court. The identities of individual members of the Class are readily ascertainable

11

through the defendants' billing records.

46.    There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)    Whether the defendants' sales, billing and marketing scheme as alleged herein is fraudulent, deceptive, unlawful and/or unfair in violation of Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. §501.201, *et seq*.;

b)    Whether Capital One's common and uniform sales, billing and marketing schemes related to the Payment Protection product as alleged herein constitutes a deceptive trade practice as defined by Florida statutes;

c)    Whether the plaintiffs and the Class members are entitled to restitution of all amounts acquired by defendants through their common and uniform scheme;

d)    Whether plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Capital One;

f)    Whether plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Capital One from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein; and

h)    Whether plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of the defendants' wrongful scheme.

47.    Plaintiffs assert claims that are typical of the Class, having been targeted by Capital One as consumers who were improperly assessed charges for Payment Protection. Plaintiffs and the Class members have similarly suffered harm arising from defendants' violations of the law as alleged

herein.

48.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests are not antagonistic to those of the Class members. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class litigation.

49.     A class action is superior to other available means for the fair and efficient adjudication of plaintiffs' and the Class members' claims. Plaintiffs and members of the Class have suffered irreparable harm as a result of defendants' fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent the class action, the Class members will continue to suffer losses, the violations of the law described herein will continue without remedy, and defendants will be permitted to retain the proceeds of their misdeeds. Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

## PROPOSED CLASS DEFINITION

50.     Plaintiffs seek certification of a class defined as the following Florida citizens and consumers defined as follows:

(a)     All residents of the State of Florida who (1) who were solicited by Capital One by mail and/or telephone to purchase Payment Protection; (2) who were marketed by Capital One for Payment Protection; and (3) who paid for "Payment Protection";

(b)     A subset of all residents of the State of Florida who had concurrent, multiple credit card accounts with Payment Protection; and

13

(e)    A subset of all residents of the State of Florida who were retired or who were senior citizens at the time that they were solicited for, and made payments to Capital One for Payment Protection.

**COUNT ONE - VIOLATIONS OF**
**FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(BUSINESS AND COMMERCE CODE SECTION 501.201 et seq.)**

51.    Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though set out here word for word.

52.    By bringing this action, Plaintiffs herein act as a private Attorney General for their own benefit and for the benefit of the general public.

53.    Each Plaintiff is a party engaged in consumer commerce in Florida who has been affected by Defendants' unfair business practices.

54.    Defendants' conduct constitutes false, misleading and/or deceptive practices within the meaning of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §501.201, *et seq.*, specifically, §501.204(1).

55.    Defendants' conduct constitutes unconscionable acts pursuant to Fla. Stat. §§501.201 and 501.204(1).

56.    Defendants' conduct is subject to civil penalties pursuant to Fla. Stat. §501.2075, attorney fees pursuant to Fla. Stat. §501.2105, and is subject to civil penalties pursuant to Fla. Stat. §501.2077. In addition Defendant's conduct is subject to an award of attorney fees and costs.

57.    Plaintiffs seek judicial orders of an equitable nature against Defendants, including, but not limited to, orders declaring Defendants' practices as alleged to be unlawful, unfair, unconscionable and/or deceptive, and enjoining Defendants from undertaking any further unlawful, unfair, unconscionable and/or deceptive acts or omissions.

58.    Plaintiffs and the Class seek disgorgement and restitution plus interest on damages at the legal rate, as well as three times the amount of their economic damages based on Defendants' knowing and intentional violations of this statute.  Plaintiffs seek restitution for acts committed against a senior citizen, defined by Florida Statutes as a person over the age of 60 years, pursuant to Fla. Stat. §501.2077(3).

59.    Because Plaintiffs seek to enforce an important right affecting the public interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and the Class.

60.    As a result of Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the Class have suffered monetary damages for which Defendants are liable.

## COUNT TWO - INJUNCTIVE RELIEF
## PAYMENT PROTECTION RESTITUTION

61.    Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the class who made payments to Capital One for Payment Protection.  The Plaintiffs ask the Court to grant the following relief:

a)    a refund of all Payment Protection payments made to Capital One;

b)    a refund to any consumer who was retired at the time they were sold Payment Protection by Capital One;

c)    a refund to any consumer who was a senior citizen at the time they were sold Payment Protection by Capital One;

d)    a full refund to any consumer who was otherwise not eligible for Payment Protection due to the restrictions in the coverage at the time the product was sold to the consumer and who paid for the product.

62.    Plaintiffs seek injunctive relief enjoining Capital One from continuing to engage in

the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

## COUNT THREE - DECLARATORY RELIEF

63.    Plaintiffs seek a Declaratory Judgment pursuant to Fla. Stat. §501.211 finding that the conduct of Defendants is in violation of the Florida Unfair and Deceptive Trade Practices Act, and enjoining Defendant from continuing in such conduct.

## COUNT FOUR - UNJUST ENRICHMENT

64.    Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though set out here word for word.

65.    In seeking to sell credit cards to Plaintiffs and members of putative Class, Defendants withheld material terms from consumers prior to activation of Payment Protection charges, including the limitations, restrictions and exclusions associated with the product.

66.    Defendants were unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to the consumers credit card.

67.    Defendants were unjustly enriched by its business practices of making it so difficult for consumers to actually receive payment for Payment Protection that the product was virtually worthless.  Such acts were, and are, unconscionable.

68.    Defendants were unjustly enriched by charging the Plaintiffs and Class members for illusory benefits.

69.    Defendants were unjustly enriched by charging Plaintiffs and Class members multiple Payment Protection charges if the cardholder had multiple Capital One credit cards.

70.    Defendants were unjustly enriched by charging Plaintiffs and Class members who

were retired or who were senior citizens for Payment Protection even though they were ineligible to receive payments by the terms of the Payment Protection documents

71.     As a result of Defendants' actions which constitute unjust enrichment, Plaintiffs and class members suffered actual damages for which Defendants are liable.  Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

A.     That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and that the best practicable notice of this action be given to members of the Class represented by Plaintiffs;

B.     That judgment be entered against Defendants and in favor of Plaintiffs and the Class on Counts One and Two as alleged in this Complaint, for injunctive relief as requested herein, and for actual, compensatory and punitive damages in an amount to be determined at trial;

C.     That judgment be entered imposing interest on damages, litigation costs and attorneys' fees against the Defendants; and

D.     For all other and further relief as thus Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury consisting of twelve persons on all issues so triable.

Dated this 28th day of February, 2008.

Respectfully Submitted,


_____/s/___T. Brent Walker_____
T. Brent Walker
CAULEY BOWMAN CARNEY &
WILLIAMS, PLLC
P.O. Box 25438
Little Rock, AR 72221-5438
(501) 312-8500
(501) 312-8505 (facsimile)
bwalker@cauleybowman.com


Steven A. Owings
OWINGS LAW FIRM
1320 "D" Brookwood
Little Rock, AR 72202
(501) 661-9999
sowings@owingslawfirm.com

Kevin McLaughlin
WAGNER, VAUGHAN, McLAUGHLIN &
BRENNAN, P.A.
601 Bayshore Boulevard
Suite 910
Tampa, FL 33606
(813) 225-4000


***Attorneys for the Plaintiffs***

## CERTIFICATE OF SERVICE

I, T. Brent Walker, certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 28th day of February, 2008. Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court.

Eric S. Adams
SHUTTS & BOWEN, LLP
100 S. Ashley Drive, Suite 1740
P.O. Box 2481 (ZIP 33601-2481)
Tampa, Florida 33602-5309
(813) 227-8122
(813) 227-8222 (facsimile)
eadams@shutts-law.com

Francis A. Zacherl
SHUTTS & BOWEN, LLP
1500 Miami Center, 201 S. Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300
(305) 381-9982
fzacherl@shutts.com

Notice has been delivered by other means to:

Gregory P. Dresser
Karen Kreuzcamp
MORRISION & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
(415) 268-7522  FAX
gdresser@mofo.com
kkreuzkamp@mofo.com

    /s/ T. Brent Walker
    T. Brent Walker

19





# Now you're protected

from situations
beyond your control.

HEATHER A. SPRAGUE
11694 POINTE CIRCLE
FORT MYERS FL 33908-2143

11/05/03
RE: your account ending in 5736

Dear HEATHER A. SPRAGUE

Congratulations on taking a step toward safeguarding your good credit at Capital One® by enrolling this account in Payment Protection.

Payment Protection is ready when you need it. Developed by Capital One and administered by Consumer Membership Services, it pays the minimum monthly payment on your eligible balance in the event of involuntary unemployment or temporary disability. Plus:
- Starting a claim is easy – simply call 1-888-527-6904
- This peace of mind is only $0.89 per $100 of your monthly statement balance
- The charge for Payment Protection is conveniently billed to your Capital One account each month
- You pay nothing if your monthly statement balance is zero
- You can cancel at any time

The enclosed Payment Protection Member Benefits sheet contains additional important information, including how to file a Payment Protection claim. Remember, filing a claim will not adversely affect your credit rating or change the terms of your account.

You've joined the more than 5 million Capital One cardholders who safeguard their credit with Payment Protection. As your trusted financial solutions partner, Capital One helps you protect what's in your wallet.

Sincerely,

J. Alan Berson
Senior Vice President, Capital One

P.S.   As a record of your enrollment in Payment Protection, we've included personalized membership cards that can be conveniently stored in your wallet or any other secure location.

For questions regarding Payment Protection, please contact Consumer Membership Services, Inc., at 1-888-527-6904.
For questions regarding your Capital One credit card account, please contact Capital One at 1-800-955-7070.

ML0220 95-3740                                     14,669

EXHIBIT
1

95-3739

# Answers to your Payment Protection questions.

Q: How do I file a Payment Protection claim?
A: To file a claim, simply call Consumer Membership Services at 1-888-527-6904.

Q: What is the advantage of Payment Protection?
A: It provides peace of mind in knowing that the minimum monthly payment on your eligible balance will be paid and helps safeguard your good credit rating with Capital One.

Q: Does filing a claim adversely affect my credit standing?
A: Your credit standing will not be adversely affected. In fact, activating your benefits can have a positive effect on your credit. If, as a result of receiving benefit payments, the status of your account improves between the date of loss and the date you file a claim, we will notify the credit bureaus so your credit history can be updated.

Q: How will I be billed?
A: Your Capital One credit card is conveniently billed each month. This charge will appear automatically on your monthly statement. If your account balance is zero, you pay nothing.

Q: What if I am self-employed or retired?
A: You are eligible for the loss of life benefit; however, the other features are not available to you in your current employment status.

Q: How soon after I enroll in Payment Protection can I file a claim and begin receiving payments?
A: You are eligible for the loss of life benefit the day you enroll. However, you must be out of work for 30 consecutive days after enrolling in the product before an unemployment or disability claim can be accepted.

Q: Once my claim is activated, how long will my benefits continue?
A: Your benefits may continue for up to 12 months, or as long as you are eligible. Please refer to the Addendum for more details.

Q: How does activating Payment Protection benefit my account?
A: For unemployment and temporary disability claims, Payment Protection pays the entire minimum monthly payment on your eligible balance, plus the monthly charge for Payment Protection. For death and permanent total disability claims, your eligible balance is paid in full.

Q: Does Payment Protection automatically cover all of my Capital One credit card accounts?
A: No. If you are unsure which of your accounts is covered by Payment Protection, or you wish to enroll other Capital One credit card accounts, please call 1-888-527-3014.

Q: If I activate my benefits, will I be able to use my card?
A: You can continue to use your card while Payment Protection is making your minimum monthly payment. Any charges, up to your credit limit, that may increase your minimum payment are covered.

Q: After the claim period ends, will the terms of my account change because benefits were activated?
A: The terms of your account will not change as a result of activating Payment Protection.

Q: How do I cancel my Payment Protection membership?
A: To cancel at any time with no obligation, simply contact Consumer Membership Services.



EXHIBIT

2

# Capital One®
Payment Protection ($0.89/$100)

**PAYMENT PROTECTION**

*This is an Addendum to your Capital One Customer Agreement.*

As used in this Addendum, "You" or "Your" means either the primary cardholder (the first name that appears on your monthly Account statement) or the secondary cardholder (the second name that appears on your monthly Account statement). The primary and secondary cardholders may each qualify for benefits payments under PAYMENT PROTECTION, and are each responsible for compliance with the terms and conditions of this Addendum, as described herein.

## Benefits

**► Benefit Payments**
If you qualify under the specific terms and conditions set forth below, PAYMENT PROTECTION will make a benefit payment on your behalf to Capital One, in the amount of the minimum monthly payment due on your eligible balance, up to your Total Credit Limit, plus the monthly charge for enrollment in PAYMENT PROTECTION. Such benefit payment is payable each month that your unemployment or disability continues.

**► Eligible Balance**
Your eligible balance is the balance on your Account each month as long as you continue to be eligible under PAYMENT PROTECTION, up to the amount of your Total Credit Limit or $10,000, whichever is less. The eligible balance includes purchases, cash advances, finance charges, and any other charges added to the Account after the date you become eligible for benefit payments, through the date of loss.

**► Inability To Work**
If you become unable to work through (i) involuntary termination or (ii) temporary disability, and remain unemployed or unable to work due to a temporary disability for at least 30 consecutive days, PAYMENT PROTECTION will make benefit payments, subject to the limitations in this "Inability To Work" section, for up to twelve consecutive months while you remain unemployed or unable to work due to a temporary disability. These benefits shall be applicable back to the billing cycle during the date of loss.

To be eligible for benefit payments, you must be gainfully employed by someone other than yourself or another cardholder on your Account on a full-time basis in a non-seasonal occupation when the loss of employment or disability occurs. Loss of employment cannot be a result of retirement.

If your inability to work is due to unemployment, upon our request, you must furnish initial documentation of your loss of employment, as well as periodic confirmation of your continued unemployment and eligibility for this benefit. If your inability to work is due to temporary disability, you must be physically unable to perform any work or service for wages, gain, or profit. You must also be regularly attended by a licensed physician who must certify your continued disability each month. If the primary and the secondary cardholder are both eligible at the same time for benefit payments due to their inability to work, only one such benefit payment will be made.

**► Loss of Life; Total and Permanent Disability**
If you die or become totally and permanently disabled, PAYMENT PROTECTION will pay off your eligible balance as of the date of death or total and permanent disability, up to the amount of your Total Credit Limit, or $10,000, whichever is less. Total and permanent disability means that you can no longer and will likely never be able to engage in any substantial activity required for wages, gain, or profit. Total and permanent disability as a result of self-inflicted injuries is not included in this benefit. If the deaths of the primary and the secondary cardholder occur as a result of the same event, only one death benefit will be paid.

## Additional Benefits

**► Continued Card Usage**
You may continue to use your credit card even if PAYMENT PROTECTION is making benefit payments on your behalf.

**► Account Status**
Your eligibility for and receipt of benefit payments will not have an adverse effect on your Account status with Capital One, including the interest rate and annual membership fee, if applicable. If your account has been permanently restricted or charged-off when we receive your Notice of Claim, however, your account status will remain permanently restricted or charged-off even as we make benefit payments on your behalf.

**► Fee Waivers**
(i)   Before loss. You are responsible for past due and overlimit fees incurred on your Account before the date of loss.

(ii)   As a result of loss. If you are eligible for benefit payments and file a valid Notice of Claim, Capital One will reassess your account status as of the date of loss and going forward to the date you become eligible. If the amount of the benefit payment would have prevented your Account from being charged past due or overlimit fees in that period of time, PAYMENT PROTECTION will pay those fees on your behalf.

(iii)   After loss. You are responsible for overlimit fees incurred on your Account after the date of loss that are not credited in (ii) above.

**► Reporting To Credit Bureaus**
If, as a result of your receiving benefit payments, the status of your Account improves between the date of loss and the date you file a valid Notice of Claim, Capital One will notify the three major credit bureaus, so that your credit history can be updated. This additional benefit is subject to the provisions of "Account Status" above.

Continued on reverse. ›

95-3749

---

## Filing a Payment Protection claim is easy!

When needed, follow these simple steps to activate Payment Protection benefits.

→ Call Consumer Membership Services (CMS) at 1-888-527-6904 to file a claim. You will receive a claim form. Complete the Notice of Claim form, attach the proper documentation and return to CMS.

→ CMS will process your claim. Once approved, a claim payment will be sent to Capital One. Throughout your claim, CMS may request additional documentation to confirm your eligibility for payments.

→ When the claim period ends, a final payment is made. CMS will mail you a final payment letter and close the claim.

---

## Here are your Payment Protection membership cards.

Be sure to sign them. Keep one in your wallet and put the other one in a safe place.



EXHIBIT
**3**