UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH SPINELLI, et al.,**

    **Plaintiffs,**

v.                                                 Case No.: 8:08-CV-0132-T-33EAJ

**CAPITAL ONE BANK, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court are Plaintiffs' **Motion for Class Certification** (Dkt. 32), Plaintiffs' **Memorandum of Law in Support** (Dkt. 33), Defendants' **Memorandum of Law in Opposition** (Dkt. 35), Plaintiffs' **Reply** (Dkt. 40), and Defendants' **Sur-Reply** (Dkt. 41). Plaintiffs ask the court to certify a class and sub-class pursuant to Rule 23, Fed. R. Civ. P., and appoint certain named plaintiffs as class and sub-class representatives. Defendants argue that Plaintiffs' motion should be denied as untimely and non-compliant with Rule 23.

### Timeliness of Plaintiffs' Motion for Class Certification

Defendants submit that Plaintiffs' motion should be denied as untimely pursuant to Local Rule 4.04(b), M.D. Fla. (Dkt. 35 at 4-5, Dkt. 41 at 1-2). Plaintiffs counter that their motion is timely because the parties agreed to extend the deadline until after class discovery was complete (Dkt. 40 at 1-2).

In this district, plaintiffs seeking to maintain a class action must typically move for class certification within ninety (90) days following the filing of the initial complaint, "unless the time is extended by the Court for cause shown." Local Rule 4.04(b), M.D. Fla.

Plaintiffs filed a First Amended Class Action Complaint on January 18, 2008 (Dkt. 2) and a Second Amended Class Action Complaint on February 28, 2008 (Dkt. 16). Because Local Rule 4.04 refers to the "initial" complaint, Plaintiffs' motion for class certification was presumptively due on or before April 17, 2008.[1] Plaintiffs' filing of an amended complaint on February 28, 2008 did not reset the deadline.[2] See Jones v. Hartford Ins. Co. of the Midwest, 243 F.R.D. 694, 694 (N.D. Fla. 2006) ("To permit an amended complaint to reset the ninety day deadline would frustrate the purpose of Fed.R.Civ.P. 23(c)(1)(A) which requires the court to determine at 'an early practicable time . . . whether to certify the action as a class action.'").

Nevertheless, in the parties' Case Management Report, filed April 29, 2008, the parties stipulated that no class discovery should occur until the court ruled on Defendants' then-pending motion to dismiss (Dkt. 22). Moreover, Defendants requested that a "Phase I" discovery period be limited to "discovery about plaintiffs' individual claims and the class action requirements of Rule 23" (Id. at 6). Defendants further submitted that disclosures regarding expert witnesses testifying "on class certification issues" should be due October 30, 2008 (Id.). Finally, Defendants stipulated that "Phase I" discovery should be completed on October 30, 2008 (Id.).

On May 21, 2008, the court entered a Case Management and Scheduling Order setting several deadlines for "Phase I" discovery (Dkt. 24). Specifically, the court set October 30, 2008 as

---

[1] Defendants submit that the date of the initial complaint was September 28, 2007, before this cause of action was removed to federal court (Dkt. 35 at 4). Yet Defendants alternatively recognize that the "initial complaint" could in fact be the first complaint filed in federal court (Id. at 5). The court finds the latter is the more appropriate date. See e.g. Seyboth v. Gen. Motors Corp., No. 8:07-CV-2292-T-27TBM, 2008 WL 1994912, at *1 (M.D. Fla. May 8, 2008) (using date of initial federal complaint where action was removed from state court).

[2] This issue is of little significance given that application of the ninety-day period to the date of Plaintiffs' Second Amended Complaint would make their motion five months late.

the deadline for fact discovery, December 31, 2008 as the deadline for expert discovery, and February 2, 2009 as the deadline for dispositive motions (Id.). However, as emphasized by Defendants, the court did not set a specific deadline for class certification motions.

Regardless of the absence of a specific deadline, the parties Case Management Report makes clear that the parties intended "Phase I" to afford Plaintiffs an opportunity to conduct class discovery prior to class certification. Plaintiffs are correct that "[t]here would be no purpose in conducting class action discovery *after* filing a motion for class certification" (Dkt. 40 at 2). See e.g. Stickrath v. Globalstar, Inc., No. C07-1941 THE, 2008 WL 344209, at *5 (N.D. Cal. Feb. 6, 2008) (questioning proposed closing date of class discovery because it was after proposed deadline for class certification motion). The class discovery period was approved by the court when it set deadlines for "Phase I" discovery. Plaintiffs have shown good cause for extending the deadline prescribed by Local Rule 4.04(b) to at least October 30, 2008, the deadline for "Phase I" fact discovery. Because Plaintiffs filed their motion for class certification on that date, it was timely.[3]

**Breadth of Plaintiffs' Class Definitions**

Defendants next contend that Plaintiffs' motion should be denied because their class

---

[3] The court is troubled that Defendants stipulated to a class discovery period, which the court enforced, but Defendants now ask that Plantiffs' motion be denied as untimely pursuant to Local Rule 4.04(b). In addition to setting a ninety day deadline for class certification motions, Rule 4.04(b) also provides that "[i]f discovery relating to class action issues is needed, the parties may move the Court for leave to take such discovery prior to the case management meeting." A reading of the court's Case Management and Scheduling Order (Dkt. 24), which assigns deadlines for "Phase I" and "Phase 2" discovery, inescapably leads to the conclusion that the court granted Defendants' request for a "Phase I" discovery period regarding "the class action requirements of Rule 23" and a "Phase II" discovery period as to the merits of Plaintiffs' claims (Dkt. 22 at 4). The mere fact that the court declined to set a specific deadline for "class certification motions" does not dictate the result Defendants seek. The court interprets Defendants' position as a misunderstanding, and nothing more, at this point.

definitions are overbroad (Dkt. 35 at 5). Specifically, Defendants submit that the definitions include potential class members who have not suffered an injury (Id.).

Plaintiffs' proposed class definitions include one class and one sub-class. The proposed class is defined as:

> All residents of the State of Florida who (1) who [sic] were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage.

(Dkt. 32 at 1).

Plaintiffs' claims stem from Defendants' alleged violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-23 (Dkt. 33 at 1). "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), review denied, 962 So. 2d 335 (Fla. 2007).

The parties adopt differing views as to whether the class members, as defined, were necessarily deceived and injured. Plaintiffs submit that anyone who purchased "Payment Protection" was deceived and suffered a resulting injury because "the exclusions and administrative and bureaucratic hurdles imposed by Capital One make the Payment Protection product virtually worthless" (Dkt. 33 at 3). In other words, Plaintiffs propose that anyone who purchased "Payment Protection" was necessarily deceived as to the value of "Payment Protection" and suffered damages in the form of funds expended to enroll in the program.

Defendants counter that the class definition includes "Florida residents enrolled in Payment Protection who were not deceived - those who understood the terms and conditions of Payment

Protection" (Dkt. 35 at 6). Defendants contend that there were indeed Payment Protection enrollees who understood what they were purchasing and thus have no claim under FDUTPA (Id.). Defendants submit that Plaintiffs' class should be limited to those who were actually deceived as to the terms of "Payment Protection" (Id.).

Defendants' argument is flawed in that it seeks a class definition that would require the court to inquire into the state of mind of each unnamed class member in order to determine whether they properly belong within the class. "[R]eferencing strictly to the state of mind of a potential member would be too subjective and tenuous to be a proper criterion." Grillasca v. Hess Corp., No. 8:05-CV-1736-T-17TGW, 2007 WL 2121726, at *3 (M.D. Fla. July 24, 2007). Further, it would require the court to delve into the underlying merits of the claims, which is premature at the certification stage.[4] Id.

By contrast, Plaintiffs' definition provides an "objective and tangible criterion" for assessing who properly belongs in the class. Id. The definition properly leaves for trial the determination of whether "Payment Protection" in fact has value to those who qualify for the program. Moreover, the interests of justice require the court to err on the side of granting certification in doubtful cases. Id. at 4. Therefore, Plaintiffs should be allowed to proceed with the class as presently defined.

Plaintiffs also propose a sub-class, defined as:

> A subset of all residents of the State of Florida who were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One.

(Dkt. 32 at 2). Plaintiffs submit that "Payment Protection" by its terms does not extend to the retired

---

[4] Indeed, Defendants argue that a class definition including only those "Payment Protection" enrollees who were actually deceived would require "resolving the merits" and thus preclude certification (Dkt. 35 at 8).

or senior citizens, and that any such enrollees were therefore necessarily deceived and injured (Dkt. 40 at 3). For the same reasons stated above regarding the class, Plaintiffs should be allowed to proceed with the sub-class as presently defined.[5]

## Merits of Certification

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003).

**I. Standing**

"[A]ny analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987). "[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000). "It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert." Id. at 1280. "Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of

---

[5] Plaintiffs' Second Amended Complaint identifies another sub-class including Florida residents "who had concurrent, multiple credit card accounts with 'Payment Protection' coverage for their credit card balances" (Dkt. 16 at 2). However, Plaintiffs do not seek certification of this sub-class in their motion for certification.

a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." Id. (citation and internal quotations omitted).

Plaintiffs submit that Heather Sprague ("Sprague") is a proper representative for the class (Dkt. 33 at 4-5). Plaintiffs claim Defendants provided Sprague with materials promising that "Payment Protection" would be available in the event of her disability (Id. at 5). Plaintiffs assert that Sprague met "all of the conditions and restrictions" of "Payment Protection" but was nevertheless denied coverage when she became disabled (Id. at 4-5).

Plaintiffs have sufficiently alleged that Sprague was deceived into purchasing "Payment Protection" because the program was not of the promised value. Sprague has allegedly suffered the injury that gives rise to the claim presented in the class definition. Therefore, Sprague has standing to serve as a named representative for the class.

Plaintiffs further submit that Kenneth Spinelli ("Spinelli") is a proper representative for the sub-class.[6] Plaintiffs claim that Spinelli is a retired senior-citizen who was sold "Payment Protection" despite the fact that coverage does not extend to retirees (Id. at 5). Because Plaintiffs have sufficiently alleged that Spinelli suffered the injury giving rise the claim presented in the sub-class definition, Spinelli has standing to serve as a named representative for the sub-class.

## II. Rule 23(a)

Once the court has established that the named plaintiffs have standing to sue, "the court must determine whether Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy

---

[6] Plaintiffs additionally charge that Mildred Sims is a proper representative for the sub-class, however, there is no plaintiff with this name listed in the docket or in Plaintiffs' Second Amended Class Action Complaint (Dkt. 16). Although Mildred Sims is identified in Plaintiffs' proposed Third Amended Class Action Complaint (Dkt. 27 Ex. 1 at 10-11), she is not a named plaintiff because the court denied Plaintiffs' request for leave to amend their complaint (Dkt. 36).

are satisfied." Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 966 (11th Cir. 2008).

**a. Numerosity**

First, a class may be certified only if "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1), Fed. R. Civ. P. "In order to establish numerosity, the plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." Kuehn v. Cadle Co., 245 F.R.D. 545, 548 (M.D. Fla. 2007) (citation and internal quotations omitted). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citation and internal quotations omitted).

Defendants' responses to Plaintiffs' interrogatories indicate that "352,376 Florida consumers were 'enrolled' in the Payment Protection product and that 206,345 Florida consumers are currently enrolled in the product" (Dkt. 33 at 6, Dkt. 32 Ex.1 at 8). Defendants do not argue that Plaintiffs have failed to establish the numerosity requirement for the class or sub-class.[7] Given the obvious impracticality of joining hundreds of thousands of plaintiffs in this action, the numerosity requirement is satisfied as to the class. Further, although Plaintiffs do not provide evidence or a reasonable estimate of the number of purported sub-class members, common sense suggests that the number will similarly be so high as to make joinder impracticable.[8]

---

[7] Defendants argue that Plaintiffs have not established commonality, typicality, or adequacy, but make no mention of numerosity (Dkt. 35 at 8-13).

[8] Although Defendants responded to Plaintiffs' interrogatories regarding the total number of "Payment Protection" enrollees (Dkt. 32 Ex. 1 at 8), Defendants objected to Plaintiffs' interrogatories regarding the number of enrollees who were retired or over the age of 65 (Id. at 8-10).

**b. Commonality**

Second, a class may be certified only if "there are questions of law or fact common to the class." Rule 23(a)(2), Fed. R. Civ. P. Commonality traditionally turns on the group characteristics of the class as a whole. Prado-Steiman, 221 F.3d at 1279. "Commonality may be established where there are allegations of common conduct or standardized conduct by the defendant directed toward members of the proposed class." Strube v. Am. Equity Inv. Life Ins. Co., 226 F.R.D. 688, 695 (M.D. Fla. 2005) (citation and internal quotations omitted).

Among the common issues propounded by Plaintiffs is the question of whether Defendants' "common and uniform sales, billing and marketing schemes related to the Payment Protection product . . . constitutes a deceptive trade practice as defined by Florida statutes" (Dkt. 33 at 9). Moreover, Plaintiffs allege in their complaint that Defendants provided "standard form documents . . . in substantially the same form or format to all Florida consumers who received the Payment Protection product from Capital One" (Dkt. 16 at 10). Thus, this is not a case where variations in the disclosure and assessment of information would raise questions as to whether each particular plaintiff was deceived. Cf. Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677, 683 (S.D. Fla. 2008) (finding commonality absent where contractual fees varied and contracts were explained orally by salespeople, which required inquiry as to whether each particular plaintiff was deceived). Rather, Plaintiffs allege that <u>all</u> Payment Protection enrollees were deceived alike when they enrolled in the program because they were provided substantially the same information pursuant to their enrollment. Plaintiffs have sufficiently alleged common or standardized conduct by Defendants directed to "Payment Protection" enrollees. Given that hundreds of thousands of potential class members are or were enrolled in the program, and the lack of evidence that these individuals were informed of

their benefits in individualized manners, Plaintiffs have satisfied the commonality requirement for both the class and the sub-class.

**c. Typicality**

Third, a class may be certified only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3), Fed. R. Civ. P. "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Prado-Steiman, 221 F.3d at 1279. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001).

Plaintiffs allege that Sprague enrolled in "Payment Protection" but nevertheless was denied the benefits she was entitled to when she became disabled (Dkt. 16 at 9-10). Plaintiffs further submit that Sprague's injury is typical of the class because, like Sprague, the other unnamed class members "were improperly assessed charges" for a product with less-than-promised value (Dkt. 33 at 10).[9] Plaintiffs have satisfied the typicality requirement because a sufficient nexus exists between Sprague's claims and the claims of the unnamed class members.

Plaintiff's also allege that Defendants improperly enrolled Spinelli in "Payment Protection" despite the fact that he did not qualify for the program (Dkt. 16 at 10). Clearly, Spinelli's alleged injury of being charged for a program for which he did not qualify because of his retiree status is typical of other unnamed retirees who enrolled in the program. Thus, Plaintiffs have satisfied the

---

[9] Importantly, Sprague's injury was not the denial of benefits, but rather the alleged loss of funds expended for a product with less-than-promised value. Thus, Plaintiffs' ask the court to determine whether they are entitled to "restitution of all amounts acquired by defendants" and "disgorgement of all wrongfully collected fees by [Defendants]" (Dkt. 33 at 9).

typicality requirement for the sub-class as well.

**d. <u>Adequacy</u>**

Fourth, a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(3), Fed. R. Civ. P. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." <u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation and internal quotations omitted).

There are no apparent conflicts of interest between Sprague or Spinelli and, respectively, the proposed unnamed members of the class and sub-class. Further, there is no evidence of significant personal or financial ties that might create a conflict between Sprague or Spinelli and counsel. See <u>London v. Wal-Mart Stores</u>, 340 F.3d 1246, 1255 (11th Cir. 2003) (finding personal friendship between class representative and class counsel generated doubt as to adequacy of representation).

Nevertheless, Plaintiffs have failed to show that Sprague and Spinelli will adequately prosecute this action. Plaintiffs have presented no evidence indicating that Sprague or Spinelli understands the responsibility inherent in potentially representing hundreds of thousands of unnamed class members. Further, Plaintiffs have not established, through deposition testimony or otherwise, that Sprague or Spinelli understands the case and is willing and able to take an active role in the litigation. Cf. <u>Mesa v. Ag-Mart Produce, Inc.</u>, No. 2:07-CV-47-FTM-34DNF, 2008 WL 2790224, at *9 (M.D. Fla. July 18, 2008); <u>In re Miva, Inc., Sec. Litig.</u>, No. 2:05-CV-201-FTM-29DNF, 2008 WL 681755, at *6 (M.D. Fla. Mar. 12, 2008); <u>Veal v. Crown Auto Dealerships, Inc.</u>, 236 F.R.D. 572, 578-79 (M.D. Fla. 2006).

11

**Conclusion**

Although Plaintiffs' motion for class certification was not filed within the time period prescribed by Local Rule 4.04(b), M.D. Fla., it was timely pursuant to the court's Case Management and Scheduling Order (Dkt. 24) which afforded Plaintiffs time to conduct class discovery prior to filing their motion. Moreover, Plaintiffs have satisfied the numerosity, commonality, and typicality requirements of Rule 23(a)(1), (2), and (3), Fed. R. Civ. P.

Nevertheless, Plaintiffs have failed to establish, as required by Rule 23(a)(4), Fed. R. Civ. P., that the proposed named representatives for the class and sub-class will adequately prosecute this action. Plaintiffs have presented no evidence to this effect and do not even claim that the proposed named plaintiffs are willing to take an active role in litigation where they could represent hundreds of thousands of class members (See Dkt. 33 at 11-12). Accordingly, the court should deny Plaintiffs' motion for class certification. However, Plaintiffs should be afford an opportunity to promptly amend their motion to comply with the requirements of Rule 23, Fed. R. Civ. P. See e.g. Gustin v. Hoffman, No. 6:08-CV-57-ORL-31DAB, 2008 WL 4821330, at *3 (M.D. Fla. Oct. 28, 2008) (denying motion for class certification without prejudice due to lack of pre-certification discovery and granting 120 days for additional class discovery); Pluviose v. Am. Coach Lines of Orlando, Inc., No. 6:08-CV-10-ORL-31KRS, 2008 WL 2952885, at *2 (M.D. Fla. July 30, 2008).

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  Plaintiffs' Motion for Class Certification (Dkt. 32) be **DENIED WITHOUT PREJUDICE**; and

(2)  Plaintiffs be permitted to file an amended motion for class certification on or before

February 2, 2009.[10]

Date: **December 16, 2008**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

---

[10] February 2, 2009 is the deadline for "Phase I" dispositive motions (Dkt. 24 at 1) and is thus a sensible deadline for class certification motions.