UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH SPINELLI, et al.,**

    **Plaintiffs,**

v.                                                           Case No.: 8:08-CV-0132-T-33EAJ

**CAPITAL ONE BANK, et al.,**

    **Defendants.**

_____/

### REPORT AND RECOMMENDATION

Before the court are Plaintiffs' **Motion for Class Certification** (Dkt. 32) and **Memorandum of Law in Support** (Dkt. 33); Defendants' **Memorandum of Law in Opposition** (Dkt. 35); Plaintiffs' **Reply** (Dkt. 40); Defendants' **Sur-Reply** (Dkt. 41); Plaintiffs' **Amendment to Plaintiffs' Motion for Class Certification** (Dkt. 55), **Brief in Support** (Dkt. 56), and supporting affidavit (Dkt. 57); and Defendants' **Opposition** (Dkt. 66), **Request for Judicial Notice** (Dkt. 67), and supporting affidavits (Dkt. 68; Dkt. 69).[1] Plaintiffs ask the court to certify a class and sub-class pursuant to Rule 23, Fed. R. Civ. P., and to appoint certain named plaintiffs as class and sub-class representatives.

### Background

On February 28, 2008, Plaintiffs filed a Second Amended Class Action Complaint against Defendants, the "the largest issuer of credit cards in the country" (Dkt. 16 at 2).[2] Plaintiffs are a

---

[1] The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt. 70).

[2] Plaintiffs filed their initial complaint in state court, however, Defendants removed the case to federal court asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) (Dkt. 1).

proposed class and sub-class of Defendants' current and former customers who were solicited to participate in Defendants' "Payment Protection" program (Id.). According to Plaintiffs, Payment Protection is a "product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby 'protect' the consumer's credit" (Id.). Plaintiffs contend that Payment Protection is "virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from [Defendants] under this coverage" (Id. at 6). Plaintiffs submit that Defendants' solicitation of Plaintiffs' participation in Payment Protection was a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq. (Id. at 14).

## Analysis

Certification of a class under Rule 23, Fed. R. Civ. P., requires a court to determine whether the Rule's requirements of numerosity, commonality, typicality, and adequacy are satisfied. Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 966 (11th Cir. 2008). Plaintiffs have satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements (Dkt. 61). Because Plaintiffs initially failed to satisfy the adequacy requirement, they have amended their motion to address the issue.[3]

---

[3] On December 16, 2008, the court recommended that Plaintiffs' Motion for Class Certification be denied because Plaintiffs had failed to satisfy the adequacy requirement of Rule 23(a)(4), Fed. R. Civ. P., but also recommended that Plaintiffs be afforded an opportunity to amend their motion (Dkt. 43). On January 30, 2009, before the District Judge ruled on that recommendation, Plaintiffs filed an amendment to their class certification motion addressing the issue of adequacy (Dkt. 55). On March 14, 2009, the District Judge adopted the recommendation and retroactively granted Plaintiffs permission to file their amendment (Dkt. 61). On April 10, 2009, Defendants responded to the amendment (Dkt. 66).

**I.      Adequacy of Representation**

A class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4), Fed. R. Civ. P. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008) (citation and internal quotation marks omitted).[4]

Plaintiffs argue that their subsequent filings demonstrate that proposed class representatives Kenneth Spinelli ("Spinelli"), Janice Scott ("Scott"), and Heather Sprague ("Sprague") 1) "have taken an active role in this litigation," 2) "are aware of the obligations associated with being a class

---

[4] Defendants have not argued that there are substantial conflicts of interest between the proposed class representatives and the class. However, Defendants assert that a former partner in Carney Williams, one of the law firms representing Plaintiffs, recently "pled guilty to federal crimes relating to his misappropriation of $9.3 million in settlement funds from another class action" (Dkt. 92 at 1). Defendants further submit that this individual "until recently held approximately 90% of the firm's equity" (Id.). Defendants suggest that Carney Williams is unable "to protect against theft of class settlement funds" and that Plaintiffs' failure to notify the court of these circumstances "should disqualify plaintiffs' counsel from serving as class counsel" (Id. at 2-3).

Plaintiffs respond that the individual at issue was "of counsel" to the firm at the time of his misdeeds and that upon learning of his actions "the partners of Carney Williams immediately brought the matter to the attention of [Judge Rakoff,] the jurist before whom the affected settlement was pending" (Dkt. 94 at 1). Plaintiffs represent that Judge Rakoff commended the Carney Williams partners for bringing the matter to his attention (Id. at 2). Moreover, Judge Rakoff subsequently appointed a partner in Carney Williams to serve as an additional escrow agent for the settlement funds at issue (Id.). Finally, Plaintiffs aver that the individual who misappropriated the funds never held an ownership interest in Carney Williams (Id. at 3 n.2).

While the misappropriation of settlement funds by a former "of counsel" with a law firm is a serious issue, the records show that Carney Williams will adequately represent the class in this matter. Counsels' conduct in bringing the matter to the attention of the presiding judge is commendable. Moreover, the fact that the presiding judge appointed a partner in Carney Williams to serve as an escrow agent reflects a continuing confidence in Carney Williams' ability to protect against the misappropriation of class funds.

representative," and 3) "are willing and able to invest their time in the continued prosecution of this [l]itigation" (Dkt. 56 at 2).

In support of these contentions, Plaintiffs filed copies of affidavits in which Spinelli and Scott[5] each "agree[] to serve as a lead plaintiff in this litigation" and describe their involvement in this case as follows:

> I have participated in multiple telephone calls and had face to face meetings with counsel. During the conference calls and visits we discussed my experience with Capital One's payment protection product, why I acquired the product and the strategy and litigation plan for this case. In addition, we discussed my responsibilities as lead plaintiff and my duties in monitoring the litigation, including holding regular meetings and maintaining regular contact with counsel. We also discussed that, as lead plaintiff, I am a fiduciary of the Class and responsible for acting in the best interests of the Class throughout this litigation. . . .
>
> My participation to date includes:
>     (a)    searching for documents and answering discovery requests relevant to my events;
>     (b)    reviewing all pleadings and effectively monitoring the litigation;
>     (c)    maintaining regular contact with counsel;
>     (d)    making myself available for deposition and trial.

(Dkt. 56 Ex. A & B).[6] Plaintiffs also filed the title page and signature page of responses by Spinelli,

---

[5] Plaintiffs did not file an affidavit for Sprague.

[6] Defendants note the fact that the proposed representatives reside in Florida yet their affidavits were notarized in Arkansas (Dkt. 80 at 1). The affidavits of Spinelli and Scott were notarized in Arkansas on January 14 and 16, 2009 (Dkt. 56 Ex. A; Dkt. 56 Ex. B). The same month, however, Spinelli and Scott both testified at their depositions that they were residents of Florida (Dkt. 78 Ex. A at 6; Dkt. 78 Ex. B at 4). In interrogatory responses dated May 15, 2009, Spinelli affirmed that he signed his affidavit in Florida and that the notary was not present at the time (Dkt. 81 Ex. 6). However, Spinelli asserted the notary had spoken to him on the phone numerous times and had reviewed several documents with his signature on it (Id.). Spinelli further stated that his attorneys had witnessed him sign several documents and that the attorneys and notary together "had reasonable belief and satisfactory evidence that they were familiar with [his] signature and that it was [his] signature on the affidavit" (Id.). Scott served similar interrogatory responses (Dkt. 81 Ex. 7).

The parties dispute whether Florida or Arkansas law governs the validity of the affidavits

Scott, and Sprague to Defendants' interrogatories and requests for production (Dkt. 56 Ex. C, D, & E). Plaintiffs emphasize that each of these individuals was willing to sit for depositions in October 2008 and January 2009 (Dkt. 56 at 4). Finally, Plaintiffs aver that the proposed representatives have provided documents and have met repeatedly with counsel (Id. at 5).

Defendants respond that Plaintiffs' allegations as to the adequacy of the proposed class representatives are undermined by their testimony during depositions taken in January 2009. Defendants argue that the testimony indicates that neither Spinelli nor Scott 1) "knows what a class representative is," 2) "knows what responsibilities a class representative has," 3) "knows what claims are being asserted in this action," 4) "has participated in formulating a case strategy with counsel," or 5) "has discussed the goals of the case with counsel" (Dkt. 80 at 2). Additionally, Defendants challenge Sprague's adequacy due to her non-appearance for her deposition and Plaintiffs' failure to provide an alternative date for Sprague's deposition (Id. at 1 n.3).

"[N]either the Eleventh Circuit nor the Supreme Court has established specific standards for Rule 23(a) adequacy." London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1254 (11th Cir. 2003). In non-securities cases, the question is not whether proposed class representatives "virtually have abdicated to their attorneys the conduct of the case." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 728 (11th Cir. 1987). Rather, the court must assess "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the ... class." London, 340 F.3d at 1253 (citation and internal quotation marks omitted). This assessment must be "stringent," especially where the class representative's potential recovery is dwarfed by the potential

---

(Dkt. 80 at 1; Dkt. 81 Ex. 6; Dkt. 81 Ex. 7). While the circumstances may be questionable, the court finds the deposition testimony more instructive on the issues presented.

attorneys' fees. Id. at 1254.[7]

### a. Sprague's Adequacy

Plaintiffs have failed to provide sufficient evidence establishing Sprague's adequacy as a class representative. The title page and signature page of Sprague's responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. E) do not themselves establish her adequacy and Plaintiffs have provided no other evidence that might do so. Unlike Scott and Spinelli, Sprague provided no affidavit reflecting her understanding and acceptance of the duties of a class representative. Further, Sprague failed to appear for a properly noticed January 2009 deposition and had not appeared for a deposition as of April 10, 2009 (Dkt. 66 at 4). Her lack of interest in the lawsuit makes her unsuitable to represent the putative class. Because Plaintiffs have failed to demonstrate that Sprague would represent the class with sufficient vigor, Sprague is not an adequate class representative.

### b. Scott's Adequacy

Unlike Sprague, the evidence regarding Scott's adequacy is not limited to the title page and signature page of her responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. D). Rather, Scott signed an affidavit indicating an awareness of her duties as a class representative and describing her past participation in this case (Dkt. 56 Ex. B). Moreover, Scott appeared for her January 20, 2009 deposition to answer questions regarding the factual issues underlying this lawsuit, the makeup of the proposed class, her duties as class representatives, and her past involvement in this case.

---

[7] Here, given that Plaintiffs' putative class may contain hundreds of thousands of members (Dkt. 43 at 8) and that the individual recovery amounts may be relatively small (Dkt. 43 at 10 n.9), the need for a stringent examination is "especially great." London, 340 F.3d at 1254.

Scott's deposition testimony, however, reflects serious inconsistencies with the representations set forth in her affidavit. For instance, Scott asserted that she did not know what class she represented, where the class was located, or how she became a class representative (Dkt. 78 Ex. B at 39-40, 44). While asserting that she would be an appropriate class representative, Scott indicated that she had no other duties beyond "stand[ing] up for [her] rights" (Id. at 43-44). She indicated that she did not know whether she had a responsibility to attend the trial but in any case would not do so (Id. at 47). There was also testimony that she had not 1) participated in formulating strategy in this case, 2) discussed the goals of the case, 3) talked about possible settlement of the case, or 4) performed any factual investigation regarding the allegations in the complaint before it was filed (Id. at 34-35). Finally, Scott summed up her efforts at monitoring the case as follows:

> Well, when I speak with him, he just tells me what is going on, and I take it in. You know, he lets me know what's going on, and I just go along with what he says, which I didn't think he would lead me in the wrong direction. He's just straight to the point.

(Id. at 103-04).

Scott clearly has little or no understanding of how she became a class representative or what class she seeks to represent. Even a minimally vigorous involvement in this case would have revealed that the putative class is located in Florida. Further problematic is Scott's testimony that she has little understanding of her responsibilities and that she does not plan to attend the trial. Most troubling is Scott's assertion that she has not discussed the goals of the case and simply goes along with what counsel says. Such practice does not reflect a willingness or ability to protect the interests of the class against the "possibly competing interests of the attorneys." Kirkpatrick, 827 F.2d at 727. Because Scott's testimony directly undermines many of the representations set forth in her affidavit, Plaintiffs have not met their burden of demonstrating Scott's adequacy as a class

representative.

   **c.**  **Spinelli's Adequacy**

As with Scott, Plaintiffs have provided the title page and signature page of Spinelli's responses to Defendants' interrogatories and requests for production (Dkt. 56 Ex. C). Spinelli also signed an affidavit indicating an awareness of his duties as a class representative and describing his past participation in this case (Dkt. 56 Ex. A). Finally, Spinelli appeared for a deposition on January 22, 2009 to answer questions regarding the factual issues underlying this lawsuit, the makeup of the proposed class, his duties as class representatives, and his past involvement in this case.

Spinelli's testimony reflects that he decided to sue Defendants because it was "extraordinarily difficult" to secure the unemployment and disability benefits allegedly promised by Payment Protection (Dkt. 78 Ex. A at 9).[8] After receiving copies of the complaints, he compared them with his own files to verify the accuracy of the allegations (Id. at 17). Spinelli is aware that the class is located in Florida and that the class includes Defendants' customers that "felt the same as [he] did, that they didn't receive the benefits they were promised" (Id. at 20). He recognizes that his duties include testifying truthfully in this matter, attending depositions, and attending the trial if necessary (Id. at 19-21). Finally, he promises to represent the class members "to the best of [his] abilities" (Id. at 48).

Considering the evidence as a whole, Spinelli's testimony and participation in this case indicate that he will vigorously represent the interests of the class in this matter. See e.g. Veal v. Crown Auto Dealerships, Inc., 236 F.R.D. 572, 578-79 (M.D. Fla. 2006) (finding proposed

---

[8] Although Spinelli also believed that this case concerned issues such as credit limits and annual fees, this belief does not mean he is unaware of the issues actually raised in the complaint.

representative adequate where his deposition testimony demonstrated, "albeit minimally," that he 1) understood what the case was about, 2) understood his responsibility to represent the interests of others, 3) had participated and was willing to continue to participate in the litigation of the class claims, and 4) was willing and able, via class counsel, "to take an active role in the litigation and to protect the interests of the class as a whole"). There is "no persuasive reason to believe that the class members will suffer or that their due process rights will suffer as a result of [Spinelli's] representation." Id. at 579. Accordingly, Spinelli is an adequate representative of both the class and the sub-class in this matter.

### d. Costs of Notice

Defendants contend that neither Plaintiffs nor Plaintiffs' counsel have shown themselves capable of providing adequate notice of this suit to potential class members (Dkt. 66 at 13). Defendants assert that the size of the putative class "easily exceeds 729,000" and estimate that the cost of notifying potential class members would exceed $400,000 (Id.). Defendants submit that Plaintiffs have "failed to establish that they or their counsel are willing and able to bear this cost, and hence have not established their adequacy to provide the notice to putative class members that due process requires" (Id. at 13-14).

On May 20, 2009, Plaintiffs replied to Defendants' contentions (Dkt. 75). Plaintiffs' counsel represented that they had "agreed to advance the costs of litigation" and that it had "always been contemplated that upon certification of the proposed class, they would notify the class through the notice program approved by this Court" (Id. at 3). In support of these statements, Brent Walker, Esq. filed a sworn declaration averring that counsel "are financially able and willing to provide notice to the proposed Class in accord with a court-approved notice program" (Dkt. 76). Mr. Walker

9

clarified that "[i]f the Litigation generates a fund for the Class, Plaintiffs' Counsel will seek reimbursement of their costs and expenses by application to the Court. If no recovery for the Class is obtained, there will be no obligation on the Plaintiffs' part to pay any costs or expenses" (Id.).

On May 27, 2009, Defendants filed a sur-reply arguing that Plaintiffs had failed to provide evidence showing their ability and willingness to bear the costs of class notice (Dkt. 82). Defendants reasoned that Plaintiffs had only demonstrated their attorneys' agreement to advance the costs of litigation but "ha[d] not shown - and ha[d] not even alleged - that their counsels' firms can and will pay the costs associated with class notice" (Id. at 2). Defendants submitted that "Mr. Walker, who is not a partner at his firm, did not offer any evidence to show that he has the authority to commit his firm to notice costs at all, let alone notice costs in excess of $400,000" (Id.).

Class representatives have been deemed adequate despite their reliance on counsel to bear the costs of postage for class notice. See Roper v. Consurve, Inc., 578 F.2d 1106, 1112 (5th Cir. 1978).[9] In Roper, the court noted that counsel "properly offered to advance that sum looking to the named plaintiffs for repayment if required. Their clients offered a note and mortgage on realty as security. Counsel [had] also offered to give a bond to guarantee that the notice costs [would] be met." Id. Notably, the court recognized that finding representatives inadequate based on an inability to finance a class action

> is a rather tricky consideration that must be treated with some care because if financial capacity is emphasized, it may mean that poorer claimants will be prevented from maintaining class actions. Accordingly, discretion is required; although the ability to fund the case is a factor, it probably should not be a determinative factor.

---

[9] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Id. at 1112 n.4.

Given Mr. Walker's sworn statement that his firm is able and willing to advance the class notification costs in this matter, the adequacy requirement is met in financial terms. See e.g. Alfred v. Okeelanta Corp., No. 89-8285-CIV-RYSKAMP, 1991 WL 177658, at *13 (S.D. Fla. Apr. 16, 1991) (finding class counsel adequate where they "agreed to advance litigation costs, including the costs of notice to class members"). Indeed, Spinelli's personal ability to bear the costs of notice is of little import given Mr. Walker's assurance that any notice costs advanced by his firm will not be recovered from Spinelli directly but rather only from any fund generated as a result of this suit (Dkt. 76). Accordingly, Spinelli is an adequate class representative regardless of his ability to bear the costs of class notice.

## II.  Predominance and Superiority

In addition to satisfying the requirements in Rule 23(a), plaintiffs seeking to certify a class must satisfy the requirements of at least one subsection of Rule 23(b). Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). Plaintiffs seek to proceed pursuant to Rule 23(b)(3) (Dkt. 33 at 12-16), "which additionally requires findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." Vega, 564 F.3d at 1265 (citations omitted).

### a.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). "Common issues of fact and law predominate if they ha[ve] a direct impact on

every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004) (alteration in original) (citation and internal quotation marks omitted). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." Busby, 513 F.3d at 1324 (citation and internal quotation marks omitted).

Plaintiffs contend that common questions are "legion in this action and stem from Defendants' fraudulent, deceptive, unlawful and/or unfair practices to sale, bill and/or market its Payment Protection 'product'" (Dkt. 33 at 12). Plaintiffs further submit that "the focus of the trial will be the conduct of Capital One and whether they misled and/or failed to disclose material facts to consumers" (Id.).

Defendants respond that Plaintiffs' arguments "assume that every single enrollee in Payment Protection residing in Florida believes she (1) was not provided with sufficient information about the product prior to enrolling *and* (2) was subsequently provided with 'misleading and obfuscatory' information" (Dkt. 35 at 14). Defendants maintain that each putative class member would individually have to show 1) what information was received from Defendants; 2) when and how the information was received; 3) how the information was misleading or deceptive; 4) actual deception; and 5) reliance on the information that caused damages (Id. at 14-15).

The parties obviously disagree as to the nature of this suit. As the court previously recognized, "Plaintiffs submit that anyone who purchased 'Payment Protection' was deceived and suffered a resulting injury because 'the exclusions and administrative and bureaucratic hurdles imposed by Capital One make the Payment Protection product virtually worthless'" (Dkt. 43 at 4

(quoting Dkt. 33 at 3)). "Plaintiffs propose that anyone who purchased 'Payment Protection' was necessarily deceived as to the value of 'Payment Protection' and suffered damages in the form of funds expended to enroll in the program" (Dkt. 43 at 4). Thus, Plaintiffs' class definition "properly leaves for trial the determination of whether 'Payment Protection' in fact has value to those who qualify for the program" (Id. at 5).

"A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." City First Mortgage Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Here, the question is not whether Payment Protection had unique value to each customer, but rather whether the product had some value or no value. This is a "binary and predominant issue" that encompasses the putative class members' individual claims. See e.g. Busby, 513 F.3d at 1324-26 (finding Rule 23(b)(3) satisfied where class representative contended that defendant provided "no services" in exchange for its fee; whether defendant provided "any services" or "no services" was "a binary and predominant issue").[10] Moreover, this question predominates over any individualized inquiries into Plaintiffs' damages, i.e., the funds expended to enroll in Payment Protection. See id. at 1322, 1326 (finding common issues predominated despite defendant's claim that class included individuals that paid different amounts for different services). Consequently, Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

**b.    Superiority**

The superiority prong of Rule 23(b)(3) focuses on "the relative advantages of a class action

---

[10] If Payment Protection had value to its enrollees, Plaintiffs may not prevail. See Busby, 513 F.3d at 1326 ("If [defendant] provided any services for the [fee], then, as [plaintiff's] counsel made abundantly clear at oral argument, the class action cannot continue.") At this stage of the proceedings, however, the inquiry is simply whether "this matter is suited for class review." See id.

suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269 (citations omitted). "In many respects, the predominance analysis ... has a tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individualized issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Id. (citations omitted).

"Rule 23(b)(3) provides what the Advisory Committee Notes describe as a non-exhaustive list of four factors that are pertinent to the finding of superiority." Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1358 (11th Cir. 2009). These factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Rule 23(b)(3).

Here, "[t]here is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation, so the first factor does not counsel against class certification." Klay, 382 F.3d at 1269. The second factor is similarly unavailing to Defendants as "there are no class members separately pursuing other cases involving the same claims and parties." Id. Concentrating the litigation of Plaintiffs' claims in this forum is desirable given that 1) "the total amount sought by each individual plaintiff is small in absolute terms," 2) "the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually," and 3) this court has

"already handled several preliminary matters." Id. at 1270-71.  Finally, given that common issues predominate over any individualized issues, the court "would be hard pressed to conclude that a class action is less manageable than individual actions." Id. at 1273.  Indeed, any management problems stemming from class certification would certainly be exceeded by the problems in managing hundreds of thousands of separate lawsuits.  See id. (expressing doubt that class action would create more problems than 600,000 separate lawsuits).  Altogether, Plaintiffs have shown that "it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly." Id.

## Conclusion

Plaintiffs have established, as required by Rule 23(a)(4), Fed. R. Civ. P., that Kenneth Spinelli is an adequate named representative for the proposed class and sub-class and will adequately prosecute this action.  Moreover, Plaintiffs have satisfied the predominance and superiority requirements in Rule 23(b)(3), Fed. R. Civ. P.[11]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)  Plaintiffs' Motion for Class Certification (Dkt. 32), as amended (Dkt. 55; Dkt. 56), be **GRANTED IN PART** to the extent that:

    (a)  Kenneth Spinelli is an adequate representative of Plaintiffs' proposed class and sub-class;

    (b)  Plaintiffs' counsel is adequate to represent Plaintiffs' proposed class and sub-

---

[11] In supplemental briefs (Dkt. 77; Dkt. 85), the parties dispute whether the class period must end on March 1, 2008 when Defendant Capital One became a national bank. Given that the motion referred to the undersigned addressed only the requirements set forth in Rule 23(a)(4) and (b)(3), any issue regarding any limitations on the class period is premature and can be addressed at a later date, if appropriate.

      class; and

    (c)    Plaintiffs' proposed class and sub-class satisfy the requirements of Rule 23(a)(4) and (b)(3), Fed. R. Civ. P.

**Date: August 20, 2009**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge