KENNETH SPINELLI, et al.,

        Plaintiffs,

v.                      Case No.  8:08-cv-132-T-33EAJ

CAPITAL ONE BANK, et al.,

        Defendants.

_____/

## ORDER

This cause is before the Court pursuant to the report and recommendation of Elizabeth A. Jenkins, United States Magistrate Judge (Doc. # 96), in which Judge Jenkins recommends that Plaintiffs' amended motion for class certification (Doc. # 55) be granted in part. On September 3, 2009, Defendants filed objections to Judge Jenkins' report and recommendation, and such objections are ripe for this Court's review. (Doc. ## 97, 100).

For the reasons that follow, this Court adopts Judge Jenkins' report and recommendation and will allow this case to proceed as a class action.

## I.  Background

Plaintiffs filed a second amended class action complaint against Defendants on February 28, 2008. (Doc. # 16).[1]

---

[1] Defendants removed the case from state court on January
(continued...)

Plaintiffs are comprised of a proposed class and sub-class of Defendants' current and former customers who were solicited to participate in Defendants' Payment Protection program.[2]

Plaintiffs characterized the Payment Protection program as "virtually worthless because of the numerous restrictions that are imposed after the consumer accepts or receives the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the Florida consumer who attempts to secure payments from Capital One under this coverage." (Doc. # 16 at ¶ 24). Plaintiffs explain: "This product is sold to Florida consumers without any consideration for the circumstances or any reasonable investigation into facts that may cause the product to be worthless to the consumer. For instance, many Florida senior citizens and retired persons are charged for this product although they are

---

[1](...continued)
18, 2008, asserting diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). (Doc. # 1).

[2] As stated by Plaintiffs, "Payment Protection is represented to the consumer to be a Capital One product that will pay minimum payments on credit cards under certain circumstances for a limited period of time, and thereby 'protect' the consumer's credit by insuring that timely payments are made on account balances so that the consumer does not sustain additional fees, charges and penalties on credit card balances or adverse credit reporting to the credit bureaus." (Doc. # 16 at ¶ 4).

categorically excluded from Payment Protection payments . . ." (Doc. # 16 at ¶ 25).

Among other things, Plaintiffs contend that Defendants' solicitation of Plaintiffs' participation in the Payment Protection program was in violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. §§ 501.201, et seq.

On October 30, 2008, Plaintiffs filed their motion for class certification (Doc. ## 32, 33) and Defendants filed a response in opposition (Doc. # 35) on November 13, 2008. Plaintiffs filed a reply (Doc. # 40), and Defendants filed a sur-reply (Doc. # 41).

This Court referred the class certification motion to Judge Jenkins for the issuance of a report and recommendation, and on December 16, 2008, Judge Jenkins filed her report and recommendation (Doc. # 43). In her report and recommendation, Judge Jenkins determined, among other things, that Plaintiffs satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements. However, Judge Jenkins determined that Plaintiffs failed to satisfy Rule 23(a)'s adequacy requirement. Judge Jenkins recommended that Plaintiffs be permitted to present additional evidence and briefing on the issue of adequacy.

On January 30, 2009, Plaintiffs filed the amended motion for class certification addressing the areas previously found to be deficient by Judge Jenkins. (Doc. ## 55, 56). On April 10, 2009, Defendants filed a response in opposition to the amended motion for class certification (Doc. # 66), and on April 20, 2009, this Court referred the amended motion for class certification to Judge Jenkins for the issuance of a second report and recommendation. (Doc. # 70). Judge Jenkins' report and recommendation, in which she recommends that the amended motion for class certification be granted in part (Doc. # 96), as well as Defendants' ripe objection to the report and recommendation, are before the Court.

## II. __Legal Standard__

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); __Williams v. Wainwright__, 681 F.2d 732, 732 (11th Cir. 1982), __cert. denied__, 459 U.S. 1112 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, __Garvey v. Vaughn__, 993 F.2d 776, 779 n. 9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28

U.S.C. § 636(b)(1)(c). The district judge reviews legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

## III. **The Report and Recommendation**

Having previously determined that Plaintiffs have satisfied Rule 23(a)'s numerosity, commonality, and typicality requirements, Judge Jenkins, in the present report and recommendation, analyzes whether Plaintiffs satisfy Rule 23(a)'s adequacy requirement.

In addition, pursuant to Rule 23(b)(3), she examines whether, "common questions of law or fact predominate over questions affecting only individual class members ('predominance')" and whether "a class action is superior to other available methods for adjudicating the controversy ('superiority')." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009).

### A. **Adequacy of Class Representative and Counsel**

A class may be certified only if the representative parties will fairly and adequately protect the interests of the class. (citations omitted). "The adequacy of representation requirement encompasses two separate inquires:

(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." <u>Busby v. JRHBW, Inc.</u>, 513 F.3d 1314, 1323 (11th Cir. 2008). Judge Jenkins examined the proposed class representatives (Kenneth Spinelli, Janice Scott, and Heather Sprague) and determined that only Spinelli qualifies as an adequate class representative.

In addition, Judge Jenkins determined that class counsel were adequate.

**B.    <u>Predominance and Superiority</u>**

As explained in <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 615 (1997), "To qualify for certification under Rule 23(b)(3), a class must meet two requisites beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." (Internal citations omitted).

Judge Jenkins determined that the requirement of predominance is met because the common question of whether Defendants' Payment Protection program had any value predominates over any other issue.

As to superiority, Judge Jenkins evaluated the factors enumerated in <u>Williams v. Mohawk Indus. Inc.</u>, 568 F.3d 1350, 1358 (11th Cir. 2009):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) The likely difficulties in managing a class action.

Judge Jenkins determined that "Plaintiffs have shown that 'it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly.'" (Doc. # 96 at 15)(citing <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1273 (11th Cir. 2004)).

Thus, Judge Jenkins recommended that this case should be certified as a class action.

## IV. <u>Objections</u>

Defendants object to Judge Jenkins' analysis of Spinelli as class representative. Defendants contend that Judge Jenkins did not perform a vigorous analysis of his qualifications. Defendants further contend that class counsel are not adequate due to their association with another

attorney who has pleaded guilty to criminal charges stemming from his misappropriation of settlement money. Defendants also focus on faulty affidavits class counsel submitted to the Court in these proceedings. In addition, Defendants object to Judge Jenkins' predominance and superiority findings. Last, Defendants argue that Judge Jenkins erred by failing to close the class period as of March 1, 2008, when Capital One became a national bank.

### A. <u>Adequacy of Spinelli and Class Counsel</u>

#### 1. <u>Spinelli</u>

Defendants contend Judge Jenkins erred when she determined that Spinelli will fairly and adequately protect the interest of the class. Defendants contend that "Spinelli testified that he does not know what a class representative is, what responsibilities a class representative has, or what claims are being asserted in this case. He further testified that he has not participated in formulating case strategy, has not discussed the goals of the litigation with counsel, and, in fact, generally communicates with counsel less than twice a year." (Doc. # 97 at 3).

Plaintiffs counter that Defendants have "selectively" relied upon Spinelli's deposition testimony in an effort to make him look as inadequate as possible. (Doc. # 100 at 3).

Plaintiffs point to portions of Spinelli's deposition testimony demonstrating that Spinelli is knowledgeable about the Payment Protection plan and the purpose of the class action. This Court has reviewed the deposition testimony and determines, as Judge Jenkins did, that Spinelli is adequate. Spinelli is a retired senior citizen residing in Florida who purchased Payment Protection, his is not a professional plaintiff. Judge Jenkins found that Spinelli recognizes his duties to include testifying truthfully in this matter, attending depositions, and attending trial if necessary. Further, Spinelli promised to represent the class members to the best of his abilities. (Doc. # 96 at 8). At times his deposition testimony reveals some unfamiliarity with the legal system; however, this is not a sufficient basis to exclude him as a class representative. Upon due consideration, the Court finds that Spinelli is an adequate class representative under Rule 23(a)(4).

### 2. Counsel

The adequacy requirement of Rule 23(a) "involves questions of . . . whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." Pop's Pancakes, Inc. v. NuC02, 251 F.R.D. 677, 683 (S.D. Fla. 2008)(citing Griffin v. Carlin, 755 F.2d 1516,

1533 (11th Cir. 1985)). Defendants contend that class counsel are inadequate because they tendered nonconforming affidavits, containing false statements, to the Court, and because "one of the law firms representing plaintiffs, until very recently, was controlled by a now admitted felon whose crime consisted of the misappropriation of class settlement funds." (Doc. # 97 at 9).

Judge Jenkins determined that class counsel is adequate. The Court adopts her recommendation after performing additional review of the lawyers and firms representing the class: Brent Walker, Esq. and Hank Bates, Esq. of the firm of Carney Williams; Steven A. Owings, Esq. of the Owings Law Firm; and Kevin McLaughlin, Esq. of the firm of Wagner, Vaughan, McLaughlin & Brennan, P.A.

The attorneys have submitted exhaustive information concerning the qualifications of their firms, and the Court's review of these materials confirms that "Plaintiffs' Counsel have considerable experience in consumer class action litigation, securities, fraud class actions and complex litigation." (Doc. # 56 at 5, Ex. F, G, & H).

According to the materials tendered to the Court, Attorney Bates graduated from Harvard in 1987, and graduated from Vanderbilt University School of Law in 1992, with many

honors. (Doc. # 56-7 at 9). After serving as a Federal Judicial law clerk to the Honorable Danny J. Boggs, of the United States Court of Appeals for the Sixth Circuit, Attorney Bates focused his practice on environmental defense work. He "has represented numerous individuals and entire communities . . . in complex and high-profile litigation involving air pollution, groundwater pollution and toxic exposures resulting in multi-million dollar recoveries and agreements . . . ." (Doc. # 56-7 at 9). He is also a consumer protection attorney. (Id.)

Attorney Walker graduated from the University of Mississippi with a Bachelor of Business Administration degree in accounting. He earned his Master's degree in business from Mississippi State University, and then graduated from the University of Arkansas with his *juris doctor*. His focus is securities fraud, and he has had significant involvement in numerous multi-million dollar settlements. (Doc. # 56-7 at 13). Attorney Owings also attended the University of Arkansas. (Doc. # 56-8). He is the founder of his law firm, and "has substantial experience in the area of class action litigation, particularly in the area of consumer fraud." (Id.)

Attorney McLaughlin, a graduate of Stetson University College of Law, is an AV rated attorney located in Tampa, Florida. (Doc. # 56-9).

Defendants do not appear to challenge the adequacy of any of the attorneys listed above, individually. Instead, Defendants contend (1) that a former attorney associated with the Carney Williams firm is a criminal; and (2) that problems associated with the class representatives' affidavits reveal that counsel for Plaintiffs are unskilled and careless.

### a. <u>Attorney Gene Cauley</u>

Defendants make much of the fact that a former attorney of the Carney Williams firm, Attorney Cauley, pleaded guilty to criminal charges stemming from his misappropriation of lawsuit settlement monies. The Court would be much more concerned if Attorney Cauley were presently attempting to act as class counsel in this case. The record shows that he is, in no way, involved in the present matter. Judge Jenkins thoroughly addressed the impact of Attorney Cauley's misdeeds, and she determined that the Carney Williams firm should not be disqualified due to Attorney Cauley's conduct. The Undersigned District Judge agrees with her analysis.

### b. <u>Faulty Affidavits</u>

Defendants point to various flaws in affidavits counsel for Plaintiffs have furnished to the Court, and Defendants assert that the faulty affidavits demonstrate that counsel for Plaintiffs are inadequate.

The Court agrees with Defendants that the affidavits in question are somewhat troubling. The affidavits do not appear to comply with the technical requirements of either Florida or Federal law. In addition, it appears that there are some discrepancies between the statements in the affidavits and the deposition testimony of the affiants. Nevertheless, these problematic affidavits do not mandate disqualification of Plaintiffs' counsel.

Judge Jenkins noted that she relied on the class representatives' deposition testimony, rather than their affidavits. Counsel for Plaintiffs should review the applicable requirements for affidavits before tendering future affidavits in this case. The Court, however, declines to disqualify class counsel on the basis of the affidavits.

Upon due consideration, the Court finds that Brent Walker, Esq. and Hank Bates, Esq. of the firm of Carney Williams; Steven A. Owings, Esq. of the Owings Law Firm; and Kevin McLaughlin, Esq. of the firm of Wagner, Vaughan,

McLaughlin & Brennan, P.A. are adequate under Rule 23(a)(4).
Furthermore, the Court appoints these attorneys pursuant to
Rule 23(c)(1)(B) and Rule 23(g).

**B.** **Predominance and Superiority**

Defendants argue that Plaintiffs have provided
insufficient evidence of the predominance and superiority
issues and that Judge Jenkins glossed over these issues
without sufficient analysis. (Doc. # 97 at 10-12).

After reviewing Judge Jenkins' analysis and the parties'
submissions, the Court concludes that Plaintiffs have
satisfied the requirements of predominance and superiority.
The Court agrees that the issue of whether the Payment
Protection program was worthless predominates over individual
inquires.

Furthermore, as to superiority, Defendants stated in
response to discovery that 352,376 Florida consumers were
enrolled in Payment Protection. (Doc. # 32 at 6). It would
not be feasible for this Court to entertain hundreds of
thousands of individual suits against Defendants all focused
on Payment Protection. In addition, the Court agrees with
Judge Jenkins' finding that "there is no reason to believe
that the putative class members in this case have any

particular interest in controlling their own litigation."
(Doc. # 96 at 14).

As stated in <u>Amchem</u>, 521 U.S. at 608, "The policy at the
very core of the class action mechanism is to overcome the
problem that small recoveries do not provide the incentive for
any individual to bring a solo action prosecuting his or her
rights." The Court agrees with Plaintiffs' argument that "a
reasonable cost/benefit analysis would not justify such an
action for an individual litigant." (Doc. # 32 at 14).
<u>See also</u> 7A Wright and Miller, <u>Federal Practice & Procedure</u>,
§ 1779 at 557 ("a group composed of consumers . . . typically
will be unable to pursue their claims on an individual basis
because the cost of doing so exceeds any recovery they might
secure.")

Upon due consideration, the Court determines that
Plaintiffs have satisfied the predominance and superiority
requirements of Rule 23(b).

### C. **Class Period**

Last, Defendants assert that Judge Jenkins should have
limited the class period to March 1, 2008, the date that
Capital One became a national bank. In the report and
recommendation, Judge Jenkins raised the issue of the class
period, but noted that she did not address it because it was

not referred to her for a report and recommendation. (Doc. #
96 at 15).

The Court has evaluated the parties' respective positions
on Defendant's status as a national bank. Upon due
consideration, the Court determines that the class period
should end on March 1, 2008, when Capital One Bank changed its
charter from that of a Virginia general purpose bank to that
of a national bank named "Capital One Bank (USA), N.A." (Doc.
# 85 at 1).

In <u>Watters v. Wachovia Bank, N.A.</u>, 550 U.S. 1, 6 (2007),
the Court held, that "national banks are controlled by the
National Bank Act, 12 U.S.C. § 1, et seq., and regulations
promulgated thereunder by the Office of the Comptroller of the
Currency (OCC). As the agency charged by Congress with
supervision of the NBA, OCC oversees the operations of
national banks and their interactions with customers."

Defendants correctly argue that the National Bank Act
preempts state law. The Supreme Court explains that "federal
control shields national banking from unduly burdensome and
duplicative state regulation." <u>Watters</u>, 550 U.S. at 11. The
Court further explains:

> Diverse and duplicative superintendence of national
> banks' engagement in the business of baking, we
> observed over a century ago, is precisely what the

NBA was designed to prevent: "The legislation has
in view the erection of a system extending
throughout the country, and independent, so far as
powers conferred are concerned, of state
legislation which, if permitted to be applicable,
might impose limitations and restrictions as
various and as numerous as the States."

Watters, 550 U.S. at 14 (citing Easton v. Iowa, 188 U.S. 220,

229 (1903)).

In the same opinion, however, the Court stated,

"Federally chartered banks are subject to state laws of

general application in their daily business to the extent such

laws do not conflict with the letter or the general purposes

of the NBA." Watters, 550 U.S. at 11. As an example, the

Watters Court noted that national banks are subject to state

usury laws. Id.

Plaintiffs contend that the FDUTPA (the basis of

Plaintiffs' complaint) is a "generally applicable consumer

protection law" and, therefore, is not preempted by the NBA.

(Doc. # 77 at 5). Plaintiffs' arguments over simplify the

issue.

Defendants' comprehensive analysis of the law of

preemption and banking regulations is correct. As stated in

Fla. State Conf. of the NAACP v. Browning, 522 F.3d 1153 (11th

Cir. 2008):

> Where the two conflict, federal law trumps state
> law; that was always clear. What constitutes a
> conflict is often less clear. The well-worm
> taxonomy of preemption doctrine identifies three
> categories: (1) express preemption; (2) field
> preemption; and (3) conflict preemption. Express
> preemption occurs when Congress manifests its
> intent to displace a state law using the text of a
> federal statute. Field and conflict preemption in
> turn have been considered under the umbrella term
> of "implied preemption." Field preemption occurs
> when a congressional legislative scheme is so
> pervasive as to make the reasonable inference that
> Congress left no room for the states to supplement
> it. Conflict preemption occurs either when it is
> physically impossible to comply with both the
> federal and the state law or when the state law
> stands as an obstacle to the objective of the
> federal law.

Id at 1167 (internal citations omitted).

Defendants' Payment Protection program is a "Debt Agreement" as defined by the OCC Regulations. See 12 C.F.R. § 37.2 (f), (g). The National Bank Act and the OCC's implementing regulations provide that state law on the subject of Debt Agreements is subject to express preemption: such agreements are governed by 12 C.F.R. Part 37 and "applicable Federal law and regulations, and **not . . . by State law**." 12 C.F.R. § 37.1 (c)(emphasis added).

In addition, the Court determines that field preemption also applies because the OCC's comprehensive scheme of regulation leaves no room for state law when it comes to Debt Agreements. Part 37 ("Debt Cancellation Contracts and Debt

Suspension Agreements") authorizes national banks to enter into Debt Agreements (12 C.F.R. § 37.1); prohibits certain practices, including misrepresentation (12 C.F.R. § 37.3); provides the terms for refunds (12 C.F.R. § 37.4); mandates disclosures (12 C.F.R. § 37.6); and requires that a national bank obtain and document the customer's affirmative election to purchase the contract and the customer's receipt of the disclosures (12 C.F.R. § 37.7).

The Court agrees with Defendants that forcing national banks entering into Debt Agreements to comply with the laws of the 50 states would thwart the purpose of the OCC regulations, which are aimed at providing a "comprehensive Federal consumer protection scheme." OCC, Final Rule, 67 Fed. Reg. 58962, 58963 (Sept. 19, 2002).

Thus, the Court ends the class period at March 1, 2008.

## V.   Rule 23(C) Findings

As the Court has granted the motion for class certification, the Court "must define the class and class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Rule 23(c)(1)(B).

The Class is defined as: All residents of the State of Florida who, before March 1, 2008, (1) were solicited by Capital One by mail and/or telephone; (2) who were marketed by

Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage. (Doc. # 32 at 1).

The Sub-Class is defined as: A subset of all residents of the State of Florida who, before March 1, 2008, were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One. (Doc. # 32 at 2).

This Court has addressed the claims and other issues involved in this class action in this order and its order adopting Judge Jenkins' initial report and recommendation, and this Court incorporates those orders by reference. (Doc. ## 43, 61).

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The report and recommendation of Elizabeth A. Jenkins, United States Magistrate Judge (Doc. # 96) is **ADOPTED, CONFIRMED,** and **APPROVED** and is made a part of this Order for all purposes, including appellate review.

(2) Plaintiffs' motion for class certification (Doc. # 32), as amended (Doc. # 55) is granted as specified in this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of September 2009.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record