UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH SPINELLI,**
**Linda R. McCoy, Lisa Sullivan, Anthony Mitchell,**
**Elizabeth Silicato, Patricia Tinder,**
**Laverne Scruggs, Rose Carr,**
**Robin Deaver, Michael Blackie,**
**Trina Blackman, Alice Lewandowski**
**Harold Smith, Trudy Smith,**
**Jeremy Morrow, David Watlington,**
**and Jeff Salazar**
**Individually and for all other persons similarly situated,**

     **Plaintiffs**

**v.**                                                          Case No.  **8:08-CV-132-T-33EAJ**

**CAPITAL ONE BANK (USA), N.A. and**
**CAPITAL ONE SERVICES, LLC.,**

     **Defendants**
_____/

## FOURTH AMENDED AND SUBSTITUTED
## CLASS ACTION COMPLAINT

Plaintiffs Kenneth Spinelli, Linda R. McCoy, Anthony Mitchell, Elizabeth Silicato,

Patricia Tinder, Laverne Scruggs, Rose Carr, Robin Deaver, Michael Blackie, Trina Blackman,

Alice Lewandowski, Harold Smith, Trudy Smith, Jeremy Morrow, David Watlington and Jeff

Salazar acting individually and on behalf of all other persons similarly situated, for the fourth

amended and substituted class action complaint and demand for jury trial states, and alleges as

follows:

**I.**     **Introduction.**

1

1.     This case is a class action brought against Capital One Bank (USA), N.A., and Capital One Services, LLC on behalf of a national class of Capital One credit cardholders, alleging causes of action for breach of contract, for violations of the Truth in Lending Act, for violations of state deceptive trade practices acts, and asserting common-law and equitable causes of action.

2.     The Court certified a class comprised of Florida residents, defined as follows:

(a)     All natural persons who have or had residents of the State of Florida who, before March 1, 2008, (1) were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage.

(b)     The Sub-Class is defined as: A subset of all residents of the State of Florida who, before March 1, 2008, were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One.

Doc. 101, Order Certifying Class.  Plaintiffs ask the Court to certify a national settlement class defined as follows:

(a)     (1) All natural persons who have or had Capital One credit card accounts in the United States and who enrolled in and were charged for Payment Protection on or after January 1, 2005 through final approval; or (2) all natural persons, who had a billing address in Florida at the time of enrollment in Payment Protection, who have or had Capital One credit card accounts and who enrolled in Payment Protection on or after September 23, 2003, and were charged for Payment Protection, through final approval. Any cardholder who filed for bankruptcy after enrolling in Payment Protection is excluded from the class.

(b)     Excluded from the proposed Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

3.     Pursuant to the settlement agreement between the parties, all U.S. Capital One cardholders who enrolled in Payment Protection on or after January 1, 2005, are members of the

Settlement Class and may file claims.  Florida residents are also members of the Settlement Class, but may file claims if they enrolled in, and were charged for, Payment Protection on or after September 28, 2003.

4.      Plaintiffs ask the Court to certify a Settlement Class as described in Paragraph 2, above. Pursuant to the Settlement Agreement, the claims period begins on the dates described in Paragraph 2, and continues to the date of final approval of the settlement agreement.  Plaintiffs ask the Court to certify a national class based upon the allegations and causes of action set out in detail below. Throughout this complaint, the group of all Capital One cardholders who enrolled in Payment Protection during the designated time periods, and were charged for Payment Protection, is referred to as the Class.

*Jurisdiction and Venue*

5.      Substantial acts which give rise to the causes of action asserted herein occurred in this State and within this venue.  Capital One's marketing practices that are the subject of this lawsuit were uniform throughout the United States.

6.      Venue is proper in this Court because class representative Kenneth Spinelli resides in Citrus County, Florida, and Florida Class members are citizens of Florida.  Pursuant to 28 U.S.C. §1391(c), the defendant Capital One is deemed to reside in this District because it is subject to personal jurisdiction in this District and because Capital One has continuous and systematic contacts with this State through issuing credit cards, offering credit card products such as Payment Protection, and because Capital One sends  monthly statements and sells products and services in Florida to Florida residents.

7.      This Court has jurisdiction to resolve the claims alleged in this complaint that are

3

uniform throughout the United States, and has pendent jurisdiction to resolve, or approve a settlement class for, claims asserted by both the Florida Class and the National Class of Capital One cardholders as described herein.

*Plaintiffs*

8.      Plaintiff and appointed class representative  Kenneth Spinelli is a senior citizen of the State of Florida, and has been a retired person at all relevant times, residing in Citrus County, Florida.  Kenneth Spinelli and his wife, Judith Spinelli, received multiple credit cards from Capital One bearing Payment Protection features.

9.      Plaintiffs ask the Court to allow the following Plaintiffs, in addition to plaintiff Spinelli, to serve as class representatives for the purposes of the settlement class:

(a)     Linda R. McCoy, putative class representative in *McCoy v. Capital One Bank (USA), N.A., et al.*, U.S. District Court, S.D. California, Case Number 3:10-cv-00185-L-CAB;

(b)     Anthony Mitchell, Elizabeth Silicato, Patricia Tinder and Laverne Scruggs, putative class representatives in *Mitchell, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. District Court, Central District of California, Case Number CV10-2672-SVW.

(c)     Rose Carr and Robin Deaver, putative class representatives in *Carr, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. Dist. Ct., Dist. of New Jersey, Case Number 1:10-cv-01014-JS.

(d)     Michael Blackie, Trina Blackman, and Alice Lewandowski, putative class representatives in *Blackie, et al. v. Capital One  Bank (USA), N.A., et al.*,

4

U.S. Dist. Ct. E.D. Pennsylvania, Case No. 2:10-cv-00823-BMS;

(e)     Harold Smith, Trudy Smith, and Jeremy Morrow, putative class representatives in *Smith, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. District Court, E.D. Ark, Case No. 4-10-CV-0160SWW;

(f)     David Watlington, putative class representative in *Watlington, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. Dist. Ct. Middle District of North Carolina, Case No. 1:10-CV-00171-AU-WWD.

(g)     Jeff Salazar, putative class representative in *Salazar v. Capital One Bank (USA), N.A., et al.*, U.S. Dist. Ct. South Carolina, Spartanburg Division Case C.A. No.: 7:10-cv-00021-HFF.

(h)     Lisa Sullivan, putative class representative in *Sullivan v. Capital One Bank (USA), N.A., et al.*, U.S.D.C. Connecticut, Civil Action No. 3:10-CV-00092 (CSH).

10.     The members of the Florida Class and subclass are residents of the State of Florida.

11.     The members of the National Class are residents of the United States.

*Defendant Parties.*

12.     Capital One Bank was a Virginia state chartered bank at the time this lawsuit was filed and at the beginning of the class period. On March 1, 2008, Capital One Bank changed its charter from that of a Virginia Bank to that of a national bank named "Capital One Bank (USA), N.A." and is therefore a successor to Capital One Bank. Capital One Services LLC is a successor to Capital One Services, Inc., and provided credit card services to Capital One Bank

(USA), N.A., including services for marketing and managing Capital One's Payment Protection product, and is therefore a proper party to this suit. Throughout this complaint all defendants are referred to collectively as "Capital One" unless specifically identified as separate entities.

13.     The payments by Capital One credit card holders for Payment Protection were paid to Capital One Bank or Capital One Bnak (USA), N.A..

*Identification of Third Party Capital One Vendors (non parties).*

14.     Stonebridge Benefit Services, Inc. ("Stonebridge") is a third party under contract with Capital One to provide services for the product development, marketing, claims processing, managing, product analysis and reporting for Capital One's Payment Protection product.

15.     Stonebridge Benefit Services is a subsidiary of Aegon Insurance Company.

16.     Stonebridge Life Insurance Company, Inc. ("Stonebridge Life") is an insurance company that is licensed in Florida, and is a subsidiary of Aegon.

*Statement of Facts - Marketing of Payment Protection*

17.     The proposed class representatives are among the hundreds of thousands of U.S. residents who enrolled in, and were charged for, Capital One's Payment Protection product. Capital One cardholders throughout the United States were marketed by Capital One using standardized marketing practices and written materials that did not vary in any significant way from state to state.

18.     There are thousands of Florida and national Capital One cardholders who have paid for Payment Protection and are not eligible to receive benefits. The terms and exclusions for Payment Protection are not adequately disclosed to consumers before consumers buy the product, and Payment Protection coverage is so restricted in benefits, and processing claims

under the coverage is made so difficult by Capital One, that the product is essentially worthless.

19.     Capital One makes no effort at the time of sale to determine if the Payment Protection coverage is available to the consumer before charging for the product. For example, numerous senior citizens and retired Capital One cardholders are charged for Payment Protection although they are excluded from receiving benefits by Capital One because they are not employed.

20.     Capital One increased its fee income by intentionally developing and marketing the Payment Protection product, while providing little or no benefits to class members.

21.     Payment Protection is a product or service that Capital One sold to its Florida and National credit cardholders during the class period for a price of either $.89 or $.99 per $100 of month ending credit card balance in each billing cycle.

22.     The charge for Payment Protection resulted in an increase of either 9.6% or 11.88% per annum in charges assessed to Florida and National Capital One cardholders who purchased Payment Protection during the class period.

23.     Capital One does not identify the charges for Payment Protection as a "cost of credit" for purposes of its Truth in Lending Act disclosures.

24.     During the class period Payment Protection was primarily marketed to Florida and National consumers by telemarketing.

25.     Before Capital One or its vendors make a Payment Protection sales call to a Florida or National Capital One cardholder, Capital One has a substantial amount of personal information about the cardholder. This information comes from the credit card application and from other consumer research that Capital One performs. At a minimum, at the time of the

telemarketing phone call, Capital One has the cardholder's age, address and zip code.

26.     Telemarketing for Payment Protection occurred either on an "outbound" basis in which one of Capital One's vendors initiated a telephone call to a Capital One cardholder, or on an "inbound" basis, when a Florida or National cardholder or consumer called Capital One.

27.     In the case of telemarketing, the time of sale of Payment Protection was during the telephone call with the consumer, when the customer verbally agreed to accept and pay for Payment Protection.

28.     Capital One's marketing materials told consumers that "Payment Protection is designed to offer you peace of mind and financial well being if something unexpected should happen," and that "It (Payment Protection)  provides peace of mind in knowing that the minimum monthly payment on your eligible balance will be paid and helps safeguard your good credit rating."

29.     During the telemarketing sales call a consumer is promised that Payment Protection will pay the minimum monthly payment if the primary cardholder, or in some instances the secondary cardholder, is involuntarily unemployed or unable to work due to disability.

30.     During the telemarketing sales call and at the time of sale, Capital One (or its vendor) does not ask the cardholder a single question to determine if Payment Protection is appropriate for the customer.   Capital One could easily ask the customer's age, physical condition, or employment status, but Capital One does not ask any of these questions.

31.     The exclusions for payment of benefits for Payment Protection are not disclosed to the customer at the time of sale.  These are the exclusions that the customer is not told of at the

time of sale:

(a)   That some benefits are not available if you retire, or if you are already retired;

(b)   That some benefits are not available if you are not working;

(c)   That some benefits are not available if you are self employed;

(d)    That some benefits are not available if your are employed by a spouse;

(e)   That some benefits are not available if you are employed part time;

(f)   That some benefits are not available if you are employed on a seasonal basis;

(g)   The definition of seasonal employment;

(h)   The definition of part time employment;

(i)   That some benefits are not available if you are injured or disabled at the time you purchase Payment Protection;

(j)   Whether there is coverage if you are employed full time when you purchased Payment Protection, and then changed your job status to part time or seasonal

(k)   That there will be no refund for premiums when your claim for benefits is denied;

(l)   That the consumer will continue to be charged for Payment Protection even after being denied for coverage, until the consumer takes action to stop Payment Protection;

(m)   Whether a co-cardholder has Payment Protection, or the distinction between a primary cardholder and a secondary cardholder as applied to eligibility for Payment Protection product lines.

(n)   That the terms of the cardholder agreement would be unilaterally modified by Capital One upon purchasing Payment Protection;

(o)   That coverage does not apply if injuries are self-inflicted;

(p)   That temporary disability benefits require monthly certification by a physician;

(q)   That minium payment benefits are limited to 12 months;

(r)   That benefits are not available for the first 30 days of unemployment or disability;

9

(s)     That Payment Protection is not an insurance product; and

(t)     That Payment Protection is not regulated by the Florida Office of Insurance Regulation.

32.     Capital One relies upon a deceptive practice known as "post claims underwriting" to deny claims and increase profits. This is the practice of asking few or no questions of the cardholder at the time of sale to determine if the customer is qualified for the product, then when the customer attempts to use the "benefits" of Payment Protection, Capital One denies the benefits for a reason related to age, employment status, physical condition, or one of the many other reasons for denial listed in paragraph 31, above.

33.     Capital One does not have a policy of refunding unearned premiums, so customers paid for Payment Protection for years, made an application for a benefit, were denied benefit payments because of some reason for disqualification that was not disclosed at the time of sale, and then received no refund of the premiums paid.

*Payment Protection compared to credit insurance*

34.     The marketing of Payment Protection makes the product sound like a form of credit insurance, but the customer is not told at the time of sale that the product is not credit life, disability insurance or credit insurance.

35.     Payment Protection is indistinguishable from credit insurance in that premiums are charged to the customer on a monthly basis, the charges are based upon an account balance on a specified date, and Capital One promises it will make some form of payment to the customer's credit account upon the occurrence of a contingent event.

36.     Capital One's branding of this product as "Payment Protection" is a misleading or deceptive act that constitutes an attempt to obscure or conceal the nature and value of the product

when selling it to Florida and National consumers.

37.    Payment Protection was designed by Capital One so that it could continue to sell credit insurance products while avoiding the consumer protections provided by the Florida Office of Insurance Regulation, and the insurance regulators of other states, such as the licensing of sales agents, the regulation of rates, the approval of methods of marketing, the regulation of products that can be sold, the premiums that could be charged and the regulation of claims practices.

38.    When customers complained to state insurance regulators about Capital One's Payment Protection product, the complaints were forwarded to Stonebridge Life, apparently because Stonebridge Life held regulatory approval to sell credit protection insurance products in Florida and other states. The routine response from Stonebridge Life to insurance regulators was essentially that "Payment Protection is not an insurance product."

39.    Florida and National consumers who purchased Payment Protection received documents some time after the sale; Capital One calls these documents a "welcome kit."

40.    The Capital One "welcome kit" consisted of 3 documents: (a) an addendum to the cardholder agreement; (b) a letter; and (c) a "frequently asked questions" sheet. A copy of a welcome kit that was attached to Plaintiff's amended complaint is attached hereto as Exhibits A, B, and C. A copy of the "cardholder agreement" is attached hereto as Exhibit D.

41.    Among the "welcome kit" documents some eligibility exclusions can be deduced from a careful reading of the fine print. The exclusions are not clearly written or prominently displayed, and it is not possible for a consumer to determine all of the exclusions that apply at the time the customer applies for benefits for Payment Protection.

42.     As a result of the undisclosed exclusions for Payment Protection benefits, the value of the product is deceptively marketed, and all cardholders paying for Capital One's Payment Protection product are damaged by paying for Payment Protection.

43.     The Payment Protection product is worthless to a large number of cardholders who paid for the product during the class period, in particular senior citizens and retired persons.

*Facts as to Class Representative Kenneth Spinelli*

44. Plaintiff Kenneth Spinelli was both a retired person and a senior citizen at all times that he received and paid for Payment Protection from Capital One.  Kenneth Spinelli and his wife, Judith Spinelli, are co-cardholders on the Capital One credit card accounts bearing charges for Payment Protection.  Judith Spinelli was also a senior citizen at all times relevant to the class period.

45.     Although he paid for the Payment Protection product, Mr. Spinelli was never eligible for the advertised benefits of Payment Protection coverage due to the product's restrictions and exclusions because he was retired.

46.     Kenneth Spinelli was the recipient of Capital One telemarketing for Payment Protection during the class period, purchased Payment Protection, and paid the charges for Payment Protection.

47.     Kenneth Spinelli received the "welcome kit" documents sometime after purchasing Payment Protection.

48.     The "welcome kit" consists of four pages of documents.  See Exhibits A, B and C.

49.     Payment Protection coverage exclusions and restrictions are revealed to the consumer only after the coverage has already been sold to the Capital One cardholder.

12

50.    The documents that comprise Exhibit C are referred to internally by Capital One as a "fulfillment kit."

51.    In sum, the following restrictions on Payment Protection are imposed by Capital One in its "welcome kit" mailed to the customer days or weeks after the sale, in small print, in language that is not readily comprehensible or obvious to the average consumer:

> It does not apply to self-employed persons.
> It does not apply to seasonally employed persons.
> It does not apply to persons employed by a co-cardholder.
> It does not apply to persons who are not employed "full time" - the Capital One documents do not define exactly what "full time" means.
> It does not apply to unemployed persons.
> It does not apply to retired persons.
> It does not apply for the first 30 days of unemployment or disability.
> It is limited to 12 months.
> It requires monthly certification by a physician of continued disability.
> It does not apply if injuries are self-inflicted.

52.    Capital One makes no efforts to determine if the cardholder is eligible for Payment Protection benefits prior to charging for this service.

*Additional Facts as to Class Representatives.*

53.    Linda R. McCoy is a proposed class representative in *McCoy v. Capital One Bank (USA), N.A., et al*, U.S.D.C., S.D. California Case No. 3:10-cv-00185-L-CAB. She asserts claims for violations of Cal. Civ. Code §§1780 - 1784, California Business and Profession Code §17200 to 17581, along with the causes of action asserted herein. Ms. McCoy received marketing for the Payment Protection product and was charged for the product. Plaintiff Linda R. McCoy, a California resident, received a credit card from Capital One in 2007 that purported to provide Payment Protection features and benefits, and Plaintiff was charged for these features.

Capital One did not inform Plaintiff of the terms of Payment Protection's coverage and restrictions before the product was sold to her, or that it would be the subject of interest charges by Capital One. Plaintiff became unable to work in March 2009 due to a temporary disability. Later in 2009, she was laid off from her full time job. When Plaintiff attempted to take advantage of the "benefits" provided by the Payment Protection, for which she had been paying for nearly one and a half years, she was "denied" any benefits.

54.     Lisa Sullivan is a proposed class representative in *Sullivan v. Capital One Bank (USA), N.A., et al.,* U.S.D.C. Connecticut, Civil Action No. 3:10-CV-00092 (CSH).

. She asserts claims for violations of the Connecticut Unfair Trade Practices Act, §42-110(a) et seq, violations of the Truth in Lending Act, as well as additional common law and equitable causes of action. Lisa Sullivan is a resident of the State of Connecticut residing in Milford, Connecticut. Plaintiff received a credit card from Capital One that purported to provide Payment Protection features and benefits, and Plaintiff was charged for these features. When Plaintiff was laid off from her job in July 2009 and attempted to take advantage of the "benefits" provided by the Payment Protection, for which she had been paying for nearly two years, she was "denied" any benefits. She was even advised by a Capital One representative to cancel the "service."

55.     Anthony Mitchell, Elizabeth Silicato, Patricia Tinder and Laverne Scruggs, are the proposed class representatives in *Mitchell, et al. v. Capital One Bank (USA), N.A. et al.,* U.S. Dist. Ct. Central District of California, Case No. CV10 2672-SVW. These plaintiffs assert claims for violations of Cal. Civ. Code §§1780 - 1784, Business and Profession Code §17200 to 17581, along with the causes of action asserted herein.

14

56.     Plaintiff Anthony Mitchell resides at 4615 Avalon Boulevard, #1 in Los Angeles, California.  Mr. Mitchell has at least one credit card in his name from Capital One bearing Payment Protection features.  Mr. Mitchell is a thirty-nine year old California resident who has had a Capital One credit card since 2007, and he was for some time enrolled in the Payment Protection program.  When Mr. Mitchell experienced an event that should have been covered by Payment Protection and attempted to contact Capital One about Payment Protection coverage, Capital One made the process for obtaining benefits so difficult that Mr. Mitchell never successfully submitted a claim.

57.     Plaintiff Elizabeth Silicato resides at 206 West 6th Street, #230 in Los Angeles, California.  Ms. Silicato has at least one credit card in her name from Capital One bearing Payment Protection features. Ms. Silicato is a twenty-five year old California resident.  Ms. Silicato has had a Capital One credit card since approximately 2005.  Although Ms. Silicato never subscribed to Payment Protection, Capital One charged her for the service for many months.  Ms. Silicato has paid hundreds of dollars in fees for Payment Protection even though she never requested or used the coverage.

58.     Plaintiff Patricia Tinder resides at 1722 North Lima Street in Burbank, California. Ms. Tinder has at least one credit card in her name from Capital One bearing Payment Protection features. Ms. Tinder is a forty-two year old California resident.

59.     Ms. Tinder has had a Capital One credit card since approximately 2000.  Ms. Tinder enrolled in Payment Protection, and is now on disability. Ms. Tinder has attempted to use Payment Protection, but Capital One has made only one payment on her behalf. Although Ms. Tinder continues to pay fees for Payment Protection, the plan provides no benefits for her.  She

15

has contacted Capital One on numerous occasions about Payment Protection coverage, but no one at Capital One has done anything to help her.

60.    Plaintiff Laverne Scruggs resides at 2616 West 84th Place in Inglewood, California.  Ms. Scruggs has at least one credit card in her name from Capital One bearing Payment Protection features.  Ms. Scruggs is a sixty-seven year old California resident and has had a Capital One credit card since approximately 2000.  Although Ms. Scruggs never subscribed to Payment Protection, Capital One charged her for the service for many months.  Ms. Scruggs has paid hundreds of dollars in fees for Payment Protection even though she never requested or used the coverage.  Additionally, Capital One assessed fees for Payment Protection even if Ms. Scruggs had a zero balance on her account.

61.    Rose Carr and Robin Deaver are the proposed class representatives in *Carr, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. Dist. Ct., Dist. of New Jersey, Case Number 1:10-cv-01014-JS.(U.S.D.Ct., Dist. of New Jersey).  These Plaintiffs assert claims for violations of N.J. Stat. Ann. §§56:8-1 - 56:8-24, along with the causes of action asserted herein.

62.    Ms. Carr is a seventy-one year old New Jersey resident.  A few years ago, Ms. Carr was sent marketing materials from Capital One which included blank checks.  Ms. Carr wrote a few checks from two different such mailings, and was subsequently "enrolled" as a Capital One credit customer.  Despite the fact that she was never provided an actual Capital One credit card, upon information and belief, Capital One treats her in the same manner as a credit card customer.  She does not recall enrolling in the Payment Protection plan and was provided no information about the plan, but was nevertheless billed monthly for "Payment Protection" on both of her accounts.  She does not recall seeing or signing any documents regarding the

Payment Protection plan.

63.     After paying for "Payment Protection" for over a year, Ms. Carr cancelled the plan on both accounts in late 2009. Ms. Carr declared bankruptcy over ten years ago shortly after her husband passed way. Since then, she has never been a full-time employee and has received Social Security payments for at least seven years. She does not recall anyone from Capital One ever asking about her employment status before enrolling her in the Payment Protection plan or at any time she was member.

64.     Ms. Deaver is a forty-eight year old New Jersey resident. Over the course of the last eight to ten years, Ms. Deaver applied for and received four Capital One credit cards. On a written form, Ms. Deaver recalls "checking the box" for the Payment Protection plan.   In 1998, Ms. Deaver had "Payment Protection" on another credit card from another credit card company and was provided benefits after she involved in a serious car accident. Based on that experience and the representations of Capital One, she believed and understood Capital One's Payment Protection to be the same service: if she was injured, the Company would pay her minimum monthly payment for a year.

65.     Ms. Deaver does not recall seeing or signing any documents regarding the Payment Protection plan. She was billed monthly for "Payment Protection" on each of her four credit cards. Presently, she generally carries around a zero balance on all four credit cards. Nevertheless, she believes she is still enrolled in the Payment Protection plan on all four cards. Ms. Deaver worked full time at a casino and then at a doctor's office until July 2007. At that time, the doctor retired and his office closed. She then received unemployment and is presently a student. Despite her unemployment, she did not file a claim in 2007 because she did not

understand the Payment Protection service to cover employment.  In 2010, she called Capital One to file a claim retroactively for her 2007 employment, but was denied benefits over the phone.  She was told that it was "too late" to file a claim and since her balance is now at zero, she is precluded from receiving benefits.

66.     No one from Capital One ever asked Ms. Deaver about her employment status before enrolling her in the Payment Protection plan or at any time she has been a member.

67.     Michael Blackie, Trina Blackman, and Alice Lewandowski, are the proposed class representatives in *Blackie, et al. v. Capital One Bank (USA), N.A.,* U.S. Dist. Ct. E.D. Pennsylvania, Case No. 2:10-cv-00823-BMS.  These plaintiffs assert claims for violations of Pennsylvania deceptive trade practices acts, 73 Pa. Stat. §201, et seq., along with the claims for breach of contract claims, and other causes of action asserted herein.

68.     Plaintiff Michael Blackie resides in Philadelphia, Pennsylvania.  Mr. Blackie had multiple credit cards in his name from Capital One bearing Payment Protection features.

69.     Mr. Blackie is a forty-nine year old Pennsylvania resident and has had two Capital One credit cards since 2006.  Upon activating his cards in 2006, he was offered, and accepted, Payment Protection on both of his cards.  He was provided no written information about the plan initially and does not recall seeing or signing any documents at the time he became a member of the plan, but he is billed monthly for "Payment Protection."

70.     Mr. Blackie has held a number of jobs since 1996, but depending on the definition of part time or seasonal employment, he has perhaps never held a full-time, non-seasonal job where he was not at least partially self-employed.  For a number of years, Mr. Blackie worked as a newspaper writer, editor and reporter for DMB Communications, his own company.  In 2006

and into 2007, he worked perhaps full time as an independent contractor of sorts, teaching at Girard College in Philadelphia. From 2007 through 2009, he was employed by the Cradle of Liberty Council of the Boy Scouts of America ("Boy Scouts"), but always in either a part-time or periodic role.

71.     No one from Capital One ever inquired about Mr. Blackie's employment status or hours of work before enrolling him in the Payment Protection plan.

72.     In July 2009, Mr. Blackie was laid off by the Boy Scouts and went on unemployment. Before that, he was working thirty-five-and-a-half hours per week. In November 2009, Mr. Blackie called Capital One to file a claim for benefits as a Payment Protection plan member. The person that answered the phone on behalf of Capital One told him that because he was "not working full-time" at the time he was laid off, he was not eligible for Payment Protection benefits. Shortly thereafter, he received a letter from Stonebridge Benefit Services repeating Capital One's decision to deny his claim. See Exhibit E, attached hereto.

73.     Even though Mr. Blackie's Payment Protection claim was denied, a one time "emergency payment" was approved. Accordingly, a one-time, one-month only payment of his minimum monthly payment was made on one of his Capital One credit card accounts in the amount of $29.75, and on the other account in the amount of $19.68.

74.     Curiously, immediately after submitting his claim and being approved for a one-time emergency payment, Capital One unilaterally increased his credit limit on one of his cards from $500 to $4,500, a nine-fold increase. This increase occurred even though his account had just come out of "collections." It is unknown whether and/or the extent to which Payment Protection benefits are in any way curtailed or limited while an account is in collections or not in

good standing.

75.     Capital One continues to charge Mr. Blackie for Payment Protection services, and Mr. Blackie continues to pay for this service on both of his credit cards, every month.  Mr. Blackie is still unemployed and is therefore still ineligible for Payment Protection benefits. Capital One is aware that Mr. Blackie's claims were denied, yet it still collects premiums for Payment Protection from Mr. Blackie month in and month out on his two credit cards.

76.     Capital One has not refunded any of the premiums paid by Mr. Blackie for Payment Protection, even after its denial of Payment Protection benefits.

77.     Plaintiff Trina Blackman resides in Philadelphia, Pennsylvania.  Ms. Blackman has one credit card in her name from Capital One bearing Payment Protection features.

78.     Ms. Blackman is a thirty-eight year old Pennsylvania resident.  In 2003, Ms. Blackman applied for and received a Capital One credit card over the phone.  In 2006, Ms. Blackman received a phone call from Capital One offering her the option of joining the Payment Protection plan, which as she understood it would pay her minimum monthly payments for a year if she lost her job.  At that time, she told Capital One that she was not working and had been out of work since 1999.  Capital One told her that Payment Protection would also cover her minimum monthly payments if she was unable to make her monthly payments.  Based on these representations, Ms. Blackman agreed to buy Payment Protection.

79.     In 2006, she was sent a "Membership Card," which she signed and placed in her wallet as she was instructed by Capital One over the phone.  See Exhibit F, attached hereto. Other than this card, she does not recall seeing or signing any documents related to Payment Protection, and she was provided no information about the benefits or limitations of the plan.

80.     A few years ago, Ms. Blackman called Capital One to cancel her credit card. She was told that she could not effectively close her account until it had a $0 balance. However, Capital One would list her account as designated to close. According to her statement, that means that her account will close "on the first statement after your balance reaches $0." See Exhibit G, attached hereto. One limitation is listed: "If you use (swipe) your card during this time, we can consider this authorization to remove the close request and your account can remain open." **Id.**

81.     Ms. Blackman has not used her card for any new purchases since her close request. She is still charged for Payment Protection every month. Curiously, Capital One does not consider this charge "use of her card" sufficient to remove her close request.

82.     Ms. Blackman is still out of work. No one from Capital One has ever followed up with Ms. Blackman regarding her employment status since she was enrolled in the Payment Protection plan.

83.     Plaintiff Alice Lewandowski resides in Philadelphia, Pennsylvania at 3555 Retta Avenue in Pennsylvania. Ms. Lewandowski has one credit card in her name from Capital One bearing Payment Protection features.

84.     Ms. Lewandowski is a seventy-eight year old Pennsylvania resident. At least ten years ago, Ms. Lewandowski applied for and was issued a Capital One credit card. Her husband, who is now deceased, also had a Capital One credit card. Ms. Lewandowski does not recall buying Payment Protection and was provided no information about the product, but she is billed monthly for "Payment Protection." She does not recall seeing or signing any documents regarding the Payment Protection plan and as a result, did not even know what benefits the plan

offered when it first showed up on her bill.

85.     Ms. Lewandowski is still paying for "Payment Protection" today even though she stopped using her Capital One credit card for new purchases. She is presently paying $100 per month to Capital One to pay off the balance on her account.

86.     Ms. Lewandowski has been retired for over ten years. She was retired at the time she became a member of the Payment Protection plan. No one from Capital One ever asked Ms. Lewandowski about her employment status before enrolling her in the Payment Protection plan or at any time she was a member.

87.     Harold Smith, Trudy Smith and Jeremy Morrow are the proposed class representatives in *Smith, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. District Court, E.D. Ark, Case No. 4-10-CV-0160SWW. These plaintiffs assert claims for violations of Arkansas' deceptive trade practices acts, A.C.A. §4-88-101 et seq., and claims for breach of contract and other causes of action asserted herein.

88.     Plaintiffs Harold G. Smith and Trudy Smith, husband and wife, reside in Pulaski County, Arkansas. Harold G. Smith and Trudy Smith received multiple credit cards from Capital One bearing charges for Payment Protection. Plaintiff Harold G. Smith was a senior citizen at all times that he received and paid for Payment Protection from Capital One. Harold G. Smith and his wife, Trudy Smith, are co-cardholders on the Capital One credit card accounts bearing charges for Payment Protection. Trudy Smith was also a senior citizen at all times relevant to this action.

89.     Plaintiffs Harold G. Smith and Trudy Smith, were the recipients of Capital One telemarketing for Payment Protection during the class period, purchased Payment Protection, and

paid the charges for Payment Protection.

90.     Although he paid for the Payment Protection product, Mr. Smith was never eligible for the advertised benefits of Payment Protection coverage due to the product's restrictions and exclusions because he was self-employed.

91.     Plaintiff Harold G. Smith is employed as a brick mason. He was diagnosed with prostate cancer and tried to use the Payment Protection feature but was turned down by Capital One. The Payment Protection agent who took his call declined his telephone application for benefits, telling Mr. Smith that working as a "brick mason" is seasonal employment and he was therefore disqualified from receiving Payment Protection benefits, even though he was sold the product by Capital One and paid for the product. There is no information provided to the consumer at the point of sale or thereafter in which a brick mason is defined as a seasonal employee, nor are there any definitions for seasonal employment.

92.     Plaintiff Trudy Smith retired from her job in 2007. When she tried to file a claim for benefits with Capital One, she was turned down because she left her job voluntarily, an exclusion that she was not informed of at the time of sale.

93.     Although she paid for the Payment Protection product, Ms. Smith was never eligible for the advertised benefits of Payment Protection coverage due to the product's restrictions and exclusions because she was retired.

94.     Jeremy Morrow is a resident of Arkansas who was also marketed by Capital One for Payment Protection, who accepted and paid for the product. Jeremy Morrow became temporarily disabled due to a brain tumor and attempted to use the Payment Protection product by telephone call to Capital One (or its vendor). The person answering the phone for processing

Payment Protection claims for benefits told Mr. Morrow that he was not eligible for Payment Protection benefits because he worked as a brick and stone mason and his work was therefore "seasonal" employment. Mr. Morrow did not receive any Payment Protection benefits from Capital One despite paying for the product and meeting the requirements to be eligible for those benefits.

95.     David Watlington is the proposed class representative in *Watlington, et al. v. Capital One Bank (USA), N.A., et al.*, U.S. Dist. Ct. Middle District of North Carolina, Case No. 1:10-CV-00171-AU-WWD. Mr. Watlington asserts claims on behalf of a class for violations of North Carolina's deceptive trade practices acts, N.C. Gen. Stat. §§75-1 - 75-35, and claims for breach of contract and other causes of action asserted herein.

96.     Plaintiff David Watlington is a resident of Guilford County, North Carolina. Mr. Watlington received a credit card from Capital One bearing Payment Protection features. Plaintiff Watlington received a credit card from Capital One approximately three (3) years ago. Sometime thereafter, Capital One unilaterally imposed the Payment Protection feature on his credit card and began charging him $21.66 a month for Payment Protection. Mr. Watlington's credit limit on his credit card is $2,500. Accordingly, the Payment Protection fee, in combination with the finance charges billed to Mr. Watlington, total more than his minimum monthly payment.

97.     Jeff Salazar is the proposed class representative in Salazar v. Capital One Bank (USA), N.A., et al., U.S. Dist. Ct. South Carolina, Spartanburg Division Case C.A. No.: 7:10-cv-00021-HFF. That action asserts claims, and seeks certification of a class, for negligence, unjust enrichment, and violations of numerous state deceptive trade practices acts for the following

states: Arkansas, Colorado, Connecticut, Kansas, Missouri, New Jersey, New Mexico, New York, Ohio, Vermont, and Washington.

98.     Jeff Salazar paid for Payment Protection on multiple Capital One credit cards. Plaintiff Jeff Salazar was either a primary cardholder or a co-cardholder of several Capital One credit cards bearing charges for Payment Protection. Plaintiff Salazar began paying for Capital One's Payment Protection product in January 2000.

99.     Capital One did not inform Mr. Salazar of Payment Protection's coverage and restrictions before the product was sold to him. In particular, Capital One did not disclose Payment Protection's coverage and restrictions to Mr. Salazar before he first purchased Payment Protection in January 2000, and Capital One did not disclose the product's coverage and restrictions after Mr. Salazar started paying for the product, which he paid for on multiple credit cards over the following years.

100.    Plaintiffs assert claims under the following state deceptive trade practices acts in addition to the claims asserted above:  Alabama Code §8-19-1 et seq., Alaska Stat. §45-50-471, et seq.; Arizona. Rev. Stat. §44-1521, et seq., Colorado. Rev. Stat. §§6-1-101 - 6-1-115, Connecticut Gen. Stat. Ann. §§42-110a - 42-110q, 6 Del. Code Ann. §§2511 - 2537, D.C. Code Ann. §§§28-3801 - 28-3819 - 28-3901, Georgia Code Ann. 106-1201 et seq., Hawaii Rev. L. §§480-1 - 480-24, Idaho Code §§48-601 - 48-619, 815 ILCS 505/1 to 505/12, Indiana Code §24-5-0.5-3(a)(1), (2), or 24-5-0.5-1, et seq., Iowa Code §714.16, Kansas Gen.Stat. Ann. §§50-623 - 50-644, Kentucky Rev. Stat. Ann. §§367.110  - 367.990, Louisiana. Rev. Stat. Ann. §§51:1401, et seq., Maine Rev. Stat. Ann. tit. 5 §205A, et seq., Maryland Code Ann. §13-101 to 13-501, Massachusetts Gen. L. Ann. Ch. 93A. §§1 - 11, Michigan Comp. Laws Ann. §§445.901 to

25

445.922, Minnesota Stat. Ann. §§325D.43, et seq., Mississippi Code Ann. §75-24-1, et seq.,

Missouri Ann. Stat. §§407.010 - 407.701, Mont. Code Ann. §30-14-103 et seq., Nebraska Rev.

Stat. §59-1601 et seq., §87-301, et seq., Nevada Rev. Stat. §41.600 et seq., §598.0903, et seq.,

New Hampshire Rev. Stat. Ann. §358-A:1, et. seq., New Mexico Stat. Ann. §57-12-1, et seq.,

New York Gen. Bus. L. §§349 et seq., North Dakota Gen. Stat. §51-15-01, et seq., Ohio Rev.

Code Ann. §1345, et seq., Oklahoma Stat. Tit. 15 §751 to 763, Oregon Rev. Stat. §§646.605 -

646.656, Rhode Island Rev. L. Ann. §§6-13.1-1 - 6-13.1-11, South Dakota Comp. L. §§37-24-1 -

37-24-35, Tennessee Code Ann. §47-18-101, et seq., Texas Rev. Civ. Stat. §§17.41  - 17.63,

Utah Code Ann., §13-11-1, et seq., Vermont Stat. Ann. tit. 9§§2451, et seq., Virginia Code Ann.

§59-1-196 et seq., Washington RCW §19-86-010, et seq., West Virginia Code Ann. §46A-6-101,

et seq., Wisconsin Stat. Ann. §100.18, Wyoming Stat. §40-12-101, et. seq.

*Unlawful Conduct of Capital One in the Sale of Payment Protection.*

101.   Capital One typically markets Payment Protection to consumers who fall into the

"subprime" credit category and therefore have low credit limits on their credit cards.

102.   Capital One sells the Payment Protection product as a service that will safeguard

the consumer's credit and provide peace of mind by making minimum credit card payments upon

some contingency that results in the cardholder's inability to make payments.

103.   There appears to be a "credit life" feature to Payment Protection, although this is

buried in the fine print and is not described in the product information provided at the time of

sale, or thereafter, as credit life insurance.

104.   Capital One primarily sells Payment Protection by telemarketing but does not

provide essential terms of the product at the time of sale.   Key terms governing Payment

Protection are not disclosed, including all of the exclusions listed in Paragraphs 33 and 52, above.

105.   The product terms and qualifiers that are disclosed after sale are incomplete, misleading, deceptive, and difficult to read and understand for the ordinary Capital One cardholder.

106.   Capital One has a duty to properly disclose the terms and conditions of Payment Protection prior to, and at the time of, sale to the consumer. Capital One's strategy and a defense in this case is that it is up to the consumer to determine whether he or she is actually eligible for Payment Protection. The consumer cannot decipher or understand all of the exclusions or definitions applied by Capital One to Payment Protection in denying claims for benefits, even from the most careful reading of the materials mailed to the customer after the sale.

107.   Should the customer's benefit claims be wrongly rejected, the customer has no opportunity to seek redress through the offices of state insurance regulators because Capital One's vendor, Stonebridge Life, tells the regulators that Payment Protection is not insurance.

108.   Capital One fails to provide adequate information regarding Payment Protection coverage and restrictions prior to selling the product, and then provides information about the product that is deceptive, misleading, obfuscatory and incomplete.

109.   As an example of misleading and obfuscatory language, Payment Protection appears to be a financial product or service that is ordinarily sold as credit life or disability insurance, yet the marketing materials carefully avoid any use of the word "insurance." The marketing materials do, however, refer to making "claims," which is either truthful (if this is insurance) or deceptive and misleading (if this product is something other than insurance).

110.    Although represented to the consumer as something in the nature of an insurance product, the Payment Protection product is virtually worthless to Capital One cardholders because of the numerous restrictions and exclusions that are imposed after the consumer buys the product, and because of the administrative and bureaucratic hurdles that are placed in the way of the consumer who attempts to secure payments from Capital One under this coverage.

111.    This product is sold to consumers without any consideration for the circumstances of the consumer or any reasonable investigation into the consumer's circumstances that may cause the product to be worthless to the consumer. For instance, many senior citizens and retired persons are charged for this product although they are categorically excluded from most Payment Protection benefits should they become ill or incapacitated and unable to make credit card payments.

112.    The Payment Protection product serves Capital One's interest in generating additional fee income, and has the added benefit to Capital One of lowering available credit to its subprime cardholders through the imposition of this additional fee.

113.    Capital One does not include Payment Protection charges in the finance charge information that must be included in the "Schumer box" or Truth in Lending Act finance charge disclosures, although the Payment Protection fee is an additional cost of credit to the subprime borrowers upon whom this charge is levied.

114.    Capital One imposed charges for "credit protection" upon its customers even though the consumer did not request the product or assent to pay for the product in writing.

*Allegations related to the class period.*

115.    The beginning date for the Florida class period is September 28, 2003. The Court

ruled that March 1, 2008, was the ending date for the class period.  The settlement agreement for the national class would extend those statutes of limitations up to the date of the final hearing for approval of the settlement.

*Capital One has not followed federal regulations governing the sale of debt cancellation and debt suspension contracts*

116.    All Capital One credit card holders were sold Payment Protection during the Florida Class period and the proposed National Class period and many continue to be assessed for Payment Protection charges. These persons should be included in the class.

117.    After March 1, 2008, Capital One did not provide any notice to the class members who purchased Payment Protection while Capital One was a state chartered bank that informs those consumers that their existing Payment Protection products were transformed as of March 1, 2008, into a "debt cancellation" or "debt suspension" agreement as those terms are defined by the Code of Federal Regulations that govern the sale of those banking products.

118.    Becoming a national bank does not exempt Capital One from consumer claims of deceptive and misleading practices.  Those practices continue to be subject to FTC regulations governing marketing practices, and the "little FTC" laws of the States, including Florida's Deceptive and Unfair Trade Practices Act, and the state Unfair and Deceptive Acts and Practices prohibitions of the various states as listed in paragraph 100, above.

*Florida Class Action Allegations.*

119.    Class representative Kenneth Spinelli and the putative class representatives listed above bring this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

120.  The Florida Class has been certified as a class defined by the Court as follows:

(a)  All residents of the State of Florida who, before March 1, 2008, (1) were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage.

(b)  The Sub-Class is defined as: A subset of all residents of the State of Florida who, before March 1, 2008, were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One.

Doc. 101, Order Certifying Class.

121.  Excluded from the proposed Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

122.  The Florida Class is composed of hundreds of thousands of Florida Capital One cardholders, the joinder of which in one action would be impracticable. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court. The identities of individual members of the Class are readily ascertainable through the defendants' billing records.

*National Settlement Class Allegations and Proposed Class Definition*

123.  For the national settlement class, Mr. Spinelli and the proposed representatives of the class actions listed above ask this Court to certify a class defined as follows:

> All natural persons who have or had Capital One credit card accounts in the United States and who enrolled in and were charged for Payment Protection on or after January 1, 2005 through final approval; or (2) all natural persons, who had a billing address in Florida at the time of enrollment in Payment Protection, who have or had Capital One credit card accounts and who enrolled in Payment Protection on or after September 23, 2003 through final approval. Any cardholder who filed for bankruptcy after enrolling in Payment Protection is excluded from the class.

*Common Questions of Law and Fact*

124.     There is a well-defined community of interest in the questions of law and fact affecting the members of the Florida and National Class.  Questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)      Whether the defendants' sales, billing and marketing schemes as alleged herein are fraudulent, deceptive, unlawful and/or unfair in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*;

b)      Whether Capital One's common and uniform sales, billing and marketing schemes related to the Payment Protection product as alleged herein constitutes a deceptive trade practice as defined by Florida statutes;

c)      Whether the plaintiffs and the Class members are entitled to restitution of all amounts acquired by defendants through their common and uniform scheme;

d)      Whether plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Capital One;

e)      Whether plaintiffs and the Class members are entitled to prospective injunctive relief enjoining Capital One from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein;

f)      Whether plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of the defendants' wrongful scheme; and

g)      Whether Capital One engaged in a method, act, or practice that victimized or attempted to victimize senior citizens or handicapped persons, and committed such a violation when it knew or should have known that its conduct was unfair or deceptive.

125.     Plaintiffs assert claims that are typical of the Class.  They were each targeted by Capital One for sale of Payment Protection, were subjected to Capital One's standardized mass marketing practices, and purchased and paid for Payment Protection.  Plaintiffs and the Class

31

members have similarly suffered harm arising from Capital One's violations of the law as alleged in this amended complaint.

126.   Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.   Plaintiffs' interests are not antagonistic to those of the Class members.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class litigation.

127.   A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and the Class members' claims.  Plaintiffs and members of the Class have suffered irreparable harm as a result of defendants' fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent the class action, the Class members will continue to suffer losses, the violations of the law described herein will continue without remedy, and defendants will be permitted to retain the proceeds of their deceptive and misleading business practices.   Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

128.   Plaintiff asks the Court to maintain the class definition certified by the Court as set out above, and to establish a class period from January 1, 2005 to the date of the final hearing approving the settlement for the proposed national class.

## COUNT ONE
### *Breach of Contract and Fraudulent Inducement*

129.   Plaintiffs repeat and reallege all preceding paragraphs of this amended complaint.

130.   The cardholder agreement (Exhibit D) creates a contractual obligation between

Capital One and their credit card holders. The addendum (Exhibit C) that is issued to the cardholder after the purchase of payment protection is an addendum to the cardholder agreement.

131.    The cardholder agreement has a choice of law forum selection clause designating Virginia law as the law that controls the interpretation of the contract. See Exhibit D, attached.

132.    Under Virginia contract law, the essential elements of a cause of action for breach of contract are: (1) a legal obligation of a defendant to a plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff.

133.    Under Virginia contract law, in order to state a cause of action for fraud in the inducement of a contract, a party must allege that the misrepresentations were positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.

134.    Under Virginia contract law, one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth.

135.    Under Virginia contract law, the doctrine of caveat emptor affords no protection to a seller who makes false representations of a material fact, constituting an inducement to the contract, on which a buyer had a right to rely. A buyer can show that a contract of sale was induced by the seller's fraud, notwithstanding the fact that the sale was made "as is."

136.    Allegations of fraud in the inducement of a contract do not convert a contract action into one based on tort under Virginia law.

137.    Capital One breached its duty of good faith and fair dealing to the Plaintiffs by its

marketing and Payment Protection administrative policies, resulting in injury to the Plaintiff classes.

138.    The statements made to the Plaintiff were positive statements that Payment Protection would provide certain benefits in the event of specified losses, these statements were made by Capital One for the purpose of procuring the cardholder's agreement to accept and pay for Payment Protection, the statements constituted misrepresentations of material fact, upon which the Capital One cardholders reasonably relied and which induced the cardholders to enter into the contractual agreement to pay for Payment Protection.

### COUNT TWO
*Violations of the Truth in Lending Act - 15 U.S.C. §1601 et seq.*

139.    Plaintiff repeats and realleges all paragraphs of the Complaint.

140.    During the relevant time period, Capital One sold the credit services at issue in this lawsuit to the members of the Florida and National Class, engaging in significant interstate commerce.

141.    The purpose of the Truth in Lending Act of 1968, as amended, 15 U.S.C. §1601, 1666j and Regulation Z, 12 CFR part 226 ("TILA" and "Regulation Z") is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. §1601(a); 12 C.F.R. 226.1(b).

142.    TILA requires all solicitations for the extension of credit to clearly, conspicuously and in readily understood language disclose the terms of the commitment that the offeror is extending to the consumer.

143.    Congress delegated authority for the implementation of the Truth-in-Lending Act to the Federal Reserve Board ("Board"). 15 U.S.C. §1604. The Board promulgated Regulation Z, which is the Truth In Lending Act's implementing regulation. 12 C.F.R. §§226 et seq.

144.    Capital One's failure to disclose in its applications, solicitations, billing statement or otherwise that the premium charged for Payment Protection is a finance charge, that the minimum payment does not include all fees imposed, and that the interest is charged on penalty fees and costs in connection with Payment Protection, which violates sections 1605 and 1637(a)(3), (a)(4) and (b)(4) of the Truth in Lending Act.

145.    As a result of Capital One's violations of the Truth in Lending Act and Regulation Z, Capital One is liable to Plaintiffs and members of the Class, who seek damages, pursuant to 15 U.S.C. §1640, including actual damages resulting from Capital One's improper and illegal practices, the lesser of $500,000 or 1% of the net worth of Capital One, and costs and reasonable attorney fees.

### COUNT THREE
*Violations of Florida Deceptive and Unfair Trade Practices Act*
*Business and Commerce Section 501.201 et seq.*

146.    Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though set out here word for word.

147.    By bringing this action, Plaintiff class members act as a private Attorney General for their own benefit and for the benefit of the general public.

148.    Each Plaintiff class member is a party engaged in consumer commerce in Florida who has been affected by Defendants' unfair business practices.

149.    Defendants' conduct constitutes false, misleading and/or deceptive practices

within the meaning of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*, specifically, §501.204(1).

150.     Defendants' conduct constitutes unconscionable acts pursuant to Fla. Stat. §§501.201 and 501.204(1).

151.     Capital One's conduct is subject to civil penalties pursuant to Fla. Stat. §501.2075, attorney fees pursuant to Fla. Stat. §501.2105, and is subject to civil penalties pursuant to Fla. Stat. §501.2077.  In addition, Capital One's conduct is subject to an award of attorney fees and costs.

152.     Plaintiff class members seek court-ordered relief of an equitable nature against Defendants, including, but not limited to, orders declaring Defendants' practices as alleged to be unlawful, unfair, unconscionable and/or deceptive, and enjoining Defendants from undertaking any further unlawful, unfair, unconscionable and/or deceptive acts or omissions.

153.     Plaintiff class members seek disgorgement and restitution of charges paid for Payment Protection, plus interest on damages at the legal rate, as well as three times the amount of their economic damages based on Defendants' knowing and intentional violations of this statute.  Plaintiffs seek restitution for acts committed against a senior citizen, defined by Florida Statutes as a person over the age of 60 years.  Fla. Stat. §501.2077(3).

154.     Because Plaintiff class members seek to enforce an important right affecting the public interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and the class.

155.     As a result of Defendants' violations of the Florida Deceptive and Unfair Trade Practices Act prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the

Class have suffered monetary damages for which Defendants are liable.

### COUNT FOUR
#### *Violations of the Deceptive Trade Practices of State Statutes Prohibiting Unfair and Deceptive Acts and Practices*

156.    Plaintiffs repeat and reallege all paragraphs of the Complaint.

157.    The state deceptive trade practices acts were enacted by the various states following the passage of the Federal Trade Commission Act ("FTC Act"), which prohibits deceptive acts and practices in the sale of products to consumers. The state laws in this area are modeled on the FTC Act and are therefore highly similar in content.

158.    Defendants' actions violate the Deceptive Trade Practices Acts of the various states, as set out in Paragraph 155, above.

159.    The conduct described in the statement of facts constitutes unfair or deceptive trade practices predominantly and substantially affecting the conduct of trade or commerce throughout the United States in violation of the state deceptive trade practices acts and other similar state statutes prohibiting unfair and deceptive acts and practices. The deceptive trade practices acts violated by Capital One are set forth in Paragraphs 144-153, above.

160.    As a result of Defendants' violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiff and members of the Class have suffered actual damages for which Defendants are liable.

### *Injunctive Relief*

161.    Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the class who made payments to Capital One for Payment Protection. The Plaintiffs ask the Court to grant the following relief:

a)      a refund of all Payment Protection payments made to Capital One;

37

b)   a refund to any consumer who was retired at the time they were sold Payment Protection by Capital One;

c)   a refund to any consumer who was a senior citizen at the time they were sold Payment Protection by Capital One;

d)   a full refund to any consumer who was otherwise not eligible for Payment Protection due to the restrictions in the coverage at the time the product was sold to the consumer and who paid for the product.

162.   Plaintiffs seek injunctive relief enjoining Capital One from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

### Declaratory Relief

163.   Plaintiffs seek a Declaratory Judgment pursuant to Fla. Stat. §501.211 finding that the conduct of Defendants is in violation of the Florida Deceptive and Unfair Trade Practices Act, and enjoining Defendant from continuing in such conduct.

### Unjust Enrichment

164.   Plaintiffs restate and reallege the preceding paragraphs of the Complaint as though set out here word for word.

165.   In seeking to sell credit cards to Plaintiffs and members of putative Class, Defendants withheld material terms from consumers prior to activation of Payment Protection charges, including the limitations, restrictions and exclusions associated with the product.

166.   Defendants were unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to the consumer's credit card.

167.   Defendants were unjustly enriched by its business practices of making it so difficult for consumers to actually receive payment for Payment Protection that the product was virtually worthless. Such acts were, and are, unconscionable.

38

168.    Defendants were unjustly enriched by charging the Plaintiffs and Class members for illusory benefits.

169.    Defendants were unjustly enriched by charging Plaintiffs and Class members multiple Payment Protection charges if the cardholder had multiple Capital One credit cards.

170.    Defendants were unjustly enriched by charging Plaintiffs and Class members who were retired or who were senior citizens for Payment Protection even though they were ineligible to receive payments by the terms of the Payment Protection documents

171.    As a result of Defendants' actions which constitute unjust enrichment, Plaintiffs and class members suffered actual damages for which Defendants are liable.  Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and that the best practicable notice of this action be given to members of the Class represented by Plaintiffs;

B.    That judgment be entered against Defendants and in favor of Plaintiffs and the Class for injunctive relief as requested herein, and for actual, compensatory and punitive damages in an amount to be determined at trial;

C.    That judgment be entered imposing interest on damages, litigation costs and attorneys' fees against the Defendants; and

D.    For all other and further relief as thus Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury consisting of twelve persons on all issues so triable.

Dated this 11th day of August, 2010.

Respectfully Submitted,

*Attorneys for the Plaintiffs*

/s/ Steven A. Owings
Steven A. Owings
OWINGS LAW FIRM
1320 "D" Brookwood
Little Rock, AR 72202
(501) 661-9999
sowings@owingslawfirm.com

T. Brent Walker
CARTER WALKER, PLLC
2171 West Main, Ste 200
P.O. Box 628
Cabot, AR 72023
(501) 605-1346
(501) 605-1348 (facsimile)
bwalker@carterwalkerlaw.com

Marcus Bozeman
CARNEY WILLIAMS BATES
    BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
(501) 312-8500
(501) 312-8505 (facsimile)

mbozeman@carneywilliams.com

Kevin McLaughlin
WAGNER, VAUGHAN, McLAUGHLIN &
BRENNAN, P.A.
601 Bayshore Boulevard
Suite 910
Tampa, FL 33606
(813) 225-4000

## CERTIFICATE OF SERVICE

I, Steven Owings, certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 11th day of August, 2010. Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court.

Counsel for Defendant:

James McCabe
Gregory P. Dresser
Karen Kreuzkamp
MORRISION & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
(415) 268-7522  FAX
jmcabe@mofo.com
gdresser@mofo.com
kkreuzkamp@mofo.com


Eric S. Adams
SHUTTS & BOWEN, LLP
100 S. Ashley Drive, Suite 1740
P.O. Box 2481 (ZIP 33601-2481)
Tampa, Florida 33602-5309
(813) 227-8122
(813) 227-8222 (facsimile)
eadams@shutts-law.com

Francis A. Zacherl
SHUTTS & BOWEN, LLP
1500 Miami Center, 201 S. Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300
(305) 381-9982
fzacherl@shutts.com

Additional Plaintiff's counsel

California Counsel:

Kevin Landau
Taus, Cebulash & Landau, LLP

80 Maiden Lane, Suite 1204
New York, NY 10038
646.873.7654
klandau@tcllaw.com

Brett Cebulash
Taus, Cebulash & Landau, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
646.873.7654
bcebulash@tcllaw.com

Marc Godino
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel:  310-201-9150
Fax:  310-201-9160
mgodino@glancylaw.com
www.glancylaw.com

South Carolina Counsel:

Fletch Trammell
Bailey Perrin Bailey
440 Louisiana, Suite 2100
Houston, Texas 77002
713-425-5277
ftrammell@bpblaw.com

W. Craft Hughes
Craft Hughes Law, P.C.
333 Clay Street, Suite #4720
Three Allen Center
Houston, TX 77002
Toll-Free (888) 350-3931
Fax (888) 995-3335
craft@crafthugheslaw.com

John White
Harrison, White, Smith & Coggins, PC
178 West Main Street
Spartanburg, SC 29306
T: 864-585-5100 (150)
jwhite@spartanlaw.com

_/s/ Steven A. Owings_
Steven A. Owings