# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**KENNETH SPINELLI,**
**Linda R. McCoy, Anthony Mitchell,**
**Elizabeth Silicato, Patricia Tinder,**
**Laverne Scruggs, Rose Carr,**
**Robin Deaver, Michael Blackie,**
**Trina Blackman, Alice Lewandowski**
**Harold Smith, Trudy Smith,**
**David Watlington, Jeremy Morrow, and Jeff Salazar**
**Individually and for all other persons similarly situated,**

      **Plaintiffs**

**v.**                                      **Case No.  8:08-CV-132-T-33EAJ**

**CAPITAL ONE BANK (USA), N.A. and**
**CAPITAL ONE SERVICES, LLC.,**

      **Defendants**
_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT[1]

On June 15, 2010, the parties reached an agreement in principle to settle the above referenced

action (the "Action" or "Litigation").  Based upon the resolution of all disputed matters, Plaintiffs

respectfully request that the Court consider the proposed settlement (the "Settlement") of this Action,

the terms and conditions of which have been memorialized in a Settlement Agreement dated August

12, 2010, for preliminary approval (the "Preliminary Approval").  In this respect, the Plaintiffs

request this Court enter an Order: (i) preliminarily approving the Settlement; (ii) preliminarily

---

[1]Although the Defendants join Plaintiffs in requesting that this Court preliminarily approve the proposed class action settlement, the Defendants do not take a position on the facts or arguments made in this Memorandum.  Instead, this Memorandum is offered by Plaintiffs for the benefit of the Court.

certifying the Class for settlement purposes; (iii) scheduling a hearing to consider final approval of the Settlement and plaintiffs' counsel's request for attorneys' fees and expenses; (iv) appointing BrownGreer as the Claims Administrator; and (v) authorizing the form and manner of notice to be sent to the Settlement Class advising them of the matters described above and their rights with respect thereto.

## I.    Overview of the Litigation

### A.    Background

This case is a class action brought against Capital One Bank (USA), N.A., and Capital One Services, LLC, (collectively referred to as "Capital One" or "Defendants") on behalf of a class of Capital One credit cardholders for breaches of contract; violations of the Truth in Lending Act; violations of state deceptive trade practices acts; and violations of common law in connection with Payment Protection, an amendment to Capital One's customer agreement that provides for debt cancellation under certain circumstances.[2] More specifically, this lawsuit alleged that the restrictions

---

[2]Other cases filed against the Defendants that involved similar facts and claims include the following:

(1)    *Salazar, et al. v. Capital One Bank, et al.,* U.S. Dist. Ct. South Carolina, Spartanburg Division Case C.A. No.: 7:10-cv-00021-HFF;

(2)    *McCoy, et al. v. Capital One Bank, et al.*, U.S. District Court, S.D. California, Case Number 3:10-cv-00185-L-CAB;

(3)    *Carr, et al., v. Capital One Bank, et al.*, U.S. Dist. Ct., Dist. of New Jersey, Case Number 1:10-cv-01014-JS;

(4)    *Blackie, et al. v. Capital One Bank, et al.*, U.S. Dist. Ct. E.D. Pennsylvania, Case No. 2:10-cv-00823-BMS;

(5)    *Watlington, et al. v. Capital One Bank, et al.*, U.S. Dist. Ct. Middle District of North Carolina, Case No. 1:10-CV-00171-AU-WWD;

(6)    *Smith, et al. v. Capital One Bank, et al.*, E.D. Ark, Case No. 4-10-CV-0160SWW; and

(7)    *Mitchell, et al., v. Capital One Bank, et al.*, U.S. District Court, Central District of California, Case Number CV10-2672-SVW.

on benefits under Capital One's Payment Protection program that are based on a customer's employment status at the time of enrollment were not adequately disclosed to the customer before he or she enrolled in Payment Protection and that the process for obtaining benefits under Payment Protection was made so difficult by Capital One, that the product is essentially worthless.

On March 21, 2008, Defendants filed a motion to dismiss the claims in this lawsuit. On April 7, 2008, Plaintiffs filed their response in opposition. After considering the submissions by the parties, this Court denied Defendants' motion to dismiss on May 20, 2008.

Subsequently, on September 18, 2009, this Court determined that this Action should be allowed to continue as a class action on behalf of the following class and sub-class:

(a)     All natural persons who have or had residents of the State of Florida who, before March 1, 2008, (1) were solicited by Capital One by mail and/or telephone; (2) who were marketed by Capital One for "Payment Protection" coverage for their credit card account balances; and (3) who paid for "Payment Protection" coverage.

(b)     The Sub-Class is defined as: A subset of all residents of the State of Florida who, before March 1, 2008, were retired or who were senior citizens at the time that they were solicited for, and received, and made payments for, the "Payment Protection" coverage from Capital One.

Order dated September 18, 2009.

Beginning on March 31, 2010, the parties have been involved in negotiations to resolve this Action. After protracted and intense arm's-length negotiations, the parties reached an agreement in principle reflected in the Memorandum of Understanding dated June 15, 2010 (the "MOU"), the terms and conditions of the parties' agreement was subsequently memorialized in the Settlement Agreement dated August 12, 2010. In determining to settle this Action, Plaintiffs and Plaintiffs' Counsel evaluated the pre-trial investigation, which included the review of more than 70,000 pages

of documents produced by Defendants, and considered the substantial expense and length of time necessary to prosecute the Action through pre-trial, trial and post-trial motions, and likely appeals, taking into account the *significant* uncertainties in predicting the outcome of this litigation. Plaintiffs recognized the uncertainty and the risk of the outcome of complex litigation such as this, as well as the difficulties and risks inherent in the trial of the Action. Plaintiffs desired to settle the claims of the Class against Defendants on terms and conditions that would provide substantial benefits to the Class. Defendants, while denying all allegations of wrongdoing or liability, also desired to settle and to terminate all existing or potential claims against them, without in any way acknowledging any fault or liability.

**B.     The Proposed Settlement**

In settlement of all claims in the Litigation, the Defendants have agreed to fund a claims-made settlement, which Plaintiffs estimate has a maximum value of approximately $250 million, for the benefit of the following class:

> (1) All natural persons who have or had Capital One credit card accounts in the United States and who enrolled in and were charged for Payment Protection on or after January 1, 2005 through July 31, 2010; or (2) all natural persons, who had a billing address in Florida at the time of enrollment in Payment Protection, who have or had Capital One credit card accounts and who enrolled in Payment Protection on or after September 23, 2003 through July 31, 2010. Any cardholder who filed for bankruptcy after enrolling in Payment Protection is excluded from the class.

An individual meeting the above referenced criteria (referred to hereafter as an "Eligible Class Member") shall be entitled to participate in the Settlement, provided he or she provides a timely and correct Claim Form. The Claim Form is attached as Exhibit A to the Settlement Agreement and reads, in relevant part, as follows:

4

(1)     If an Eligible Class Member checks one or more of the first three boxes on the Claim Form under the sentence that says, "To evaluate what benefit amount may be available to you, please check the boxes next to ALL statements that are correct about you," he or she will receive a payment or account credit, as follows:

(a)     If the Eligible Class Member requested and received Payment Protection benefits ("requested/received"), the Eligible Class Member will receive $20 if his or her account is open or was closed in good standing, or will receive a credit of $15 if his or her account charged off;[3]

(b)     If the Eligible Class Member never requested Payment Protection benefits ("never requested"), the Eligible Class Member will receive $28 if his or her account is open or was closed in good standing; or will receive a credit of $20 if his or her account charged off; or

(c)     If the Eligible Class Member submitted a written request but was denied Payment Protection benefits ("requested/denied"), the Eligible Class Member will receive $63 if his or her account is open or was closed in good standing; or will receive a credit of $35 if his or her account charged off.[4]

(2)     If the Eligible Class Member checks only the fourth box or checks no box after the sentence, "To evaluate what benefit amount may be available to you, please check the boxes next to ALL statements that are correct about you," the Eligible Class Member will receive $15 if his or her account is open or was closed in good standing and will receive a credit of $15 if his or her account charged off.

(3)     If the Eligible Class Member checks the box on the Claim form that says that he or she filed for bankruptcy after enrolling in Payment Protection, the Eligible Class Member is not entitled to a payment or credit.

---

[3]The parties agree that any Eligible Class Member who received a payment as a part of Capital One's Payment Protection remediation program will be regarded as having the status of requested/received.  This applies regardless of whether the Eligible Class Member received (i) a benefits payment or credit, or (ii) a refund or credit of Payment Protection charges.

[4]Determination of the status of an Eligible Class Member as requested/received, never requested, or requested/denied and whether an Eligible Class Member received a payment as part of Capital One's Payment Protection remediation program will be made solely by Capital One from its own records and those maintained by Stonebridge Benefit Services.  However, Plaintiffs' Counsel will have an opportunity to take confirmatory discovery on this topic before final approval.

For Eligible Class Members who have an open account, Capital One shall, within 45 days of the Effective Date, credit the amounts set forth above to that account.  If, however, an Eligible Class Member has an open account, but has closed the account(s) in which he or she enrolled in Payment Protection, Capital One may, in its sole discretion, elect to pay the Eligible Class Member the appropriate amount by check rather than by crediting the open account(s).

For Eligible Class Members who closed accounts in good standing (*i.e.*, with a zero balance), Capital One shall, within 45 days of the Effective Date, pay the Eligible Class Members the appropriate amounts by check.

For Eligible Class Members whose accounts were charged off due to non-payment, Capital One shall, within 45 days of the Effective Date, credit the appropriate amounts against the amounts those Eligible Class Members owe to Capital One.

Additionally, the parties have entered into a separate supplemental agreement (the "Supplemental Agreement") that gives Defendants, in their sole discretion, the option to terminate the Settlement if the opt-outs equal or exceed the amount specified in the Supplemental Agreement. The Supplemental Agreement is being filed contemporaneously herewith under seal, and the parties request that it remain under seal unless and until a dispute arises among the parties concerning its interpretation or application or disclosure is ordered by the Court.

## II.   The Proposed Settlement Warrants Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval.  In determining whether to approve the Settlement, the Court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D.

297, 312 (N.D. Ga. 1993). "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . . This rule has particular force regarding class action lawsuits." *Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980). Furthermore, settlements of class actions are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312; *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982) (same).

In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). This is, in part, because of the complexity and size of class action litigation. Indeed, class action "[s]ettlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp.2d 1329, 1333 (N.D.Ga. 2000) (citing *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977)).

Here, Plaintiffs and Defendants arrived at an agreement for the Settlement of the Action and have memorialized that agreement in the MOU and Settlement Agreement, which is being filed contemporaneously herewith. The Settlement Agreement contains all the material terms of the Settlement, including the manner and form of notice to be given to the Class, the contingencies or conditions to the Settlement's final approval, as well as other terms. For the reasons set forth in this memorandum, Plaintiffs believe that the Settlement is in the best interest of the Class.

A.      **The Proposed Notice is Adequate.**

The parties have negotiated the form of notices (the "Notice") to be disseminated to the Settlement Class to notify them of the terms of the Settlement and of their rights in connection with

the Settlement.  The Notice is attached as Exhibit C to the Settlement Agreement.  The Notice will be sent by mail to Settlement Class members to inform them of the terms of the Settlement, their rights in connection with the Settlement, and the date of the hearing at which the parties will submit the Settlement for final approval by the Court.  Along with the Notice, Settlement Class members will receive a claim form on which to provide their information regarding Payment Protection.  This document is attached as Exhibit A of the Settlement Agreement.  In this regard, upon entry of the Preliminary Approval Order, the proposed claims administrator will mail the Notice and the proof of claim forms to Settlement Class members who can be identified with reasonable effort.  A proposed Preliminary Approval Order is attached to the Settlement Agreement as Exhibit D.  A Proposed Final Order is attached to the Settlement Agreement as Exhibit B.  In addition, Defendants shall create a webpage that will give Settlement Class members access to case-related documents, including the Settlement Agreement, the Notice and the claim for.

Upon notification of the Settlement, Settlement Class members have three choices: (1) approve the Settlement and share in the Settlement benefits by submitting a valid claim form; (2) exclude themselves from the Settlement by "opting out" of the class, in which case they will not participate in the Settlement recovery and will retain their individual claims against the Defendants; or (3) disapprove of the Settlement and/or the fee application by objecting to its terms.  In order to participate in the Settlement, a Settlement Class member must submit a claim form within the time specified in the Preliminary Approval Order.  A Settlement Class member who wishes to be excluded from the Settlement must submit a timely request for exclusion.  Any Settlement Class member who wishes to object to the Settlement must file and serve a notice of intention to appear and object.  Objecting parties can submit a brief in opposition to the Settlement and can appear at

the final approval hearing to present their arguments.  This Court should find that the Notice and the

procedures for its dissemination are reasonably calculated to provide notice of the Settlement to the

Settlement Class, thereby, satisfying the requirements of due process.  *See Winn-Dixie Stores, Inc.*

*ERISA Litig.*, No. 3:04-cv-194-33MCR, 2008 U.S. Dist. LEXIS 21988, at *21 (M.D. Fla. March 20,

2008).

### B.  Conditional Certification of the Settlement Class is Appropriate

This Court should grant Plaintiffs' request for conditional certification of the Class for

settlement purposes only.  The Preliminary Approval Order provides for conditional certification of

the Settlement Class.  Conditional certification of the Settlement Class is appropriate under Rule 23

and is consistent with the holding of the Supreme Court in *Amchem Prods., Inc. v. Windsor,* 521 U.S.

591 (1997).  By certifying a class in its Order dated September 18, 2009, this Court has already

determined that the claims involved in this Action are well-suited for class treatment and that

Plaintiffs, at least preliminarily, satisfied the requisites of Rule 23.

Against this backdrop, the proposed Settlement Class should be conditionally certified for

settlement purposes only.  Indeed, the Settlement Class is sufficiently numerous to make joinder

impracticable, there are questions of law and fact common to the Settlement Class, the claims of

Plaintiffs are typical of the Class, and Plaintiffs will fairly and adequately protect the interests of the

Class.  In addition, the questions of law and fact common to the Settlement Class predominate over

any issues affecting individual members of the Settlement Class and the class action procedure is the

superior method of resolving the claims and defenses in this action.  *See* Fed. R. Civ. P. 23.  Indeed,

several cases have allowed class certification in circumstances similar to those present here, where

litigation has arisen from credit card practices that have affected a class of account holders.  *See, e.g.,*

*Roper v. Consure, Inc.*, 578 F.2d 1106 (5th Cir. 1978); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *Spark v. MBNA Corp.*, 178 F.R.D. 431 (D. Del. 1998). Accordingly, conditional certification of the Settlement Class in the instant litigation is appropriate.

More specifically, to warrant class certification, Plaintiffs are required to satisfy the four elements of Rule 23(a) and at least one element of Rule 23(b) of the Federal Rules of Civil Procedure. Class certification is committed to the sound discretion of the trial court. *See Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003). However, "in any doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 695 (S.D. Fla. 1992) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.) *cert. denied*, 474 U.S. 946 (1985)).

### 1.    The Proposed Settlement Class is Sufficiently Numerous

The proposed Settlement Class plainly satisfies the numerosity requirement of Rule 23(a). The numerosity requirement considers whether joinder of claims among individuals would be impracticable. Fed. R. Civ. P. 23(a)(1). Significantly, "[i]mpracticable does not mean 'impossible.'" *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 666 (M.D. Fla. 1996) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Rather, the term signifies a difficulty or inconvenience of joining all members of the class. *In re Prudential Ins. Co. of Am Sales Practices Litig.*, 148 F.3d 283, 309 (3d Cir. 1998). There is no threshold or specific number at which joinder is impracticable. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). While no arbitrary rules regarding the necessary size of classes have been established, *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir. 1982), "[w]hen class size reaches substantial proportions, the impracticability requirement is usually satisfied by numbers alone," *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir.

1996).  To this end, many courts have determined that the numerosity requirement is satisfied when a proposed class involves at least 40 members.  *See Cox*, 784 F.2d at 1553 (noting "'generally less than twenty-one is inadequate, more then forty adequate, with numbers between varying according to other factors.'" (citing 3B Moore's Federal Practice & 23.05[1] at n. 7 (1978));  *see also* 1 Newberg on Class Actions ' 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable"); *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members"); *Brown v. Eckerd Drugs, Inc.*, 669 F.2d 913, 917 (4th Cir. 1981) ("If the class has more than forty people in it, numerosity is satisfied." (internal quotation marks omitted)); *CE Design v. Beaty Constr., Inc.,* No. 07 C 3340, 2009 U.S. Dist. LEXIS 5842, at *6 (N.D. Ill. Jan. 26, 2009) ("Although there is no bright line test for numerosity, a class of 40 is generally sufficient.") (internal citation and quotation marks omitted).

Here, Capital One states in its marketing materials that "more than 5 million Capital One cardholders" purchased the Payment Protection product.  Based on this estimate and the fact that Capital One markets this product throughout the country, it is reasonable to assume that cardholders of Capital One are geographically dispersed throughout the United States, making joinder of all members impractical.  *Hammett v. American Bankers Ins. Co.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and Plaintiff's estimate need only be reasonable."); *In re Anicom Inc. Sec. Litig.*, No. 00C 4391, 2002 U.S. Dist. LEXIS 5575, at *6 (N.D.

11

Ill. March 26, 2002) ("Plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good-faith estimates"); *Peterson v. H & R Block Tax Servs.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997) ("If the exact size of the class is unknown, 'the court is entitled to make common sense assumptions in order to support a finding of numerosity.'" (quoting *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988)).

Moreover, in addition to the size of the class, a court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton*, 688 F.2d at 560; *Morgan v. UPS of Am.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996). Here, the members of the Class have suffered, on an individual basis, relatively small amounts of damage when compared to the costs of trying individual suits. Realistically, individual damages would likely be in the range of a few hundred dollars, if that, but, collectively, the members of the Settlement Class have suffered millions upon millions of dollars of damage. In sum, no single member of the Settlement Class could afford to prosecute this action on an individual basis because the costs associated with this case would far outweigh his or her individual damages.

2.     Common Questions of Law and Fact Exist

To establish commonality under FRCP 23, Plaintiffs need only show that one common question of law or fact affects all or a significant number of class members. *See Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 270 (S.D. Fla. 2003) ("the commonality requirement is not a high threshold and generally only requires one common question of law or fact"). Thus, this requirement is usually satisfied when a common nucleus of operative facts unites a class, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); that is, when "defendants have engaged in standardized

conduct towards members of the proposed class," *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In this regard, the focus should be on whether a representative's claim arises from the same course of conduct that gives rise to the remaining claims, and whether the claims are based on the same legal theory. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *Brown v. SCI Funeral Servs. of Florida, Inc.*, 212 F.R.D. 602, 604 (S.D. Fla. 2003). Consequently, the presence of factual variations among the class members does not defeat commonality, so long as there is at least one question of law or fact common to the class. *Rosario*, 963 F.2d at 1017; *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) ("There need be only a single issue common to all class members."); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (holding the commonality requirement "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the proposed class.").

Here, Plaintiffs, the proposed Class Representatives, and members of the Settlement Class all challenge the same course of conduct of Defendants. Indeed, Plaintiffs' claims and those of other Settlement Class members all arise from the same body of facts as they were all injured by the same series of misleading and deceptive statements. In addition, the claims of Plaintiffs and other Settlement Class members arise under identical legal theories. Accordingly, there are numerous common issues of law and fact in the present case, including:

a)   Whether the defendants' sales, billing and marketing scheme is fraudulent, deceptive, unlawful and/or unfair;

b)   Whether Capital One's common and uniform sales, billing and marketing schemes related to the Payment Protection product constitute a deceptive trade practice;

c)   Whether Plaintiffs and the members of the Class are entitled to restitution of all amounts acquired by defendants through their common and uniform scheme;

13

d)      Whether Plaintiffs and the members of the Class are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Capital One;

e)      Whether Plaintiffs and the members of the Class are entitled to prospective injunctive relief enjoining Capital One from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein; and

f)      Whether Plaintiffs and the members of the Class are entitled to recover compensatory and punitive damages as a result of the defendants' wrongful scheme.

In sum, each member of the Settlement Class was subjected to the same course of conduct by Capital One, involving similar marketing materials, sales agreements, and billing statements, and, therefore, their claims arise from the identical acts of Capital One.  Courts have recognized commonality in similar circumstances.  *See Brink v. First Credit Res*., 185 F.R.D. 567, 570 (D. Ariz. 1999) (holding, in case against credit card company, that commonality requirement was satisfied because "relief for each potential class member depends upon the common legal issue of whether Defendant violated one or more sections of the FDCPA when it mailed the credit card certificate to plaintiffs"); *Spark*, 178 F.R.D. at 435 (commonality requirement satisfied in action against credit card company for unfair and deceptive practices where "[e]ach of the proposed plaintiffs' claims stem from the same general representation by [defendant], and the issues for each of these plaintiffs will be identical").  Accordingly, the commonality requirement has been met.

3.     <u>The Representative Plaintiffs' Claims are Typical of the Claims of the Settlement Class Members</u>

The proposed Settlement Class also satisfies Rule 23's typicality requirement, which requires that the representative party's claims be typical of the claims of other members of the putative class.  *See* Fed. R. Civ. P. 23(a)(3).  The typicality requirement does not focus on the personal characteristics of the representative party nor his individual circumstances as compared to

14

the Class, but rather upon the typicality of the proposed representative's claims as they relate to the

defendants' conduct and activities. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493 (S.D. Fla.

2003) ("[M]inor factual differences do not render a claim atypical if the claim arises from (sic)

similar course of conduct giving rise to the claims of the class members."); *see also Alpern v.*

*UtiliCorp. United*, 84 F.3d 1525, 1540 (8th Cir.1996) (holding that slight factual differences existing

between the named class representatives and other class members will not defeat typicality); *DeBoer*

*Mellon Mort. Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality requirement satisfied where

class members possessing different mortgage instruments sought same form of relief). It naturally

follows, then, that a finding of commonality generally results in a finding that typicality also exists.

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996).

This requirement is readily met when "the claims or defenses of the class and class representative

arise from the same event or pattern or practice and are based on the same theory." *Avila-Gonzalez*

*v. Barajas*, Case No. 2:04-cv-567-FtM-33DNF, 2005 U.S. Dist. LEXIS 44805, at *11 n. 4 (M. D.

Fla. April 25, 2005); *see also Fuller,* 197 F.R.D. at 700 (finding typicality where "each of the

prospective members [of the Class] received a variation of the same collection letter as the named

plaintiffs."); *CV Reit*, 144 F.R.D. at 697 ("Typicality is satisfied where the interests of the named

parties arise from the same course of conduct that gave rise to the claims of the class they seek to

represent and are based upon the same legal theories"); *see also De La Fuente v. Stokely-Van Camp,*

*Inc.*, 713 F.2d 225, 232-33 (7th Cir. 1983) (holding that even when factual differences exist,

similarity of legal theory satisfies this requirement).   As such, "[t]he typicality requirement is

generally met if the class representative and the class members received the same unlawful conduct,

irrespective of whether the fact patterns that underlie each claim vary." *Avila-Gonzalez*, 2005 U.S.

Dist. LEXIS 44805, at *11; *see also See Tidwell v. Schweiker*, 677 F.2d 560, 586 (7th Cir. 1982); *Phillips v. Joint Legislative Committee on Performance*, 637 F.2d 1014, 1024 (5th Cir. 1981).   In this regard, the requirements of commonality and typicality "tend to merge." *Id.* at *11 n. 4 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).   Thus, "the test, ultimately, is whether the class representative will promote the interests of the class as he protects his own." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986).

In the present case, the Representative Plaintiffs' claims are typical of those of Settlement Class members because they arise from the same event, conduct or practice giving rise to the claims of absent Settlement Class members, and seek the same relief.   More specifically, the claims of the Representative Plaintiffs and each of the Settlement Class members are predicated on Capital One's mass marketing approach that uses standardized marketing and business practices that are applied in a uniform manner and standardized language in representing the terms and conditions of Capital One's Payment Protection plan.   Additionally, the Representative Plaintiffs seek to recover damages caused by the same materially false and misleading statements and course of conduct that give rise to the claims of the Settlement Class.   As such, the claim of the Representative Plaintiffs and the claims of the Settlement Class members are so interrelated that the interests of the Settlement Class members will be fully and adequately protected.   Accordingly, the Representative Plaintiffs' claims are typical of those of the Settlement Class.

      4.    <u>Representative Plaintiffs and Class Counsel Will Fairly and Adequately Represent the Interests of the Class</u>

16

Rule 23(a)(4) requires that "the representatives parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 147, 157-58, n.13 (1982)). With this in mind, this requirement is met if it appears that: (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interest; and (2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) ("'Adequacy of representation' means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel."); *Avila-Gonzalez*, 2005 U.S. Dist. LEXIS 44805, at *14.

Both prongs of the adequacy test have been met here. More particularly, the proposed Class Representatives' interests, as demonstrated above, are directly aligned with, and not in conflict with, the interests of the Settlement Class members. There also can be no dispute that Plaintiffs' Counsel are capable of prosecuting this litigation. Indeed, Plaintiffs' Counsel have extensive experience in prosecuting securities and consumer fraud class actions, and this Court has already made a finding that Plaintiffs' counsel is qualified, and "adequate", to serve as Class Counsel. See Order, Doc. 101, pp. 9-12. Class counsel submitted resumes at exhibits to briefing in support of class certification. Doc. 56, exhibits F, G, and H. As reflected in the respective firm resumes, each firm is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and has recovered hundreds of millions of dollars for their clients.

Needless to say, Plaintiffs' Counsel are qualified to represent the Settlement Class and will, along with the proposed Class Representatives, vigorously protect the interests of the Class.

Beyond the adequacy test of Rule 23(a)(4), the Court must address Federal Rule of Civil Procedure 23(g)(1)(C), which states:

> (C)    In appointing class counsel, the court
>     (i)    must consider:
> - the work counsel has done in identifying potential claims in the action,
> - counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
> - counsel's knowledge of the applicable law, and
> - the resources counsel will commit to representing the class;
>
>     (ii)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class;
>
>     (iii)    may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
>
>     (iv)    may make further orders in connection with the appointment.

Plaintiffs' counsel easily satisfy the factors set forth in Rule 23(g)(1)(C). They have performed substantial work, including reviewing thousands of pages of documents, interviewing and deposing witnesses, and researching applicable law to be able to fully assess the strengths of Plaintiffs' claims and possible defenses available to Capital One. Plaintiffs' counsel also have served as lead counsel or co-lead counsel in numerous class actions involving complex litigation, as reflected in the firm resumes. Additionally, Plaintiffs' counsel have already committed substantial financial resources to litigate this case.

        5.    <u>The Settlement Class Satisfies the Requirements of Rule 23(b)</u>

Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only

individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the case.  *See* Fed. R. Civ. P. Rule 23(b)(3).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In analyzing the predominance factor, the United States Supreme Court has stated that "[p]redominance is a test *readily met in certain cases alleging consumer* or securities *fraud* or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625 (emphasis added).  Following the Supreme Court's directive, numerous other courts have determined that common issues predominant in litigation involving oral and written misrepresentations in violation of state consumer protection laws.  *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 317 (S.D. Fla. 2001) (certifying TILA and pendent state law class because "Plaintiff alleges that Defendant provided the same disclosures to all class members and that those disclosures violated TILA.  These common issues predominate."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 236 (S.D. Ill. 2001); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 142 (W.D. Ky. 1992); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (certifying a nationwide settlement class asserting claims for, *inter alia*, unjust enrichment and violation of state consumer protection laws);  *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 249-50 (D. Del. 2002) (certifying nationwide class for settlement purposes on claims of unjust enrichment and consumer protection laws because "so far as differences between state laws impact only on case management, these differences are irrelevant to certification of a settlement class."); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691-92 (S.D. Fla. 1998) (certifying nationwide class for unjust enrichment because the potential application of varying

state laws did not preclude class certification although it may cause trial problems; specifically holding that "at least two of [plaintiff]'s claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States.").

Here, like these cases, the issue of Capital One's liability is centered on whether representations made by Capital One in connection with its Payment Protection program were misleading, deceptive and/or unconscionable, and these issues predominate over any individual issues that theoretically might exist. *See, e.g., Bank One*, 2002 U.S. Dist. LEXIS 8709, at *22 ("The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue.").

Furthermore, a class action is the superior vehicle for resolving Plaintiffs' claims.  As noted above, the Settlement Class is estimated to include millions of cardholders located throughout the country.  Thus, as a practicable matter, it would be economically infeasible for most putative class members to retain a private attorney to pursue individual litigation against Capital One for their individual compensatory recoveries.  *See Amchem*, 521 U.S. at 616, ("[T]he[] interests [of individuals in conducting separate lawsuits] may be theoretic rather than practical [where] . . . the amounts at stake for individuals [are] so small that separate suits would be impractical." (quotation omitted)); 7A Wright and Miller, Federal Practice and Procedure, Sec. 1779 at 557 ("[A] group composed of consumers . . .typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure."); *Bellows v. NCO Fin. Sys.*, Case No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 114451, at *20 (S.D. Cal. Sept. 5, 2008) ("The class action procedure is the superior mechanism for dispute resolution in this matter. . . . Through the class action procedure, these common claims can be brought in one proceeding, thereby

eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense."). In short, it is evident that most putative class members have no overriding interest in conducting separate lawsuits against Capital One.

What is more, superiority of the class mechanism in the present case is further highlighted by the absence of manageability issues as a settlement class does not present the issues of manageability that might arise with a litigated class. *See AmChem Prods, Inc.v. Windsor*, 117 S. Ct. 2231, 2248 (1997). Accordingly, because common questions of law and fact predominate over individual questions, and a class action is the superior vehicle for resolving Plaintiffs' claims, Rule 23(b) is satisfied.

### C.    The Settlement Should Be Preliminarily Approved

The approval of the proposed settlement of a class action is a matter addressed to the discretion of the trial court. *Hills v. Equifax Consumer Servs.,* Case No. 1:04-CV-3400-TCB, 2007 U.S. Dist. LEXIS 48278, at *27 (N.D. Ga. June 12, 2007). In determining whether to preliminarily approve the Settlement terms themselves, the Court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the Settlement is in the best interests of those whose claims will be extinguished. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312. At the preliminary approval stage, a court should examine whether the settlement is within the range of possible final approval, or, in other words, whether there is probable cause to notify the Class of the proposed settlement. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). In particular, a court bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case, as well as the arm's-length nature of the negotiations prior to the settlement. *In re Southern Ohio Correctional*

*Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).   A court must determine that the settlement is neither illegal nor collusive.  *Id.*

However, courts should exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits.'"  *In re Saxon*, (CCH) ¶ 92,414 at 92,525 (quoting *Argo v. Harris*, 84 F.R.D. 646, 647-48 (E.D.N.Y. 1979)). In addition, a court should not engage in a trial of the merits when considering the propriety of the settlement:

> The trial court should not . . . turn the settlement hearing into a trial or a rehearsal of the trial nor need it reach any dispositive conclusions on the admittedly unsettled legal issues in the case.  It is not part of its duty in approving a settlement to establish that as a matter of legal certainty . . . the subject claim or counterclaim is or is not worthless or valuable.

*Flinn v. FMC Corporation*, 528 F.2d 1169, 1172-73 (4th Cir. 1975)(internal quotations and citations omitted)(granting final approval to settlement).

In the present case, the Settlement is a product of extensive arm's-length negotiation between counsel for the parties.  The negotiations lasted for an extended period of time and included multiple mediation sessions.  *See* Declaration of Peter J. Grilli at ¶ 3, being filed contemporaneously herewith. Each of the parties made concessions and won positions on difficult and hard fought issues.  *Id.* at ¶ 4.   Moreover, the recovery obtained is estimated to have a maximum value of $250 million, providing the Settlement class with significant benefits without the costs of continued litigation.  *Id.* at ¶ 5.   Hence, the Settlement was obtained through arm's-length negotiations and falls within the range of a reasonable settlement.  *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."). Accordingly, the Settlement should be preliminarily approved. *See Ramirez v. The Lycatel Group*, No. 07-5533 (PS), 2009 U.S. Dist. LEXIS 119630, at *3-4 (D.N.J. Dec. 18, 2009) (granting preliminary approval to class action settlement of claims based on consumer protection laws); *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, at *25 (recommending preliminary approval of class action settlement of claims against debt collector company under consumer protection laws); *Date v. Sony Elecs., Inc.*, Case No. 2:07-cv-15474 PDB RSW, 2008 U.S. Dist. LEXIS 56458, at *9-10 (E.D. Mich. July 25, 2008) (granting preliminary approval of class action settlement); *Ragsdale v. Sansai USA, Inc.*, Civil No. 07cv1246-WQH (CAB), 2008 U.S. Dist. LEXIS 113319, at *12 (S.D. Cal. Mar. 14, 2008) (recommending preliminary approval of class action settlement).

## III.  Conclusion

Plaintiffs respectfully request that this Court find preliminarily that the Settlement is reasonable and fair, and that notification to the Settlement Class members of the terms of the Settlement and of their rights in connection with the Settlement is warranted.

Dated: August 13, 2010                             Respectfully Submitted,


                                                   Marcus Neil Bozeman
                                                   Hank Bates
                                                   CARNEY WILLIAMS BATES BOZEMAN
                                                      & PULLIAM, PLLC
                                                   11311 Arcade Drive, Suite 200
                                                   Little Rock, AR 72212
                                                   (501) 312-8500
                                                   (501) 312-8505 (facsimile)

Steven A. Owings
OWINGS LAW FIRM
1320 "D" Brookwood
Little Rock, AR 72202
(501) 661-9999

T. Brent Walker
Carter Walker, PLLC
2171 West Main
Suite 200
P.O. Box 628
Cabot, AR 72023
(501) 605-1346

Kevin McLaughlin
WAGNER, VAUGHAN, McLAUGHLIN &
  BRENNAN, P.A.
601 Bayshore Boulevard
Suite 910
Tampa, FL 33606
(813) 225-4000

/s/ Steven A. Owings

**Attorneys for the Plaintiffs**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 13th day of August, 2010.  Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court.

Eric S. Adams
SHUTTS & BOWEN, LLP
100 S. Ashley Drive, Suite 1740
P.O. Box 2481 (ZIP 33601-2481)
Tampa, Florida 33602-5309
(813) 227-8122
(813) 227-8222 (facsimile)
eadams@shutts-law.com

Francis A. Zacherl
SHUTTS & BOWEN, LLP
1500 Miami Center, 201 S. Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300
(305) 381-9982
fzacherl@shutts.com

Gregory P. Dresser
Karen Kreuzkamp
MORRISION & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
(415) 268-7522  FAX
gdresser@mofo.com
kkreuzkamp@mofo.com

/s/ Steven A. Owings