UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH SPINELLI,**
**Linda R. McCoy, Anthony Mitchell,**
**Elizabeth Silicato, Patricia Tinder,**
**Laverne Scruggs, Rose Carr,**
**Robin Deaver, Michael Blackie,**
**Trina Blackman, Alice Lewandowski**
**Harold Smith, Trudy Smith,**
**David Watlington, and Jeff Salazar**
**Individually and for all other persons similarly situated,**

    **Plaintiffs**

v.                                                                     Case No.  8:08-CV-132-T-33EAJ

**CAPITAL ONE BANK (USA), N.A. and**
**CAPITAL ONE SERVICES, LLC.,**

    **Defendants**
_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND APPROVAL OF SERVICE PAYMENTS TO CLASS REPRESENTATIVES**

I. **PRELIMINARY STATEMENT**

Plaintiffs and their attorneys, Carney Williams Bates Bozeman & Pulliam, PLLC, the Owings Law Firm, and Carter Walker, PLLC (collectively referred to as "Class Counsel"), submit this Memorandum of Law in support of their Application for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Application") in this class action (the "Action" or the "Litigation") against defendants Capital One Bank (USA), N.A. and Capital One Services, LLC (collectively "Capital One" or "Defendants"). Class Counsel have obtained an excellent result in the settlement of this Litigation (the "Settlement"), achieving a recovery for the Class with an estimated value of $250 million.

As discussed herein and in the accompanying Joint Declaration of Curtis L. Bowman, Steven A. Owings and Brent Walker in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration"), as well as the Declaration of Peter Grilli ("Grilli Declaration") attached as Exhibit F to the Joint Declaration, Class Counsel expended substantial time and effort in prosecuting and resolving this Litigation. During the course of the Litigation, which spanned approximately three years, Class Counsel, among other things, thoroughly investigated and researched the claims asserted by Plaintiffs and the defenses available to or raised by Defendants, created an effective strategy for the prosecution of the Litigation, drafted numerous pleadings, successfully defended against Defendants' motion to dismiss, successfully obtained certification of a class, reviewed and analyzed more than 90,000 pages of documents produced by Defendants and third parties, conducted and defended multiple depositions, participated in numerous mediation sessions, and consulted and conferred with Plaintiffs throughout the Litigation and settlement discussions. Moreover, Class Counsel marshaled a coalition of numerous related cases

brought by other law firms across the country ("Additional Plaintiffs' Counsel") to permit a nationwide settlement. (*See* Joint Declaration ¶ 22.) The recovery, now available to a class comprised of some 9 million cardholders nationwide, is outstanding.

As a result of these efforts, Class Counsel have successfully obtained a Settlement that Class Counsel believe to be fair, reasonable, adequate, and in the best interest of the Class. To date, however, neither Class Counsel nor the additional Plaintiffs' Counsel have ever applied for or received remuneration for their efforts. In light of the foregoing, Class Counsel respectfully request that this Court approve this Motion and award attorneys' fees and litigation expenses in the amount of $12,800,000, a sum that is roughly 5% of the estimated recovery of $250 million.[1] Pursuant to the Stipulation, this fee and expense reimbursement will be paid solely by Defendants in addition to the settlement proceeds available to the Class, and this will not be borne in any fashion by Class Members. Additionally, pursuant to the terms of the Settlement Agreement, Class Counsel seeks approval of Service Payments to the Class Representatives as compensation for the critical role they played in the Litigation.

Pursuant to this Court's Order dated August 16, 2010 (the "Preliminary Approval Order"), copies of the court-approved Notice and Claim Form were mailed to all class members. This Application is consistent with the Notice, which advised Class Members that as part of the Settlement, Capital One agreed to pay and not to contest any award of attorneys' fees, costs, and

---

[1]This Motion is, naturally, dependant upon the Court's final approval of the Settlement, which will itself be the subject of a hearing scheduled for November 19, 2010. Pursuant to the Preliminary Approval Order, Class Counsel will file a Motion for Final Approval by November 5, 2010.

disbursements in the amount of $12.8 million or less. The Notice further provides all Class Members with the opportunity to contact Class Counsel regarding any part of the Notice and/or the Settlement and advised Class Members of their right to be heard or object to the Settlement or the fee and expense application. To date, Class Counsel have received and responded to thousands of telephone calls from Class Members. At the same time, Class Counsel have received no Objections to the Settlement or the requested award of attorneys' fees and reimbursement of expenses. The favorable response of the Class further supports the reasonableness of the requested fee and expense award.

## II.   CLASS COUNSEL HAVE OBTAINED AN EXCELLENT RECOVERY FOR THE CLASS.

In settlement of all claims in the Litigation, the Defendants have agreed to fund a claims-made settlement, which has an estimated value of $250 million, for the benefit of the following class:

> (1) All natural persons who have or had Capital One credit card accounts in the United States and who enrolled in and were charged for Payment Protection on or after January 1, 2005 through July 31, 2010; or (2) all natural persons, who had a billing address in Florida at the time of enrollment in Payment Protection, who have or had Capital One credit card accounts and who enrolled in Payment Protection on or after September 23, 2003 through July 31, 2010. Any cardholder who filed for bankruptcy after enrolling in Payment Protection is excluded from the class.

An individual meeting the above referenced criteria (referred to hereafter as an "Eligible Class Member") shall be entitled to participate in the Settlement, in the manner set forth below:

(1)   If an Eligible Class Member checks one or more of the first three boxes on the Claim Form under the sentence that says, "To evaluate what benefit amount may be available to you, please check the boxes next to ALL statements that are correct about you," he or she will receive a payment or account credit, as follows:

(a)   If the Eligible Class Member requested and received Payment Protection

|     |     |     |
| --- | --- | --- |
|     |     | benefits ("requested/received"), the Eligible Class Member will receive $20 if his or her account is open or was closed in good standing, or will receive a credit of $15 if his or her account charged off;[2] |
|     | (b) | If the Eligible Class Member never requested Payment Protection benefits ("never requested"), the Eligible Class Member will receive $28 if his or her account is open or was closed in good standing; or will receive a credit of $20 if his or her account charged off; or |
|     | (c) | If the Eligible Class Member submitted a written request but was denied Payment Protection benefits ("requested/denied"), the Eligible Class Member will receive $63 if his or her account is open or was closed in good standing; or will receive a credit of $35 if his or her account charged off.[3] |

(2)     If the Eligible Class Member checks only the fourth box or checks no box after the sentence, "To evaluate what benefit amount may be available to you, please check the boxes next to ALL statements that are correct about you," the Eligible Class Member will receive $15 if his or her account is open or was closed in good standing and will receive a credit of $15 if his or her account charged off.

(3)     If the Eligible Class Member checks the box on the Claim form that says that he or she filed for bankruptcy after enrolling in Payment Protection, the Eligible Class Member is not entitled to a payment or credit.

For Eligible Class Members who have an open account, Capital One shall, within 45 days of the Effective Date, credit the amounts set forth above to that account. If, however, an Eligible Class Member has an open account, but has closed the account(s) in which he or she enrolled in

---

[2]The parties agree that any Eligible Class Member who received a payment as a part of Capital One's Payment Protection remediation program will be regarded as having the status of requested/received. (*See* Joint Decl. ¶ 23.) This applies regardless of whether the Eligible Class Member received (i) a benefits payment or credit, or (ii) a refund or credit of Payment Protection charges. (*Id*.)

[3]Determination of the status of an Eligible Class Member as requested/received, never requested, or requested/denied and whether an Eligible Class Member received a payment as part of Capital One's Payment Protection remediation program will be made solely by Capital One from its own records and those maintained by Stonebridge Benefit Services. Nonetheless, Class Counsel will conduct confirmatory discovery on Defendants' procedures and determinations prior to the final approval hearing.

Payment Protection, Capital One may, in its sole discretion, elect to pay the Eligible Class Member the appropriate amount by check rather than by crediting the open account(s).

For Eligible Class Members who closed accounts in good standing (*i.e.*, with a zero balance), Capital One shall, within 45 days of the Effective Date, pay the Eligible Class Members the appropriate amounts by check.

For Eligible Class Members whose accounts were charged off due to non-payment, Capital One shall, within 45 days of the Effective Date, credit the appropriate amounts against the amounts those Eligible Class Members owe to Capital One.

In arriving at the Settlement, Class Counsel actively investigated and prosecuted this litigation engaging in, among other things, (1) a thorough investigation of the claims asserted by Plaintiffs, including research of factual issues as well as applicable law to Plaintiffs' claims and possible defenses available to Capital One; (2) review of approximately 90,000 pages of documents produced by Defendants and third parties, as well as other public documents and statements; (3) successfully defending against Defendants' Motion to Dismiss; (4) successfully obtaining certification of a class; and (5) participating in numerous mediation sessions. Thus, the Settlement was reached only after substantial discovery and numerous mediation sessions with an experienced mediator. Accordingly, Class Counsel certainly had sufficient information to act intelligently in negotiating the terms of the Settlement that are before the Court for approval. Thus, in light of Class Counsel's efforts and analyses, and considering the risk, expense and likely duration of continuing the Litigation, this Settlement is an excellent result and will provide substantial benefits to the Class.

## III. THE RELEVANT FACTORS DICTATE THAT THE REQUESTED FEE IS REASONABLE

The Eleventh Circuit has instructed district courts to consider several factors when determining what constitutes a reasonable attorney fee award. *Camden I Condo. Ass'n, Inc. v.*

5

*Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). These factors include: (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974));[4] *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D.Ga. 2001). An analysis of these factors confirms that the fee requested by Class Counsel is reasonable.

**(1) The Time and Labor Required**

A review of the efforts and time expended by Class Counsel establishes that the requested fee is reasonable. Class Counsel have exerted substantial efforts during the years since this Litigation started. As discussed in the Joint Declaration filed concurrently with this Motion, the Litigation has been hard-fought, entailing substantial and time-consuming motion practice. Specifically, Class Counsel researched and analyzed all factors involved in Plaintiffs' claims as well as the possible defenses available to Defendants, drafted the operative complaints advancing Plaintiffs' claims,

---

[4] The *Camden I* Court also recognized additional factors that a court may consider in awarding a percentage of the fund award, including: (1) whether the settlement confers non-monetary benefits upon the class; (2) whether there are any substantial objections to the settlement terms or fee requests; (3) the economics involved in prosecuting a class action; (4) the time required to reach settlement; and (5) any additional factors unique to a particular case which may be relevant to the district court's consideration. *Camden I*, 946 F.2d at 755.

successfully defended against Defendants' Motion to Dismiss, and successfully obtained certification of a class. In addition, following extensive discovery, Class Counsel engaged in contentious settlement negotiations with Defendants' Counsel. The settlement negotiations were conducted through a certified mediator, Peter J. Grilli, who attests that "[t]he conduct of counsel and party representatives was professional and adversarial throughout the mediation discussions. Significant disagreements surfaced requiring the scheduling of additional mediation sessions, telephone meetings and caucuses. The negotiations were complex and difficult, and conducted at arms' length and in good faith on both sides." Grilli Decl. ¶ 4 (attached as Exhibit F to the Joint Declaration). Clearly, Class Counsel have been fully committed to the prosecution of this Action and have devoted substantial time and resources to this Litigation.

Tellingly, under the lodestar approach,[5] Class Counsel have expended a total of 15,879.58 hours in this case, with total billings of $8,405,291.88, for which they have never previously applied for or received fees. In calculating their lodestar, counsel included time spent by attorneys and paralegals and used their normal and customary billing rates, which are in line with prevailing market rates for attorneys and paralegals with comparable experience, skill, and qualifications. *See* Joint Decl. Exhibits B, C, D, E; *see also SEC v. Mut. Benefits Corp.*, Case No. 04-60573-CIV-MORENO, 2009 U.S. Dist. LEXIS 118760, at *15 (S.D. Fla. Dec. 7, 2009) (noting rates of $550 to

---

[5]Under the lodestar formula, "[t]he first step in this approach is to calculate the time and labor expended by the parties and multiply this by an appropriate fee. The product is called the 'lodestar.' The next step is to calculate a multiple to be applied to the lodestar. A court determines this multiple, which may increase or decrease the lodestar amount, by reviewing all aspects of the case." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990).

$765 in the State of Florida). Moreover, under the lodestar method, Class Counsel's fee request represents a multiplier of just 1.49, underscoring the reasonableness of the request. Indeed, as recognized in *Behrens*, "the range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5." 118 F.R.D. at 549 (awarding a lodestar multiplier of 3); *see also In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("In view of the complexity of the case, the risk that litigation would produce no recovery and the quality of representation provided by plaintiffs' counsel, plaintiffs' counsel seek to apply a multiplier of approximately 2.26 to the lodestar. Such a multiplier appears to be at the lower end of the range of multipliers used in other large cases.").

What is more, it bears emphasis that the applicable lodestar multiplier – low, as it is – derives from the submission of fee and expense information on behalf of 15 law firms across the country. Although only 3 principal firms have appeared on the pleadings throughout this Litigation, the instant Settlement resolves all known "payment protection" class action lawsuits filed against Defendants nationwide.[6] The peace and certainty provided by this global settlement is remarkable, results in judicial efficiency of the highest magnitude, and furnishes an additional basis for this Court to award the requested fee as reasonable.

---

[6]Other lawsuits dismissed in accordance with the terms of the Settlement include *Watlington v. Capital One*, No. 1:10-cv-171 (M.D.N.C.); *Mitchell v. Capital One*, No. 2:10-cv-2672 (C.D. Cal.); *Smith v. Capital One*, No. 4:10-cv-00160 (E.D. Ar.); *McCoy v. Capital One*, No. 3:10-cv-185 (S.D. Cal.); *Sullivan v. Capital One*, No. 3:10-cv-92 (D. Conn.); *Carr v. Capital One*, No. 1:10-cv-1014 (D.N.J.); *Blackie v. Capital One*, No. 2:10-cv-823 (E.D. Pa.); and *Salazar v. Capital One*, No. 7:10-21 (D.S.C.).

**(2)** **The Novelty and Difficulty of the Questions Involved, the Skill Requisite to Perform the Legal Service Properly, and the Preclusion of Other Employment Due to Acceptance of this Case**

Class Counsel are qualified and experienced attorneys in complex class litigation, and respectfully submit that the work they performed in this litigation reflects those qualifications. As set forth in the Joint Declaration, the legal and factual issues in this Action were difficult ones, and were addressed by Class Counsel in a manner that successfully advanced this Litigation toward settlement. Specifically, this Litigation required an in-depth comparative analysis of various states' deceptive trade practices acts and a global damages analysis.

Additionally, Class Counsel have expended substantial time and resources on this Litigation. Had Class Counsel not taken a role in this Litigation, they would have been free to allocate their time and resources elsewhere. Indeed, as the total number of hours expended in this Litigation demonstrates, Class Counsel fully dedicated themselves to the prosecution of this Litigation. Moreover, because of the contingent nature of the representation in this matter, Class Counsel had to defer any recovery of their fees and expenses until a successful conclusion of the Litigation. This further supports the fee award requested herein. *See In re Heritage Bond Litig. v. United States Trust Co. of Tex., N.A.*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Del Global Techs.*, 186 F. Supp. at 372 ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee

risk is the single most important factor in awarding a multiplier."); *Flight Transp. Corp. Sec. Litig.*, 685 F. Supp. 1092, 1096 (D. Minn. 1987) ("The fact that counsel for the plaintiff classes prosecuted this case on a contingent fee basis warrants a multiplier of the lodestar."); *In re Warner*, 618 F. Supp. at 747 ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award." (citations omitted)).

### (3) The Customary Fee, the Contingent Nature of the Fee, and Time Limitations Imposed by Client or Circumstances

The "customary fee" in a class action lawsuit is contingent. *Ressler*, 149 F.R.D. at 654. This is so because virtually no individual possesses a sufficiently large stake in such litigation to justify paying attorneys on an hourly basis. *Id.*; *see also Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

It is generally accepted that the contingent nature of attorneys' fees should be given substantial weight in assessing the requested fee award. *See Behrens*, 118 F.R.D at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."). "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *see also Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1984); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980); *Walters v. City of Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985); *Ressler*, 149 F.R.D. at 656. Courts have adopted this approach due to the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever. *See Ressler*, 149 F.R.D. at 655-56.

Success in contingent litigation such as this is never guaranteed. *See, e.g., Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997)(reversing jury verdict for $81.3 million in securities class action); *Berkey Photo, Inc., v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)(reversing a multi-million dollar judgment after a lengthy trial); *Trans World Airlines, Inc., v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd sub nom.*, *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973)(plaintiff's judgment of $145 million overturned after years of litigation). Thus, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. As such, the substantial risks of this Litigation justify the fee requested herein.

**(4)     The Amount of the Settlement**

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. As stated above, Class Counsel have negotiated a settlement with an estimated value of $250 million. This Settlement is an excellent result for the Class, particularly in light of the risks of continued litigation. A testament to this fact is the endorsement of skilled mediator Peter Grilli, who observed, "Based on my understanding of the factual and legal issues presented in the matter, and the risks presented to the parties, and based on my experience as a mediator and a lawyer, the settlement terms provide a strong result for the Settlement Class." Grilli Decl. ¶ 5 (attached as Exhibit F to the Joint Declaration). Thus, instead of facing additional years of costly litigation and the risk of no recovery at all, Eligible Class Members will now promptly receive the benefits obtained in the Settlement.

**(5)     The Experience, Reputation and Ability of the Attorneys**

Class Counsel are qualified and experienced attorneys in complex litigation involving securities and consumer fraud claims. The firm resumes of Class Counsel (*see* Joint Decl. Exhibits B, C, D) attest to the national reputation and extensive experience of Class Counsel in the area of complex class litigation. Moreover, this Court has had many opportunities to observe the abilities of Class Counsel. Without question, Class Counsel's experience and skill was a major factor in obtaining the result achieved in this Litigation. Indeed, mediator Grilli recognized the superior performance of Class Counsel in the midst of settlement negotiations he characterized as "adversarial," "complex and difficult," and involving "significant disagreements." Grilli Decl. ¶ 4 (attached as Exhibit F to the Joint Declaration).

In addition, this Court should consider the elite standing of defense counsel when awarding fees, because such standing reflects the challenge faced by Class Counsel. *See Ressler*, 149 F.R.D. at 654. Defendants were represented by Morrison & Foerster LLP, a very able and prestigious law firm with vast resources at its disposal. The Defendants' attorneys have significant experience in this type of litigation and consistently took aggressive positions in the negotiations to promote the interests of their clients. *See* Grilli Decl. ¶ 4 (attached as Exhibit F to the Joint Declaration).

**(6)     The "Undesirability" of the Case and the Nature and Length of the Professional Relationship with the Client**

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. There are risks inherent in financing and prosecuting complex litigation of this type. Knowing that a company such as Capital One would be represented by a large law firm with vast

resources and experienced counsel, and knowing that thousands of hours and hundreds of thousands of dollars could be spent in the prosecution of the litigation, only those firms that concentrate in class actions would ever consider undertaking such representation. Indeed, only the most experienced class action firms would risk the time and the expense involved in light of the possibility of a recovery at an uncertain date, or of no recovery at all. Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing thousands of dollars in expenses would deter most firms. Class Counsel undertook to represent their clients with significant risks and obtained an exceptional result.

### (7)     Awards in Similar Cases

Class Counsel is requesting a fee of $12,532,888.29 million, representing a lodestar multiplier of 1.49. As noted above, the requested fee is in line with fee awards in similar class action litigation. *See Dewey v. Volkswagen of Am.*, 2010 U.S. Dist. LEXIS 79304, at *165 (D.N.J. July 30, 2010) (awarding a lodestar multiplier of 2); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 1057, 1065 (D. Minn. Mar. 16, 2010) (finding a lodestar multiplier of 2.26 "fair and appropriate"); *In re Merck & Co. Vytorin ERISA Litig.*, Civil Action No. 08-CV-285 (DMC); 2010 U.S. Dist. LEIXS 12344, at *47 (D.N.J. Feb. 9, 2010) (finding a lodestar multiplier of 2.786 reasonable); *Larson v. Sprint Nextel Corp.,* Civil Action No. 07-5325 (JLL), 2010 U.S. Dist. LEXIS 3270, at *91 (D.N.J. Jan. 15, 2010) (stating "a multiplier of 1.62 is well within the range of reasonableness"); *McGee v. Cont'l Tire N. Am., Inc.,* Civ. No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, at *47-8 (D.N.J. Mar. 4, 2009) (approving a multiplier of 2.6); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tx. 2007) (noting "[t]he average range of multipliers applied to other class actions has been from

1.0 to 4.5" and approving the requested multiplier of 1.68); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (awarding lodestar multiplier of 2.15); *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (finding a multiplier of 3.5 reasonable). Thus, the lodestar multiplier analysis confirms the reasonableness of the requested fee award. Class Counsel have obtained a very favorable benefit for the Class due to their persistent and effective representation, despite determined and resourceful opposition.[7]

**(8)    Other Factors**

There are additional factors that a court may consider in approving a fee request, including the lack of objection by the Class and public policy. *Camden I*, 946 F.2d at 775. As further confirmation of the reasonableness of the requested fee, the Notice mailed to approximately 9 million Class Members, specifically stated that Class Counsel would apply for fees and reimbursement of expenses of $12.8 million or less. Class Members were informed that they could object to such an application, and to date there have been no objections to the requested fee award. The lack of any objection thus far is itself important evidence that the requested fee is fair. *See In re SmithKline Beckman*, 751 F. Supp. at 533; *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

---

[7]Notably, the requested fee award is equivalent to approximately 5% of the potential value of the Settlement, which is on the low end of percentages awarded in similar cases. While this is not a "common fund" case, the 5% is well below the percentages commonly awarded in comparable common fund cases. *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% of $454 million settlement). This is further indicia of the reasonableness of Class Counsels' fee request in light of the outstanding results achieved.

In addition, public policy favors awarding sufficient fees to attorneys who achieve the voluntary resolution of complex and costly litigation such as this:

> Attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of the securities laws; accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.

*Ressler*, 149 F.R.D. at 657; *see also Mashburn v. Nat'l Health Care, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985). Thus, courts should award fees sufficient to provide the most capable attorneys with an incentive to step forward and represent clients in this type of litigation.

In sum, an examination of applicable law demonstrates that the fee requested by Class Counsel is reasonable. Given the result obtained, the contingent risk of this litigation, and the reasonableness of the fee requested, this Court should award Class Counsels' requested fee.

## IV.  REIMBURSEMENT OF EXPENSES SHOULD BE AWARDED

This Court should reimburse Class Counsel for expenses that were reasonably incurred to obtain the Settlement. *See, e.g., Ressler*, 149 F.R.D. at 657; *Behrens*, 118 F.R.D. at 549. Class Counsel (including those not appointed Co-Lead Counsel) have incurred expenses of $267,111.71 in connection with this Litigation, which are summarized in the accompanying declaration of Class Counsel. *See* Joint Declaration, Exhibit A. This includes amounts incurred for court fees, legal research databases, copying, phone, and other customary expenditures. The expenses incurred were reasonable and necessary to obtain the Settlement and do not include costs for overhead. The litigation expenses are inclusive in the requested fee of $12.8 million, and thus will not detract from

the benefit realized by the Class.

## V. THE SERVICE PAYMENTS TO THE CLASS REPRESENTATIVES ARE FAIR AND REASONABLE

In connection with their representation of the Class, the Class Representatives submit an application for Service Payments as compensation for their personal efforts on behalf of the Class. Paragraph 6.1 of the Settlement Agreement provides as follows:

> Service Payments. The Class Representatives will seek the Court's approval of Service Payments, in the Court's discretion, of up to Three-Thousand Dollars ($3,000) for Kenneth Spinelli and Seven-Hundred Fifty Dollars ($750) each for D. Michael Blackie, Trina Blackman, Alice Lewandowski, Rose Carr, Robin Deaver, Linda R. McCoy, Anthony Mitchell, Elizabeth Silicato, Patricia Tinder, Laverne Scruggs, Jeff Salazar, Harold G. Smith, Trudy Smith, Jeremy Morrow, Lisa Sullivan, and David Watlington. Capital One will not oppose Service Payments up to the amounts specified. Any Service Payment ordered by the Court shall be paid within 15 days of the later of: (1) the Effective Date; or (2) receipt by counsel for Capital One of each Class Representative's completed W-9 form.

The Notice provided that Class Counsel may request compensatory awards, or service payments, to be paid by the Defendants to the Class Representatives for their services in representing the Class in this Litigation. Of the approximately 9 million notices mailed, to date not a single member of the Class has objected to the Service Payment awards.

The Class Representatives played an important and active role in the prosecution of this Litigation, and fully discharged their obligations, thereby helping to effectuate the policies underlying consumer protection laws. Each Class Representative provided all necessary assistance to counsel during the prosecution of this case and actively participated in discovery, including in some instances depositions.

**VI.   CONCLUSION**

The requested attorneys' fees, reimbursement of expenses, and Service Payments to the Class Representatives are fair and reasonable and accordingly should be awarded by this Court.

Dated: October 1, 2010                              Respectfully Submitted,

                                                                   /s/ Marcus Neil Bozeman
                                                                Marcus Neil Bozeman
                                                                Curtis L. Bowman
                                                                **CARNEY WILLIAMS BATES BOZEMAN**
                                                                   **& PULLIAM, PLLC**
                                                                11311 Arcade Drive, Suite 200
                                                                Little Rock, AR 72212
                                                                (501) 312-8500
                                                                (501) 312-8505 (facsimile)

                                                                Steven A. Owings
                                                                **OWINGS LAW FIRM**
                                                                1320 "D" Brookwood
                                                                Little Rock, AR 72202
                                                                (501) 661-9999

                                                                T. Brent Walker
                                                                **Carter Walker, PLLC**
                                                                2171 West Main
                                                                Suite 200
                                                                Cabot, AR 72023
                                                                (501) 605-1346

                                                                Kevin McLaughlin
                                                                **WAGNER, VAUGHAN, McLAUGHLIN &**
                                                                   **BRENNAN, P.A.**
                                                                601 Bayshore Boulevard
                                                                Suite 910
                                                                Tampa, FL 33606
                                                                (813) 225-4000

                                                                **Attorneys for the Plaintiffs**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 1 day of October, 2010. Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court:

Eric S. Adams
SHUTTS & BOWEN, LLP
100 S. Ashley Drive, Suite 1740
P.O. Box 2481 (ZIP 33601-2481)
Tampa, Florida 33602-5309
(813) 227-8122
(813) 227-8222 (facsimile)
eadams@shutts-law.com

Francis A. Zacherl
SHUTTS & BOWEN, LLP
1500 Miami Center, 201 S. Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300
(305) 381-9982
fzacherl@shutts.com

Gregory P. Dresser
Karen Kreuzcamp
MORRISION & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
(415) 268-7522  FAX
gdresser@mofo.com
kkreuzkamp@mofo.com

/s/ Marcus Neil Bozeman