UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH SPINELLI,**
**Linda R. McCoy, Anthony Mitchell,**
**Elizabeth Silicato, Patricia Tinder,**
**Laverne Scruggs, Rose Carr,**
**Robin Deaver, Michael Blackie,**
**Trina Blackman, Alice Lewandowski**
**Harold Smith, Trudy Smith,**
**David Watlington, and Jeff Salazar**
**Individually and for all other persons similarly situated,**

    **Plaintiffs**

v.                                              Case No.  8:08-CV-132-T-33EAJ

**CAPITAL ONE BANK (USA), N.A. and**
**CAPITAL ONE SERVICES, LLC.,**

    **Defendants**
_____/

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES**

I.     **PRELIMINARY STATEMENT**

At the November 19, 2010 hearing on the motion seeking final approval of the settlement of this class action litigation (the "Fairness Hearing"), which now comprises a collection of lawsuits from around the country raising causes of action involving the "Payment Protection" program marketed by Defendant Capital One Bank ("Capital One"), this Court observed that the proposed compromise amounted to "something good" (Tr. Fairness Hr'g 43), resulting in a "good award" to Plaintiffs (*id.* at 52). As such, while also certifying a class for final settlement purposes, the Court "adopted" the proffered agreement as "fair, reasonable, and adequate under Rule 23(3)" of the Federal Rules of Civil Procedure. (*Id.* at 63; *see also* Order of Nov. 23, 2010 at 9, 14.)

With that much accomplished, all that remains in the instant proceeding is the pending Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Approval of Service Payments to the Class Representatives (the "Motion for Attorneys' Fees") submitted by Class Counsel. (*See* Order of Nov. 23, 2010 at 14 & n.8.) Granting that motion in part (Tr. Fairness Hr'g 63), the Court stressed that it had "no problem at all" with the requested service payments to the class representatives and likewise had "no problem" with the reimbursement of designated costs (*id.* at 36). The Court further emphasized that the "performance" of Class Counsel has been "outstanding" throughout this litigation (*id.* at 52), making it apparent that the attorneys "deserve to be compensated" (*id.* at 65). The Court, however, expressed concern about "the hourly billings for some of the individuals" utilized in the lodestar calculation and requested additional briefing as to the fee petition. (*Id.* at 64). In particular, the Court asked for guidance allowing it to achieve "peace" with a decision "reward[ing]" Class Counsel for their "hard work and for [their] good efforts." (*Id.* at 66.)

Class Counsel respectfully submit this Memorandum in an effort to provide the Court

assurance that it may grant the Motion for Attorneys' Fees "in good faith and good conscience" (Tr. Fairness Hr'g 65).

## II.   DISCUSSION AND AUTHORITIES

At the Fairness Hearing, the Court assessed the Motion for Attorneys' Fees under the factors announced in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). After undertaking that analysis, the Court indicated that only one aspect of the fee request gave it pause: Namely, the hourly rates charged by some, but not all, of the attorneys who make up Class Counsel.[1] (Tr. Fairness Hr'g 42 ("[T]he concern I have is the rate. I'm just going to cut to the chase.").) As a preliminary matter, it is important to keep in mind that the Motion for Attorneys' Fees proposes an amount negotiated by adverse counsel only after agreeing to the terms of the Settlement, and Defendant Capital One is the *only* party standing to gain from any reduction in that award. This is not, in other words, a "common fund" action in which any augmentation of the "multiplier" underlying an approved fee actually decreases the amount payable to a class from the settlement itself. Here, by contrast, the multiplier's value has no impact on aggrieved plaintiffs, but simply serves as one component of a computation permitting a cross-check for the reasonableness of a

---

[1] Implicitly, then, the Court determined that this matter satisfies the remaining *Johnson* factors. That is, and among other things, the Court from all appearances agreed that the underlying class case – with hotly disputed issues regarding federal preemption and the application of state consumer protection laws to national banks and others – was complex, and that Class Counsel assumed significant risk by accepting representation of their clients (*see, e.g.*, Tr. Fairness Hr'g 59 ("I know you take a big risk.")). Class Counsel submit that their unchallenged satisfaction of these other elements suggests the ease with which the Motion for Attorneys' Fees might be granted. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("Cases recognize that attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award." (citation omitted)).

2

negotiated fee.[2]

Given all this, it is of considerable moment that an across the board reduction of the submitted rates – by as much as 20% – yields a cross-check multiplier of *only* 1.87 to arrive at the requested award of $12,533,888.29. Because this number is still comfortably within the *low* end of the accepted range for class action litigation of this sort, it is entirely possible for the Court to appreciably lower all applicable rates with no corresponding need to adjust the overall fee award. Moreover, to the extent the Court wishes to determine the fee here in reliance upon the "Laffey Matrix," an index of hourly rates originating from a case in the United States District Court for the District of Columbia, Class Counsel suggest that the rates contained in the Motion for Attorneys' Fees are actually in keeping with amounts reflected in the Updated Laffey Matrix, a chart which revises the figures from the original *Laffey* opinion in accordance with the "legal services" category of the general Consumer Price Index. (*See* Decl. Curtis L. Bowman, Ex. 2 (filed concurrently with this Memorandum).) Accordingly, Class Counsel request that the Court fully grant the Motion for Attorneys' Fees consistent with the parties' Settlement Agreement.

---

[2]Typically used in conjunction with common fund recoveries, "some courts use the lodestar method as a cross-check of the percentage of fund approach." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001). To reiterate, the fees now sought not only result in an acceptable lodestar multiplier under any "cross-check," but also represent a fair percentage of the over $45 million Capital One has already paid to the Class (Tr. Fairness Hr'g 61 (confirming that "[$]45,000,000 has already been paid as part of the [S]ettlement")), not to mention the $250 million potential value of the settlement, *Diaz v. Hillsborough Cnty. Hosp. Auth.*, Case No. 8:90-CV-120-T-25B, 2000 U.S. Dist. LEXIS 14061 (M.D. Fla. Aug. 7, 2000) (awarding 30% of common fund). To reiterate, this is particularly so here, where any payment to Class Counsel will not in any way affect the recovery of the Class.

> **A.    Even Were The Court To Reduce All Current Hourly Rates By As Much As 20%, The Aggregate Fee Capital One Has Agreed To Pay Would Still Be Within The Accepted Range.**

After years of litigation and the negotiation of a settlement that, in the words of Mediator Peter J. Grilli, resulted in a "strong result for the Settlement Class" (Decl. Peter J. Grilli ¶ 5), the parties to this case worked to decide upon the appropriate amount of fees earned by Class Counsel. At the end of this separate and independent process, and after accounting for the expenses now approved by this Court, Capital One agreed to pay Class Counsel attorneys' fees of $12,533,888.29. Because payment of that sum is completely unrelated to the disbursements to the Class as part of the Settlement, it bears repeating that Defendant Capital One – and not the Class – would be the only beneficiary of any reduction in the fee award.

With regard to the proposed award itself, it is telling that the total fee amount is the *only* number relating to attorneys' fees upon which the litigants agreed. True enough, the talks which produced that figure were informed by the pertinent considerations from *Johnson*, 488 F.2d at 717. Still, any lodestar multiplier was *never* a part of the discussions between Class Counsel and Capital One, and that concept entered the scene only as part of the lodestar "cross-check" performed during preparation of the Motion for Attorneys' Fees. When it became evident that the requested fee produced a modest multiplier of 1.49, that number received limited – if any – additional attention.

Against this backdrop, it is clear that the Court could reduce all effective hourly rates by 20% and still grant the Motion for Attorneys' Fees in full, with an increased multiplier of 1.87, without at all upsetting the parties' agreement. Meaningfully, even were the Court to universally cut all rates in such a manner, the resulting multiplier would still be on the low end of the permissible range for class action litigation like this. On this subject, Judge Cecilia M. Altonaga of the United States

District Court for the Southern District of Florida has observed that "lodestar multiples in large and complicated class actions range from 2.26 to 4.5, while three appears to be the average." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (quotations omitted); *see also, e.g., Dewey v. Volkswagen of Am.*, Civil Action No. 07-2249 (FSH), 2010 U.S. Dist. LEXIS 79304, at *165 (D.N.J. July 30, 2010) (awarding a lodestar multiplier of 2); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 1057, 1065 (D. Minn. Mar. 16, 2010) (finding a lodestar multiplier of 2.26 "fair and appropriate"); *In re Merck & Co. Vytorin ERISA Litig.*, Civil Action No. 08-CV-285 (DMC), 2010 U.S. Dist LEXIS 12344, at *47 (D.N.J. Feb. 9, 2010) (finding a lodestar multiplier of 2.786 reasonable); *McGee v. Cont'l Tire N. Am., Inc.*, Civ. No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, at *47-*48 (D.N.J. Mar. 4, 2009) (approving a multiplier of 2.6); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (awarding lodestar multiplier of 2.15); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (finding a multiplier of 3.5 reasonable).

### B. The Rates Contained In The Motion For Attorneys' Fees Are Consistent With Those In The Updated Laffey Matrix.

During the final approval hearing, the Court referenced the Laffey Matrix as a potential benchmark for determining the hourly rate component of the lodestar cross-check.[3] There are two versions of the Laffey Matrix, commonly referred to as the U.S. Attorney Laffey Matrix and the Updated Laffey Matrix. Both matrixes take their name from the first case in which it was utilized,

---

[3] The Laffey Matrix, which purports to identify reasonable rates for attorneys depending upon their years of practice, is "intended to be used in cases [involving] a 'fee-shifting' statute." (*See* Decl. Curtis L. Bowman, Ex. 1 n.1.) In response to the Court's request at the Fairness Hearing, Exhibit 3 to the Bowman Declaration contains information detailing, among other things, the "years of experience" of Class Counsel.

5

*Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd* 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1515, 1525 (D.C. Cir 1988).

Since 1992, the Office of the U.S. Attorney for the District of Columbia has maintained a version of the Laffey Matrix, utilizing the general Consumer Price Index for the District of Columbia to update it to reflect inflation. The current version of the U.S. Attorney's Matrix is attached as Exhibit 1 to the Declaration of Curtis L. Bowman filed herewith.

The Updated Laffey Matrix, like the U.S. Attorney's version, starts with the matrix in *Laffey*; however, it adjusts for inflation utilizing the *legal services* component of the nationwide Consumer Price Index – a measure of inflation in the cost of legal services maintained by the U.S. Bureau of Labor Statistics. *Interfaith Community Org. v. Honeywell International, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005). The current version of the Updated Laffey Matrix is attached as Exhibit 2 to the Bowman Declaration.

Because the cost of legal services has increased over the past few decades at a rate higher than the general consumer price index, the Updated Laffey Matrix results in higher hourly rates than the version maintained by the U.S. Attorney. For example, the Updated Laffey Matrix designates an hourly rate of $709 for attorneys with twenty or more years of experience and $589 for attorneys with eleven to nineteen years of experience, compared to $475 and $420, respectively, under the U.S. Attorney's version. (*See* Decl. Curtis L. Bowman, Exs. 1, 2.) The Updated Laffey Matrix has been recognized as reasonable and accurate by several courts across the country. *See, e.g.*, *Interfaith Community Org. v. Honeywell International, Inc.*, 426 F.3d 694 (3d Cir. 2005); *Ricks v. Barnes*, No. 05-1756 HHK/DAR, 2007 U.S. Dist. LEXIS 22410, at *16 (D.D.C. Mar. 28, 2007); *Kempf v. Barrett*

*Bus. Servs.*, No. C-06-3161 SC, 2007 U.S. Dist. LEXIS 89447 at *13-14 (N.D. Cal. Nov. 20, 2007); *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *McDowell v. Dist. of Columbia*, Civ. A. No. 00-594 (RCL), 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); *North Carolina Alliance for Transportation Reform, Inc. v. U.S. Dept. Of Transportation*, 168 F. Supp. 2d 569, 579-80 (D. NC 2001); *Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000). Courts have relied on the U.S. Attorney's version as well. (*See* Decl. Curtis L. Bowman, Ex. 1 (citation included within the exhibit).)

To the extent the Court chooses to rely on these matrixes in conducting the lodestar cross-check, it would be appropriate to consider the Updated Laffey Matrix as it uses a more narrowly focused analysis of the Consumer Price Index and is very closely aligned with the rates set forth in the declarations provided by numerous Plaintiffs counsel across the country. (*See* Decl. Curtis L. Bowman, Ex. 3.) Moreover, the higher hourly rate in the Updated Laffey Matrix is appropriate given the complexity of this litigation, its national scale, the significant commitment in time and finances and the risk inherent in prosecution of the case.

Regardless, if the "hourly rate" component of the lodestar cross-check were adjusted from the rates provided in the submitted declarations to the rates in *either* version of the Laffey Matrix, it would not significantly alter the multiplier necessary to reach the attorneys' fee Capital One agreed to pay under the Settlement Agreement approved by this Court. As shown in Exhibit 3 to the Bowman Declaration, if the fees from the Updated Laffey Matrix are utilized, the multiplier adjusts slightly downward from 1.49 to 1.43. (*See* Decl. Curtis L. Bowman, Ex. 3.) If the U.S. Attorney's Laffey Matrix is utilized the multiplier increases to 2.1. (*Id.*) A multiplier of 2.1 is imminently reasonable in this context and below the average of three cited by Judge Altonaga in *Pinto v.*

7

...
...

*Princess Cruise Lines, supra.*

### III.  CONCLUSION

The Eleventh Circuit has "encourage[d]" opposing attorneys settling class action litigation "to use their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Johnson*, 488 F.2d at 720.  The advocates in this case have heeded this directive, agreeing that Class Counsel is entitled to a fee award appropriate under governing standards.  Although this Court has expressed some concern about the hourly rates charged by some attorneys encompassed within the proposed fee, Class Counsel have shown that the aggregate amount of the requested fee is still reasonable even if the Court substantially reduces all applicable hourly rates utilized in the lodestar cross-check.  For the reasons stated in this Memorandum, Class Counsel respectfully requests the Court to fully grant the Motion for Attorneys' Fees.

Dated:  November 29, 2010              Respectfully Submitted,

                /s/ Marcus Neil Bozeman
               J. Allen Carney
               Marcus Neil Bozeman
               CARNEY WILLIAMS BATES BOZEMAN
                & PULLIAM, PLLC
               11311 Arcade Drive, Suite 200
               Little Rock, AR 72212
               (501) 312-8500
               mbozeman@carneywilliams.com

               Steven A. Owings
               OWINGS LAW FIRM
               1320 "D" Brookwood
               Little Rock, AR 72202
               (501) 661-9999

               Kevin McLaughlin
               WAGNER, VAUGHAN, McLAUGHLIN &
                BRENNAN, P.A.
               601 Bayshore Boulevard, Suite 910
               Tampa, FL 33606
               (813) 225-4000

               T. Brent Walker
               Carter Walker, PLLC
               2171 West Main, Suite 200
               Cabot, AR 72023
               (501) 605-1346

               **Attorneys for the Plaintiffs**

**CERTIFICATE OF SERVICE**

  I, the undersigned, do hereby certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 29th day of November, 2010. Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court.

  Eric S. Adams
  SHUTTS & BOWEN, LLP
  100 S. Ashley Drive, Suite 1740
  P.O. Box 2481 (ZIP 33601-2481)
  Tampa, Florida 33602-5309
  (813) 227-8122
  (813) 227-8222 (facsimile)
  eadams@shutts-law.com

  Francis A. Zacherl
  SHUTTS & BOWEN, LLP
  1500 Miami Center, 201 S. Biscayne Blvd.
  Miami, Florida 33131
  (305) 358-6300
  (305) 381-9982
  fzacherl@shutts.com

  Gregory P. Dresser
  Karen Kreuzkamp
  MORRISION & FOERSTER, LLP
  425 Market Street
  San Francisco, CA 94105
  (415) 268-7000
  (415) 268-7522 FAX
  gdresser@mofo.com
  kkreuzkamp@mofo.com

             /s/ Marcus Neil Bozeman
             Marcus Neil Bozeman